UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RENAY LYNCH

                Plaintiff,

                                       Case No.: 1:25-CV-00075-LJV

v.

THE TOWN OF AMHERST,
MICHAEL J. MELTON,
JOSEPH LACORTE,
RAYMOND KLIMCZAK, and
THE COUNTY OF ERIE,

                Defendants.
_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**HURWITZ FINE, P.C.**
Michael F. Perley, Esq.
*Attorney for Amherst, Melton,*
*LaCorte, and Klimczak*
1300 Liberty Building
Buffalo, New York 14202
Telephone: (716) 849-8900
Facsimile: (716) 855-0874
mfp@hurwitzfine.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................... 1

STATEMENT OF THE CASE......................................................................................................... 1

LEGAL STANDARD........................................................................................................................ 1

ARGUMENT..................................................................................................................................... 2

POINT I ............................................................................................................................................. 3

      A.     PLAINTIFF'S CLAIMS FOR *MONELL* LIABILITY ARE
              INSUFFICIENTLY PLED AND REQUIRE DISMISSAL ....................... 3

POINT II .......................................................................................................................................... 19

      A.     THE NEW YORK STATE CLAIMS MUST BE DISMISSED AS THE
              PLAINTIFF FILED DEFECTIVE NOTICE OF CLAIMS...................... 19

CONCLUSION................................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Abdelhami v. Altria Group, Inc*., 515 F.Supp.2d 384 (S.D.N.Y. 2007)........................................... 2

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ...................................... 10, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................... 1, 2

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87 (2d Cir. 2007) ......................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 1

*Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 U.S. Dist. LEXIS 111672, 2022 WL
    2263794, at *12 (S.D.N.Y. June 23, 2022) ....................................................................... 6, 8, 19

*Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) .................... 7, 9

*Boggs v. Town of Riverhead*, 2018 U.S. Dist. LEXIS 190772 (E.D.N.Y. Nov. 7, 2018)....... 18, 20

*Boyce v. Erie County*, No. 13-CV-619S, 2014 WL 4923588 (W.D.N.Y. Sept. 30, 2014)............. 2

*Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411 (S.D.N.Y. 2002)...................................... 8

*Brown v City of New York* 95 NY2d 389 (2000) ......................................................................... 19

*Buari v. City of New York*, 530 F. Supp. 3d 356 (S.D.N.Y. 2021) .............................................. 10

*Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704 (2d Cir. 2002)................................................... 2

*Ceely v. New York City Health & Hospital Corp*., 162 A.D.2d 492............................................. 21

*Chapman v. City of Albany*, No. 23-CV-686-LEK-PJE, 2025 U.S. Dist. LEXIS 12632 (N.D.N.Y.
    Jan. 24, 2025) ............................................................................................................................. 13

*City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) ........................................................ 6, 8, 18

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988)..................................................................... 7

*Connick v. Thompson,* 563 U.S. 51 (2011) ................................................................. 5, 14, 16, 19

*Corbett v. City of New York,* 15-CV-09214-GHW, 2016 U.S. Dist. LEXIS 178037 (S.D.N.Y.
    December 22, 2016) .................................................................................................................... 16

*Cox v. City of Rochester*, No. 22-CV-6207-FPG, 2025 U.S. Dist. LEXIS 3843................ 7, 13, 14

*Dava v. City of New York,* 15-CV-08575-ALC, 2016 U.S. Dist. LEXIS 115639 (S.D.N.Y.
    August 29, 2016) ........................................................................................................................ 16

*DeCarlo v. Fry*, 141 F.3d 56 (2d Cir. 1998)................................................................................... 8

*Diarra v. City of New York*, 771 F. App'x 69 (2d Cir. 2019)....................................................... 19

*Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196 (E.D.N.Y. 2013) ................. 20

*Douglas v. Peekskill*, No. 21-CV-10644-KMK, 2023 WL 2632217 (S.D.N.Y. March 24, 2023)13

*Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 U.S. Dist. LEXIS 42837 (N.D.N.Y. Mar. 31, 2014)............................................................................................................................................ 18

*Galgano v. Cty. of Putnam,* 16-CV-3572-KMK, 2020 U.S. Dist. LEXIS 116682 (S.D.N.Y. July 2, 2020).............................................................................................................................................. 9

*Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103 (1989) .................................................... 6

*Greene v. City of New York,* 742 Fed. Appx. 532 (2d Cir. 2018)........................................... 12

*Greene v. Furman*, 610 F.Supp.2d 234 (W.D.N.Y. 2009)............................................................. 2

*Harmer v. Westchester Cty.,*16-CV-7610-VB, 2017 (S.D.N.Y. December 11, 2017) .................. 9

*Johnson v. City of New York*, No. 06-CV-9426-GBD, 2011 U.S. Dist. LEXIS 15867 (S.D.N.Y. Feb. 15, 2011)..................................................................................................................................... 7

*Jones v. Town of E. Haven*, 691 F.3d 72 (2d Cir. 2012).................................................... 5, 7, 8, 13

*Katz v. Klehammer*, 902 F. 2d 204 (2d Cir. 1990) ............................................................................ 6

*Kirton v. Doe*, No. 20-CV-10860-KMR, 2023 U.S. Dist. LEXIS 47874 (S.D.N.Y. March 21, 2023).................................................................................................................................... 14, 18

*Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-CV-3923-DF, 2016 U.S. Dist. LEXIS 177587 (S.D.N.Y. Nov. 21, 2016) ....................................................................................................... 16

*Lockett v. City of Middletown,* 19-CV-08255 (PMH), 2021 (S.D.N.Y. March 22, 2021).............. 9

*Mancuso v. Vill. of Pelham*, No. 15-CV-7895, 2016 U.S. Dist. LEXIS 134788 (S.D.N.Y. Sep. 29, 2016)................................................................................................................................... 15-16

*McCants v. City of Newburgh*, No. 14-CV-556, 2014 U.S. (S.D.N.Y. Nov. 21, 2014) .............. 18

*Mejia v. N.Y. City Health & Hosps. Corp.,* 2018 U.S. Dist. (S.D.N.Y. July 17, 2018)................ 21

*Miller v. County of Nassau*, 467 F. Supp. 2d 308 (E.D.N.Y. 2006) ............................................ 10

*Monell v. Department of Social Services,* 436 U.S. 658 (1978) ........................................... 6, 7, 10

*New York City Dept. of Ed.*, 400 F. Supp.3d 25 (S.D.N.Y. 2019).................................................. 2

*Newsom v. City of N.Y.*, No. 16-CV-6773, 2-19 WL 3997466 (E.D.N.Y. Aug. 23, 2019) .......... 13

*Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015) .............................................................. 4

*O'Neal v. City of New York,* 196 F. Supp. 3d 421 (S.D.N.Y. 2016).......................................... 15

*Oriental v. Vill. of Westbury,* No. 18-CV-3878,-DRH-GRB, 2019 U.S. Dist. LEXIS 171232 (E.D.N.Y. Oct. 2, 2019) ..................................................................................................... 13, 18

*Palmer v. City of New York*, 564 F. Supp. 3d 221 (E.D.N.Y. Sept. 30, 2021) ............................ 12

*Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172 (S.D.N.Y. June 21, 2021).... 13

*Ricks v. Brown*, No. 20-CV-00043-LJV-HBS, 2020 U.S. Dist. LEXIS 121846 (W.D.N.Y. July 10, 2020)..................................................................................................................................... 11

*Ricks v. Brown*, No. 20-CV-00043-LJV-HBS, 2020 U.S. Dist. LEXIS 172627 (W.D.N.Y. Sept. 21, 2020)........................................................................................................................... 11, 12

*Roe v. City of Waterbury,* 542 F. 3d 31, 36 (2d Cir. 2008)............................................................ 7

*Ruiz v. City of New York*, No. 14-CV-5231-VEC, 2015 U.S. Dist. LEXIS 117947, 2015 WL 5146629 (S.D.N.Y. Sep. 2, 2015) ................................................................................................. 6

*Santana v. City of New York*, No. 15-CV-6715-ER, 2018 U.S. Dist. LEXIS 53865, 2018 WL 1633563 (S.D.N.Y. Mar. 29, 2018)............................................................................................. 8

*Simms v. City of New York*, 10-CV-3420 (NGG), 2011 U.S. Dist. LEXIS 115949, 2011 WL 4543051 (E.D.N.Y. Sept. 28, 2011) ........................................................................................... 14

*Smith v. Collins,* No. 15-CV-216-PAE, 2016 U.S. Dist. LEXIS 23710 (S.D.N.Y. February 26, 2016) ........................................................................................................................................... 16

*Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864 (2d Cir. 1992) ..................................................... 10

*Stallworth v. N.Y.C. Health & Hosps. Corp.*, 243 A.D.2d 704 (App. Div. 1997) ........................ 21

*Thomas v. Co. Westchester,* 215 F. Supp. 2d 329 (S.D.N.Y. 2002) ............................................... 6

*Tieman v. City of Newburgh*, No. 13-cv-4178-KMK, 2015 U.S. Dist. LEXIS 38703, 2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015)................................................................................... 9, 10, 15

*Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ...................................... 16, 17

*Vann v. City of New York*, 72 F.3d, 1040 (2d Cir. 1995).............................................................. 15

*Vasquez v. City of New York*, No-CV-4641-ER, 2023 U.S. Dist. LEXIS 219614 (S.D.N.Y. Dec. 11, 2023)........................................................................................................ 13, 15, 16, 17

*Vippolis v. Vill. of Haverstraw*, 768 F.2d 40 (2d Cir. 1985)......................................................... 7

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) ........................................................... 15

*Walker v. New York*, No. 14-CV-808-ER, 14-CV-808-ER, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015)............................................................................................................. 17

*White v. City of New York*, 206 F. Supp. 3d 920 (S.D.N.Y. 2016)............................................... 12

*Wray v. City of New York,* 490 F. 3d 189 (2d Cir. 2009).............................................................. 7

*Zoulas v. New York City Dept. of Ed.*, 400 F. Supp.3d 25 (S.D.N.Y. 2019) ................................. 2

## Statutes

42 U.S.C. § 1983.................................................................................................................... 1, 20

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................... 1

New York General Municipal Law § 50-e(3)(a) .......................................................................... 20

New York General Municipal Law § 50-h ................................................................................... 21

## PRELIMINARY STATEMENT

This Memorandum of Law, together with the Declaration of Michael F. Perley, is submitted on behalf of named Defendants, Town of Amherst, New York, ("Amherst"), Michael J. Melton, Joseph LaCorte, and Raymond Klimczak (collectively "the Defendants") in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Through her Complaint, Plaintiff, Renay Lynch ("Plaintiff") alleges that the Defendants, individually and collectively, coerced a false confession, fabricated evidence, and suppressed exculpatory forensic findings implicating another suspect in the murder investigation of Louise Cicelsky. Plaintiff contends that this misconduct was not isolated, but the result of Amherst's failure to properly train, supervise, and discipline its officers, amounting to unconstitutional municipal policies and practices. She brings claims under 42 U.S.C. § 1983 and state law seeking redress for violations of her constitutional rights and the resulting deprivation of liberty.

Plaintiff's Complaint has failed to assert within its four corners that the alleged constitutional violations by Amherst attach *Monell* liability under 42 U.S.C. §1983. Moreover, the Plaintiff has failed to meet notice requirements pursuant to General Municipal Law § 50-e, rendering the state claims defective.

## STATEMENT OF THE CASE

For the sake of brevity, this Court is respectfully directed to the Declaration of Michael F. Perley, Esq., for a complete recitation of the underlying facts pertinent to this motion.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1

reasonable inference that the defendants are liable for the misconduct alleged." *Zoulas v. New York City Dept. of Ed*., 400 F. Supp.3d 25, 47 (S.D.N.Y. 2019) (quoting *Iqbal*, 556 U.S. at 678.) Ultimately, a Plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)). In other words, the factual allegations should "amplify" the claim to render it plausible. *See Abdelhami v. Altria Group, Inc*., 515 F.Supp.2d 384 (S.D.N.Y. 2007). Where Plaintiff fails to nudge her claims across the line from conceivable to plausible, the Complaint must be dismissed; a plausible entitlement to relief exists where the allegations in the Complaint move plaintiff's claims across the line separating the conclusory from the factual, and the factually neutral from the factually suggestive. *See Greene v. Furman*, 610 F.Supp.2d 234 (W.D.N.Y. 2009).

While the Court must "accept all factual allegations in the Complaint as true and make all reasonable inferences in a plaintiffs' favor," the "assumption of truth [applies] only to factual allegations and is inapplicable to legal conclusions," which must be disregarded. *Boyce v. Erie County*, No. 13-CV-619S, 2014 WL 4923588, at *1 (W.D.N.Y. Sept. 30, 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zoulas, supra* (quoting *Iqbal*, 556 U.S. at 678-79; *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002)).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## **ARGUMENT**

Plaintiff's *Monell* claims against Amherst should be dismissed because the complaint fails to allege a specific municipal policy or a widespread practice of unconstitutional conduct, relying

2

instead on conclusory assertions of isolated misconduct by individual officers.  The allegations do not establish deliberate indifference on the part of municipal policymakers, as required under *Monell*, nor do they plausibly show that Amherst was on notice of prior similar violations that would have necessitated additional training or supervision.  Moreover, Plaintiff's failure to comply with New York General Municipal Law § 50-e by timely and specifically serving the appropriate recipient for her state law causes of action independently bars those claims. As a result, Claims 9 and 11, along with any related state law claims set forth in Claims 12-16, must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## POINT I

### A.   PLAINTIFF'S CLAIMS FOR *MONELL* LIABILITY ARE INSUFFICIENTLY PLED AND REQUIRE DISMISSAL

In the Complaint, the Plaintiff seeks *Monell* liability as against the Amherst on the following two (2) claims: 1) *Monell* [Liability] for the Unconstitutional Custom or Policy of Failing to Adequately and Faithfully Account for and Preserve Forensic Evidence in Amherst's Possession under *Newton v. City of New York* (**Claim 9**); and 2) *Monell* Municipal Liability for the Misconduct of Employees of the Amherst Police Department ("APD") (**Claim 11**).[1]

As to Claim 9, the allegations against Amherst are as follows:

- Amherst, through its final policymakers, had a policy, custom, or practice of withholding, destroying, or failing to account for forensic crime scene evidence — including fingerprints and DNA — which could have proven the Plaintiff's innocence.  **(¶ 433).**
- Amherst allegedly failed to properly train and supervise officers and other personnel in the preservation, maintenance, and documentation of forensic evidence. **(¶434).**

---

[1] Federal Rules of Civil Procedure Rule 8 discusses that the Plaintiff must identify a "Claim of Relief."  The Plaintiff stylizes its relief under "Cause[s] of Action."  The Defendants will refer to these causes of action as Claims throughout this brief.

- These failures are claimed to have caused violations of Plaintiff's constitutional rights under the First, Fifth, and Fourteenth Amendments — specifically her rights to a fair trial, to due process, and to access the courts. (**¶435**).
- Plaintiff asserts that as a result of these failures, she was unable to use key forensic evidence during her post-conviction proceedings, depriving her of liberty for additional years and causing other harms. (**¶466**).
- The Plaintiff brought this claim under *Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015), which recognized a due process right to post-conviction access to evidence when it might prove innocence.

As to Claim 11, the allegations against Amherst are as follows:
- Alleges that the Police Chief and/or his delegates, including Captain Melton, were final policymakers responsible for training, supervising, and disciplining officers with respect to criminal investigations and prosecutions. (**¶535**).
- APD supervisors were responsible for training officers on constitutional obligations, including: (a) Not prosecuting individuals without probable cause (Fourth, Fifth, and Fourteenth Amendments); (b) Not fabricating evidence or coercing confessions (Fourth, Fifth, Sixth, and Fourteenth Amendments); (c) Disclosing exculpatory evidence to the prosecution for turnover to the defense (Fourth, Fifth, Sixth, and Fourteenth Amendments). (**¶536**).
- Plaintiff contends that APD's final policymakers — including the Chief of Police and Captain Melton — failed to train, supervise, and discipline officers on their constitutional duties related to criminal investigations and evidence disclosure, and breached this duty knowingly or with deliberate indifference. (**¶¶533–536, 538, 553-559**).
- Claims these officials incentivized constitutional violations by pressuring homicide detectives to close cases quickly, even if it meant engaging in misconduct like falsifying reports and suppressing evidence. (**¶¶539, 543, 562**).
- Through deliberate or *de facto* policies, procedures, practices, or customs, officials implemented or tolerated such by failing to adequately train, supervise, or discipline officers, despite knowing such misconduct routinely arises in criminal investigations. It further asserts that these officials were on notice that officers faced systemic pressures to prioritize arrests and convictions, creating a foreseeable risk of constitutional violations like those allegedly committed in Ms. Lynch's case. (**¶¶540-541**).
- Detectives used coercive tactics to extract a false confession from Ms. Lynch, including exploiting her drug withdrawal, making threats, and feeding her non-public crime scene information to script a narrative. (**¶¶7, 172-176, 544**).
- The confession was typed by the detectives and included provably false details inconsistent with objective forensic evidence. (**¶¶202-207, 549**).
- APD officers improperly used jailhouse informants. (**¶¶546-548**).
- APD officers, including Captain Melton, suppressed exculpatory fingerprint evidence showing another individual (Suspect C) was at the crime scene, and intentionally provided false trial testimony to conceal this evidence. (**¶¶8, 9, 287-321, 562-564**).

- Acting with deliberate indifference, policymaking officials failed to implement adequate training, supervision, or discipline to prevent recurring constitutional violations. As a result, by the time of the murder investigation, it had become an established policy or practice among APD detectives to engage in coercive interrogations, fabricate or omit critical information in reports, destroy exculpatory notes, and withhold favorable evidence from prosecutors. (¶¶**560-561**).
- Plaintiff contends that this misconduct was consistent with an "anything goes" culture" based on unconstitutional or deliberately indifferent policies or customs. (¶¶**565–567**).
- Plaintiff cites *Ricks v. Brown*, No. 20-CV-00043-LJV-HBS, 2020, 2020 U.S. Dist. LEXIS 172627, at *3 (W.D.N.Y. Sept. 21, 2020), as another example of an ongoing pattern of misconduct. (¶**552**).

As set forth above, the Plaintiff asserts a pattern of misconduct by individual officers on this individual case, but fails to identify any specific policy, training deficiency, or supervisory failure by Amherst that led to the alleged violations. The allegations regarding coercing the Plaintiff's confession (¶¶196–207) and suppressing fingerprint evidence (¶¶287–319), describes individual misconduct, not a municipal custom or practice. "Isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify [*Monell*] liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). As such, Plaintiff fails to plausibly allege that Amherst was on notice of a recurring problem and made a deliberate choice to ignore it. The references to APD's "long-standing policies" on fingerprint documentation (¶¶296–300), in fact, undermines Plaintiff's claim. If such policies existed, the alleged misconduct represents a deviation from policy — not evidence of an unconstitutional municipal practice. There are no factual allegations that Amherst was previously aware of similar misconduct by its officers or that the need for further training or supervision was "so obvious" as to justify a finding of deliberate indifference. *See Connick v. Thompson,* 563 U.S. 51, 64 (2011).

Based on the conclusory and vague allegations, the Plaintiff fails to meet the *Iqbal* and *Twombly* standard. *Ruiz v. City of New York*, No. 14-CV-5231-VEC, 2015 U.S. Dist. LEXIS

117947, 2015 WL 5146629, at *12 (S.D.N.Y. Sep. 2, 2015) (describing plaintiff's argument that the alleged misconduct was "repetitive, continuous and systematic" as "vague and conclusory" and dismissing plaintiff's *Monell* claims); *see also Bird v. Cnty. of Westchester*, No. 20-cv-10076-NSR, 2022 U.S. Dist. LEXIS 111672, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) (dismissing a *Monell* complaint where conclusory allegations "allege[d] broadly that [the municipality] 'has engaged in a policy, custom, or pattern and practice'" of unconstitutional conduct).    Based on these deficiencies, Claims 9 and 11 must be dismissed.

### 1.  General Legal Standards Pursuant to *Monell*

Section 1983 empowers citizens to sue state actors and municipalities for depriving them of "rights, privileges, or immunities secured by the constitutions and laws [of the United States]." Section 1983 does not create new rights, rather it provides a mechanism for the redress of violations of rights created elsewhere including claims based upon a state actor's violation of constitutional and/or federal statutory rights. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985); *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 105 (1989). Thus, in order to establish a claim under Section 1983, a plaintiff must demonstrate that he or she was deprived of a right secured by the Constitution or laws of the United States. *See Katz v. Klehammer,* 902 F. 2d 204, 206 (2d Cir. 1990). "Deprivation of a constitutional right is the *sine qua non* of Section 1983; absent such a violation, no claim — either against an individual or against a municipality under the *Monell* doctrine — will lie*." Thomas v. Co. Westchester,* 215 F. Supp. 2d 329 (S.D.N.Y. 2002).

In *Monell v. Department of Social Services*, the Supreme Court held that municipalities could be liable under Section 1983 for certain constitutional violations.  436 U.S. 658, 690-91 (1978).  *Monell* does not provide a separate cause of action, rather, "it extends liability to a municipal organization where that organization's failure to train or supervise, or the policies or

customs that it has sanctioned, led to an independent constitutional violation." *Cox v. City of Rochester*, No. 22-CV-6207-FPG, 2025 U.S. Dist. LEXIS 3843, *7-8 (W.D.N.Y. Jan. 8, 2025). As such, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove...that an official policy of the municipality caused the constitutional injury." *See Roe v. City of Waterbury,* 542 F. 3d 31, 36 (2d Cir. 2008), *citing Monell, supra; see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122 (1988) ("governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondent superior* basis for the tort of its employee." *Jones, supra*, 691 F.3d at 80. That is because a "municipality may not be found liable simply because one of its employees committed a tort." *Roe,* 542 F. 3d at 36, *citing Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997).

"To hold a [municipality] liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (i) an official policy or custom that (ii) causes the plaintiff to be subjected to (iii) a denial of a constitutional right." *Wray v. City of New York,* 490 F. 3d 189, 195 (2d Cir. 2009). The "official policy" element -- can only be satisfied where a plaintiff proves that a "municipal policy of some nature caused a constitutional tort." *Monell, supra,* 436 U.S. at 691; *see also Johnson v. City of New York*, No. 06-CV-9426-GBD, 2011 U.S. Dist. LEXIS 15867, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (*Monell* requires "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].").

Claims that rely on "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Jones, supra,* 691 F.3d at 81; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Bird, supra*, 2022 U.S. Dist. LEXIS 111672, at *12 ("[The] [p]laintiff fails to allege the existence of any other similar incident, which dooms [the] [p]laintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Id.; see also Santana v. City of New York*, No. 15-CV-6715-ER, 2018 U.S. Dist. LEXIS 53865, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'"); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

In order to allege such a policy or custom:

> "[A] plaintiff may assert one of the following: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees."

*Harmer v. Westchester Cty.,*16-CV-7610-VB, 2017 U.S. Dist. LEXIS 203401, at *17-18 (S.D.N.Y. December 11, 2017). "Such a claim cannot lie in the absence of an underlying constitutional violation." *See, Lockett v. City of Middletown,* 19-CV-08255 (PMH), 2021 U.S. Dist. LEXIS 53495, at *11 (S.D.N.Y. March 22, 2021), *(citing Galgano v. City. of Putnam,* 16-CV-3572-KMK, 2020 U.S. Dist. LEXIS 116682, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020).

### 2.    The Plaintiff Fails to Sufficiently Allege Improper Policies or Customs

Throughout the Complaint, the Plaintiff alleges that the policies and customs of APD's commission of unconstitutional wrongs were encouraged and incentivized, thereby arguing such practices were so persistent and widespread.  Moreover, the Plaintiff alleges that Amherst "[w]ith deliberate indifference to such misconduct, APD policymaking officials failed to take adequate steps to train, supervise, or discipline APD employees to prevent or deter such constitutional violations from occurring."  (¶560).  The Plaintiffs have, therefore, alleged the third and fourth theories of municipal liability that the Defendants will discuss below.[2]

### A.    Widespread Practice of Misconduct

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Tieman v. City of Newburgh*, No. 13-CV-4178-KMK, 2015 U.S. Dist. LEXIS 38703, 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) (quoting *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)). To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must

---

[2] The Plaintiff has not asserted an official policy within Amherst; nor has the Plaintiff asserted that decisions were made by officials with final decision-making authority.

"show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).  In other words, to satisfy liability based on a persistent and widespread practice, "a policy maker indirectly cause[s] the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (citing *Monell*, 436 U.S. at 694); *see also Tieman*, *supra*, 2015 U.S. Dist. LEXIS 38703 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)) ("a local government is faced with a pattern of misconduct and does nothing, [it] compel[s] the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").  Under this theory, such acquiescence implies "constructive knowledge of policy making officials."  *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)).

Here, the Plaintiff cannot cite to another example where anyone from Amherst, let alone the investigating officers, did any of the following:

> 1) withheld or destroyed crime scene evidence, (¶433);
> 2) created unconstitutional incentives to close cases by pressuring officers to close cases through "coercion, trickery, falsification of reports, and suppression of evidence[,]", (¶¶ 539, 561, 564-565);
> 3) conducted coercive interrogations to obtain unreliable or fabricated evidence, (¶¶544 and 561);
> 4) improperly used jailhouse informants to obtain unreliable and fabricated evidence, (¶546);[3]

---

[3] To the extent that the events surrounding Raquel Hunter's testimony against the Plaintiff is an example of another unconstitutional violation, the Plaintiff fails to plausibly plead that APD obtained this testimony in an unconstitutional manner.  The crux of the allegations is that Hunter's cooperation in another case was not disclosed prior to trial.  However, as alleged in ¶548, Hunter's cooperation "was not disclosed to Ms. Lynch by the *prosecution* prior to trial."  Moreover, any

> 5) preserve and disclose favorable evidence to the defense, known as *Brady* material, (¶554); and
> 6) encouraged or pursued illegal detentions without probable cause, (¶¶556(b) and 561).

Despite alleging that Amherst has a "history of making wrong choices in such matters," *see* ¶540, and that detectives "had a history and practice of unlawfully coercing witnesses . . ." *see* ¶557, the Plaintiff cannot come close to demonstrating a persistent and widespread pattern.

In an attempt to support her position, the Plaintiff cited *Ricks v. Brown*, No. 20-CV-00043-LJV-HBS, 2020, 20220 U.S. Dist. LEXIS 172627, at \*3 (W.D.N.Y. Sept. 21, 2020), to suggest that a member of APD (not the Defendants) "suppressed favorable information, fabricated inculpatory evidence, and pursued a criminal case" against Ricks due to "his racial animus against African Americans." (¶ 552). This reliance is misplaced for multiple reasons.

To start, *Ricks* significantly lacks parallels to the Louise Cicelsky murder investigation in 1995. In *Ricks*, APD was only tangentially involved in the robbery investigation that led to Ricks' conviction. As stated in the late-Judge Scott's Report and Recommendation ("R&R"), a APD Officer pulled over a vehicle that had been allegedly involved in an armed robbery in Buffalo. *See Ricks v. Brown*, No. 20-CV-00043-LJV-HBS, 2020 U.S. Dist. LEXIS 121846 (W.D.N.Y. July 10, 2020).[4] Upon searching the vehicle, an APD officer recovered approximately $3,500.00. There

---

benefit received by Hunter was due to bargaining with the ECDA, as it is alleged that the reduction in Jones' criminal charges were reduced "by the *State*," not APD. At the time of the trial, pursuant to New York's discovery rules, impeachment material, or otherwise known as *Rosario* material, need not be disclosed until "[a]fter the jury has been shorn and before the prosecutor's opening address." *Matter of Doorley v. Castro*, 160 A.D.3d 1381, 1382 (4th Dept. 2018) (quoting CPL former 240.45(1)(a)).

[4] Citing to the R&R is proper as this information is incorporated in the complaint by reference, *see Oriental v. Vill. of Westbury*, No. 18-CV-3878-DRH-GRB, 2019 U.S. Dist. LEXIS 171232, \*5-7 (E.D.N.Y. Oct. 2, 2019).

are no allegations that this arrest and subsequent conviction was part of a broader pattern of police misconduct. Second, although Ricks had his robbery conviction vacated, the New York State Court upheld his receiving stolen property charge, as this Court noted in its Decision and Order. *See Ricks v. Brown*, No. 20-CV-00043-LJV-HBS, 2020 U.S. Dist. LEXIS 172627, at \*3 (W.D.N.Y. Sept. 21, 2020). The Plaintiff erroneously asserts that Ricks "committed no crime." See ¶551. In fact, as Judge Scott noted, a "state-court judge determined on the merits that plaintiff's conviction at trial created a definitive presumption of probable cause, regardless of whether another judge determined later that the robbery charge lacked certainty beyond a reasonable doubt." Relying on this determination, this Court dismissed Ricks' Section 1983 claim against Amherst, pursuant to Rule 12(b)(6). Importantly, "the mere fact that a complaint is filed against the City alleging police misconduct does not show that the complaint was substantiated or that the misconduct in fact amounted to a constitutional violation." *Palmer v. City of New York*, 564 F. Supp. 3d 221, 240 (E.D.N.Y. Sept. 30, 2021); *see also White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (plaintiff failed to allege a persistent and widespread practice where "none have resulted in an admission or finding of liability."). Ricks' unverified allegations have no merit or parallel to this case. Finally, Ricks' 2004 arrest was not contemporaneous related to the Cicelsky murder investigation between 1995 and 1998. *Greene v. City of New York,* 742 Fed. Appx. 532, 536-37 (2d Cir. 2018) (upholding dismissal of *Monell* claim where plaintiff failed to demonstrate "contemporaneous or subsequent violations" to show that the municipality had notice that it needed to conform its training...to constitutional dictates that the underlying constitutional violation).

The *Ricks* case, therefore, fails to support the Plaintiff's suggestion that Amherst engaged in widespread misconduct rendering it liable under *Monell*. As such, the Plaintiff "does not state

any specific policy or allege any other facts to support an inference that a custom or policy, beyond Defendants' conduct in this instant action, exists." *Chapman v. City of Albany*, No. 23-CV-686-LEK-PJE, 2025 U.S. Dist. LEXIS 12632, *13 (N.D.N.Y. Jan. 24, 2025); *Vasquez v. City of New York*, No-CV-4641-ER, 2023 U.S. Dist. LEXIS 219614, *19 (S.D.N.Y. Dec. 11, 2023) ("Moreover, the single incident at issue here is insufficient to establish liability for the City."). Here, like in *Oriental, supra*, 2019 U.S. Dist. LEXIS 171232, *9-10, the Complaint "contains only a detained account of plaintiffs' own experiences[,]" and lacks facts to "plausibly suggest . . . a widespread practice." Even if the Plaintiff had alleged multiple similar incidents, if those incidents fail to allege a pattern of misconduct, courts have routinely denied *Monell* liability claims. See *e.g. Cox, supra*, 2025 U.S. Dist. LEXIS 3843, *22-23 (granting summary judgment finding, in part, that three incidents of misconduct over three years was insufficient to establish a pattern of misconduct); *Jones, supra*, 691 F.3d at 85 (discussing that "two instances, or at the most three, over a period of several years" of related misconduct "fell far short of showing a policy custom, or usage . . ."); *cf. Newsom v. City of N.Y.*, No. 16-CV-6773, 2-19 WL 3997466, at *8 (E.D.N.Y. Aug. 23, 2019) (87 cases of prosecutorial misconduct, including 28 cases of withholding *Brady* and *Rosario* material "sufficiently alleged a pattern and practice of which municipal policymakers must have been aware."). Since the Plaintiff has only articulated "isolated incidents of unconstitutional behavior" she has "not plausibly allege[d] a well-settled custom[,]" to provide sufficient notice to Amherst. *See Douglas v. Peekskill*, No. 21-CV-10644-KMK, 2023 WL 2632217, at *9 (S.D.N.Y. March 24, 2023) quoting *Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172, at *12 (S.D.N.Y. June 21, 2021).

Similarly, aside from the isolated incidents in this case, the Plaintiff provides no specifics related to the pattern misconduct or widespread unconstitutional policies or customs. She does not

13

identify any actual customs or policies; rather, she offers conclusory allegations about there being "history" of violations within APD.  Such boilerplate and conclusory assertions are insufficient to meet the plausible claim standards.  *Simms v. City of New York*, No. 10-CV-3420 (NGG), 2011 U.S. Dist. LEXIS 115949, 2011 WL 4543051, at \*3 (E.D.N.Y. Sept. 28, 2011), *aff'd* 480 F. App'x 627 (2d Cir. 2012) (dismissing conclusory allegations that do not provide any facts allowing the court to infer what "city policies, practices, or customs contributed to or caused the deficiency.").

Additionally, without properly identifying what policies, customs, or practices were widespread, the Plaintiff cannot sufficiently "establish a causal link" between those policies and the unconstitutional conduct that is necessary to establish liability.  *See Kirton v. Doe*, No. 20-CV-10860-KMR, 2023 U.S. Dist. LEXIS 47874, \*24-27 (S.D.N.Y. March 21, 2023).  Due to these threadbare and conclusory allegations, Plaintiff's claims related to Amherst employing a pattern or widespread misconduct must be dismissed.

### B.    Deliberate Indifference

The remaining arguments, and what appears to be the majority of the Plaintiff's allegations, relate to Amherst's alleged failure to train and supervise its officers, amounting to deliberate indifference.  *See* ¶560.    The policy or custom requirement is only satisfied under this prong if the pattern is "so persistent or widespread as to have the force of law." *Connick, supra,* 563 U.S. at 61.  The need to act must be "so obvious" and the "inadequacy" of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need. *Cox, supra,* 2025 U.S. Dist. LEXIS 3843, at \*23 quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390 (1989*).* In order for a municipality to be liable under the "deliberate indifference" standard, a plaintiff has to show each of the following: (1) that "a [municipality] knows 'to a moral certainty' that

14

her employees will confront a given situation," (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *O'Neal v. City of New York,* 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016) (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)). A Section 1983 claim is "at its weakest" when it relies on alleged failures to train or supervise. *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614, *15-16 (quoting *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018)); *see also Connick*, 563 U.S. at 61 to discuss ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.")

To support a failure to supervise theory, a plaintiff may establish that (1) "there was a pattern of allegations of or complaints about similar unconstitutional activity," and (2) "the municipality consistently failed to investigate those allegations." *Tieman*, 2015 U.S. Dist. LEXIS 38703, 2015 WL 1379652, at *21. Alternatively, a plaintiff may plead that (1) "there was a pattern of actual similar constitutional violations," and (2) "the municipality consistently failed to discipline those involved." *Id.* In other words, a plaintiff must not only establish an obvious need but also the municipality's deliberate indifference thereto. *See Vann v. City of New York*, 72 F.3d, 1040, 1049 (2d Cir. 1995) ("An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."). Thus, to survive a motion to dismiss, a plaintiff must plead sufficient facts to make it plausible that the municipality was "on notice" of similar misconduct. *Mancuso v. Vill. of*

*Pelham*, No. 15-CV-7895 (KMK), 2016 U.S. Dist. LEXIS 134788, 2016 WL 5660273, at *10 (S.D.N.Y. Sep. 29, 2016). *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614, *16-17.

Under the failure to properly train theory, a plaintiff must "identify a specific deficiency in the [municipality's] training program and establish that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 391). "Failure to train arguments are grounded in the showing of multiple, similar civil rights complaints in comparable contexts to the alleged constitutional injuries or close temporal proximity." *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614, at *18. This is because the plaintiff must allege that the municipality was on notice that its training program was "deficient in a particular respect." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (quoting *Connick*, 563 U.S. at 62).

When a plaintiff fails to allege specific factual allegations on a "failure to train" theory, Courts will routinely dismiss that claim. *See, Dava v. City of New York,* No. 15-CV 08575-ALC, 2016 U.S. Dist. LEXIS 115639, at *25-26 (S.D.N.Y. August 29, 2016); *see also Corbett v. City of New York,* 15-CV-09214-GHW, 2016 U.S. Dist. LEXIS 178037, at *10-11 (S.D.N.Y. December 22, 2016) (citing *Smith v. Collins,* 15-CV-216-PAE, 2016 U.S. Dist. LEXIS 23710 (S.D.N.Y. February 26, 2016)) ("While it may be true that Section 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery... this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim.*"); Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-CV-3923-DF, 2016 U.S. Dist. LEXIS 177587, 2016 WL 7377238, at *11 (S.D.N.Y. Nov. 21, 2016) (dismissing failure to train *Monell* claim in part because each "of plaintiff's new allegations regarding a supposed lack of training are too general and

speculative" and collecting cases); and *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program.").

Starting with the failure to supervise claim, the Plaintiff has not identified a single case, let alone a pattern of allegations of complaints or actual similar violations. Nor has the Plaintiff averred that Amherst either failed to investigate or discipline any misconduct. Without establishing such a pattern, the Plaintiff cannot plausibly claim that Amherst was deliberately indifferent to misconduct. Like in *Vasquez, supra*, since the Plaintiff has failed to allege any facts concerning Amherst's "awareness and tolerance of misconduct and instead simply assumes that [Amherst] is 'aware of the widespread nature of the issue . . .'" the Plaintiff cannot demonstrate notice. 2023 U.S. Dist. LEXIS 219614. As Amherst had no notice, it cannot be claimed that Amherst's "failure to supervise its employee was a policy of deliberate indifference." *Id.*

As to the failure to train claim, the Plaintiff merely offers rote, conclusory, and boilerplate language alleging Amherst failed to properly train its employees. The Plaintiff does not allege specific training deficiencies. Nor does she cite any training manuals, procedural manuals, or any other aspects of Amherst's training to support an inference that Amherst failed to properly train and that such failure caused the alleged violations. *See Walker v. New York*, No. 14-CV-808-ER, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015) (dismissing failure to train claim since the plaintiff failed to cite to procedural manuals, training guides, or other aspects of police training); and *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614 (discussing the Plaintiff did "not identify procedural manuals or training guides, nor [does he] highlight relevant particular aspects of police training" that "would be required to plead a failure to train claim."). Plaintiff's "mere assertion"

17

that Amherst failed to properly train its officers does not meet the *Iqbal* standard. *Oriental, supra*, 2019 U.S. Dist. LEXIS 171232, *9-10.  In essence, the conclusory language "shed[s] no light on [Amherst's] customs, policies, or training."  *See Boggs v. Town of Riverhead*, 2018 U.S. Dist. LEXIS 190772, 2018 WL 5830824 (E.D.N.Y. Nov. 7, 2018) (discussing how courts "routinely reject claims such as these as bases for attaching municipal liability.").

Moreover, like the claims above, the Plaintiff has not cited any other incidents that would demonstrate that Amherst's training was specifically deficient, leading to deliberate indifference. "There must be an affirmative link between [, for example,] the training inadequacies alleged, and the particular violation at issue."  *Kirton, supra*, 2023 U.S. Dist. LEXIS 47874, at *24 quoting *Tuttle*, 471 U.S. at 824 n. 8.  Without plausibly alleging what training programs were deficient, the Plaintiff cannot meet her burden.

This situation is far from the allegations in *McCants v. City of Newburgh*, No. 14-CV-556, 2014 U.S. Dist. LEXIS 165821, 2014 WL 6645987, at *4-5 (S.D.N.Y. Nov. 21, 2014), where the Court found the plaintiff sufficiently alleged the need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants.  Nor is this case similar to *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 U.S. Dist. LEXIS 42837, 2014 WL 1311903, at *8 n.7 (N.D.N.Y. Mar. 31, 2014), where plausible failure to train claim arose where "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years".  In those cases, the Plaintiffs were able to establish the necessary pattern to claim municipal deliberate indifference.  Here, the Plaintiff falls far short of meeting the plausibility burden as no notice can be claimed.

18

"Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, *supra*, 563 U.S. at 62.  This lack of notice "dooms" the Plaintiff's claims.  *Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 U.S. Dist. LEXIS 111672, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022).  The claims should, therefore, be dismissed.

## POINT II

### A.    THE NEW YORK STATE CLAIMS MUST BE DISMISSED AS THE PLAINTIFF FILED DEFECTIVE NOTICE OF CLAIMS

As referenced in the Complaint, on April 2, 2024, the Plaintiff served a Notice of Claim on the Town of Amherst within 90 days of the events giving rise to her claim, i.e. the dismissal of the Indictment on January 4, 2024.  *See* ¶¶23 and 368.  The Plaintiff served the Notice of Claim on the Town of Amherst's Comptroller.  (*See* Exhibit A to Attorney Declaration).[5]  For the reasons set forth below, service on the Town's Comptroller constitutes defective service and requires dismissal of the New York State claims against the Town and the individual Town Defendants, *see* Claims 12-16.

Service of a notice of claim within 90 days after a claim arises is a condition precedent to a lawsuit against a municipality.  *See* General Municipal Law § 50-e(1)(a); *Brown v City of New York* 95 NY2d 389, 392 (2000) and *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir.

---

[5] Reliance on Exhibit A is proper as this information is incorporated in the complaint by reference, *see Oriental*, *supra*, 2019 U.S. Dist. LEXIS 171232, *5-7.  Moreover, in deciding a motion to dismiss, a court is entitled to consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Weiss v. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)

2019).  Proper parties for service of a notice of claim against a Town in New York are the supervisor or clerk.  NY CPLR 311(a)(5).  General Municipal Law § 50-e(3)(a) further allows for service "to an attorney regularly engaged in representing such public corporation."  Service on the Town's Comptroller constitutes defective service.

General Municipal Law § 50-e(3)(c), which allows for the correction of certain defects in the methods of service, such as service by ordinary mail, does not excuse service on the incorrect recipient.  *Scantlebury v. N.Y. City Health & Hosps. Corp*., 4 N.Y. 3d 606 (2005) (discussing that savings provision under Section 50-e(3)(c) does not excuse a plaintiff's failure to timely serve a notice of clam in the proper party); *see also Dreckette v. New York City Health & Hosps. Corp*., 45 Misc. 3d 752, 994 N.Y.S. 2d 813 (Sup. Ct. 2014) (dismissed complaint with prejudice where a notice of claim was inappropriately filed on the City Comptroller and not against the defendant New York City Health and Hospitals Corporation).  Filing the Notice of Claim with the Town's Comptroller is, therefore, "fatally defective."  *See Dreckette, supra*.

"While the Supreme Court has held that state law notice-of-claim requirements do not apply to actions under 42 U.S.C. § 1983, it carefully noted that 'federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state's] notice-of-claim provision.'" *Boggs*, *supra*, 2018 U.S. Dist. LEXIS 190772, *18-20 (quoting *Felder v. Casey*, 487 U.S. 131, 151 (1988)).  Notably, "[f]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." *Id.* (quoting *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 216 (E.D.N.Y. 2013)).  Based on Plaintiff's defective service, the Court does not have jurisdiction to hear the Plaintiff's state law claims.  *Id*.; *see also Mejia v. N.Y. City Health & Hosps. Corp.,* 2018 U.S. Dist. LEXIS 119224, *36-37

(S.D.N.Y. July 17, 2018) (dismissing New York State claims brought with a Section 1983 lawsuit for failing to serve the Notice of Claims on the proper recipient).

The Plaintiff may argue that the hearing conducted on October 1, 2024, pursuant to General Municipal Law § 50-h, may cure any deficiency.  Such an argument will fail, however, as it has been held that participation in this type of hearing does not cure any 50-e defects.  *See Stallworth v. N.Y.C. Health & Hosps. Corp*., 243 A.D.2d 704 (App. Div. 1997) and *Ceely v. New York City Health & Hospital Corp*., 162 A.D.2d 492 (conducting a 50-h hearing and obtaining medical authorization from the Plaintiff did not cure improper service on a notice of claim).

Based on the foregoing, the Plaintiff's New York State claims must be dismissed.

<u>**CONCLUSION**</u>

As is evident, the Complaint, as related to Claims 9 and 11 fails as those claims are not plausible on their face.  The New York State claims also fail due to defective service.  For the foregoing reasons, the Plaintiff's Complaint on those claims must be dismissed.

DATED:      Buffalo, New York
            April 15, 2025

**HURWITZ & FINE, P.C.**

_____
Michael F. Perley, Esq.
*Attorney for Defendants Town of Amherst,*
*Melton, LaCorte, and Klimczak*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900
mfp@hurwitzfine.com

21