UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RENAY LYNCH,

                  Plaintiff,

v.                                                                      **Case No. 1:25-cv-00075-LJV**

THE TOWN OF AMHERST, MICHAEL J. MELTON,
JOSEPH LaCORTE, RAYMOND KLIMCZAK and THE
COUNTY OF ERIE,

                  Defendants.

_____


**DEFENDANT COUNTY OF ERIE'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**


**LIPPES MATHIAS LLP**
Jennifer C. Persico, Esq.
Brian C. Mahoney, Esq.
Kirstie A. Means, Esq.
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
bmahoney@lippes.com
kmeans@lippes.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

RELEVANT FACTS ALLEGED IN COMPLAINT ..................................................1

APPLICABLE STANDARD........................................................................................2

ARGUMENT ...............................................................................................................4

POINT I: PLAINTIFF'S MONELL CLAIM FAILS TO STATE A CLAIM................4

    A.   Plaintiff Has Failed to Allege a De Facto or Widespread Policy or Custom .................5

       i.   De Facto Monell Policy ....................................................................5

      ii.   Legally Sufficient Evidence of a De Facto Policy......................................6

         a.   Alleged Incidents Are Not Factually Comparable .................................6

         b.   Alleged Incidents Are Not Temporally Relevant...................................9

         c.   No Adjudications of Liability .............................................................11

         d.   Alleged Incidents Are Too Isolated to Establish a Pattern ...................14

    B.   Plaintiff Cannot Maintain a Failure to Train, Discipline or Supervise Claim...............17

POINT II: THE COUNTY CANNOT BE HELD LIABLE UNDER
        *RESPONDEAT SUPERIOR*.........................................................................21

CONCLUSION...........................................................................................................22

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.P. v. Dannhauser,*
   2025 WL 917233 (E.D.N.Y. Mar. 25, 2025)...............................................12, 18

*Amnesty America v. Town of West Hartford,*
   361 F.3d 113 (2d Cir. 2004) ........................................................5, 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................2, 3

*Baker v. McCollan,*
   443 U.S. 137 (1979) ........................................................................3

*Barney v. Conway,*
   730 F. Supp. 2d 264 (W.D.N.Y. 2010)......................................................7, 8

*Batista v. Rodriguez,*
   702 F.2d 393 (2d Cir. 1983) ..............................................................21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................2

*Buari v. City of New York,*
   530 F. Supp. 3d 356 (S.D.N.Y. 2021) ...........................5, 11, 14, 16

*Calderon v. City of New York,*
   138 F. Supp. 3d 593 (S.D.N.Y. 2015).....................................................12

*Chepilko v. City of New York,*
   2012 WL 398700 (E.D.N.Y. Feb. 7, 2012) ...........................10, 11

*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989) ......................................................................19

*City of Okla. City v. Tuttle,*
   471 U.S. 808 (1985) ......................................................................21

*Connick v. Thompson,*
   563 U.S. 51, 61 (2011)......................................... 17, 18, 19, 20

*Delanuez v. City of Yonkers,*
   2022 WL 16540682 (S.D.N.Y. Oct. 28, 2022)..........................................21

*Dwares v. City of New York,*
   985 F.2d 94 (2d Cir. 1993)...........................................................4, 15

*Epps v. City of Buffalo,*
   19-cv-00281 (NY ) ........................................................................13

ii

*Giaccio v. City of New York,*
    308 F. App'x 470 (2d Cir. 2009)................................................................15

*Gleeson v. County of Nassau,*
    2019 WL 4754326 (E.D.N.Y. Sept. 30, 2019 2019)..........................................9

*Goston v. Rivera,*
    462 F. Supp. 2d 383 (W.D.N.Y. 2006)..........................................................8

*Greene v. City of New York,*
    742 Fed. Appx. 532 (2d Cir. 2018)......................................................15, 19

*Isaac v. City of New York,*
    2018 WL 5020173 (E.D.N.Y. Aug. 6, 2018)...........................................6, 12, 13

*Jackson v. Nassau Cnty.,*
    552 F. Supp. 3d 350 (E.D.N.Y. 2021)......................................................6, 7

*Jones v. Town of East Haven,*
    691 F.3d 72 (2d Cir. 2012).........................................................10, 19, 20

*Jones v. Westchester Cty.,*
    182 F. Supp. 3d 134 (S.D.N.Y. 2016)..........................................................4

*Lilly v. Hall,*
    16-CV-242, 2019 WL 275799 (W.D.N.Y. Jan. 22, 2019)....................................4

*Lopez v. City of New York,*
    2022 WL 2078194 (S.D.N.Y. June 9, 2022)...............................................9, 11

*Melvin v. County of Westchester,*
    2016 WL 1254394 (S.D.N.Y. Mar. 29, 2016).........................................9, 11, 15

*Miller v. County of Monroe,*
    2024 WL 2804435 (W.D.N.Y. May 31, 2024)........................................5, 6, 16

*Mosca v. City of New York,*
    No. 17-cv-4327, 2019 WL 938936 (E.D.N.Y. Feb. 25, 2019)...........................20

*Nielson v. Rabin,*
    746 F.3d 58 (2d Cir. 2014).......................................................................3

*Nunez v. City of New York,*
    735 Fed. Appx. 756 (2d Cir. 2018)......................................................10, 14

*O'Neal v. City of New York,*
    196 F. Supp. 3d 421 (S.D.N.Y. 2016)..................................................19, 20

*Ocasio v. City of Canandaigua,*
    513 F. Supp. 3d 310 (W.D.N.Y. 2021)........................................................18

*Ortiz v. Case,*
    2019 WL 1236413 (W.D.N.Y. Mar. 18, 2019)..............................................13

*Owens v. Cnty. of Monroe,*
  2021 WL 6113950 (W.D.N.Y. Dec. 27, 2021) ..................................................16

*Patterson v. City of Oneida, N.Y.,*
  375 F.3d 206 (2d Cir. 2004) ............................................................................3

*People v. Lorenzo,*
  84 Misc. 3d 1207, 218 N.Y.S.3d 746 (Sup. Ct. Erie Cnty. 2023) ...................7, 12

*People v. Maldonado,*
  122 A.D.3d 1379 (4th Dep't 2014).....................................................................8

*Peters v. City of Buffalo,*
  848 F. Supp. 2d 378 (W.D.N.Y. 2012).........................................................13, 21

*Plair v. City of New York,*
  789 F. Supp. 2d 459 (S.D.N.Y. 2011) ...............................................................3

*Rodriguez v. City of New York,*
  607 F. Supp. 3d 285 (E.D.N.Y. 2022)..............................................................19

*Rodriguez v. City of Westchester,*
  2017 WL 118027 (S.D.N.Y. Jan. 11, 2017 2017).........................................9, 11

*Santiago v. City of Rochester,*
  2022 WL 856780 (W.D.N.Y. Mar. 23, 2022) ......................................................3

*Simms v. City of New York,*
  480 F. App'x 627 (2d Cir. 2012) .....................................................................19

*Swinton v. Livingston Cnty.,*
  2023 WL 2317838 (2d Cir. 2023) .....................................................................5

*Vann v. City of Rochester,*
  2019 WL 2646616 (W.D.N.Y. June 27, 2019) ..............................................8, 16

*Walker v. City of New York,*
  2014 WL 1259618 (S.D.N.Y. Mar. 18, 2014) ...................................................17

*Walker v. City of New York,*
  2015 WL 4254026 (S.D.N.Y. July 14, 2015) ....................................................17

*Ying Li v. City of New York,*
  246 F. Supp. 3d 578 (E.D.N.Y. 2017)................................................................3

*Zahra v. Town of Southold,*
  48 F.3d 674 (2d Cir. 1995) ..............................................................................4


**STATUTES**

Title 42 U.S.C. § 1983...........................................................................................21

***FEDERAL RULES***

Fed. R. Civ. P. 12(b)(6)..................................................................................................22

**PRELIMINARY STATEMENT**

Plaintiff Renay Lynch ("Plaintiff") asserts as her tenth cause of action, a claim against the County of Erie (the "County") entitled "*Monell* Municipal Liability for the Misconduct of Prosecutors." Her claim appears to allege a hodge-podge of theories generally accusing the Erie County District Attorney's Office ("ECDA") of improper policies, practices and/or customs of, *inter alia*, failure to disclose evidence, turning a blind eye to false and fabricated evidence; eliciting false testimony from witnesses; and delivering false or misleading opening and closing arguments. (*See* Compl. at ¶¶ 469-475).

Even construing all facts and inferences in Plaintiff's favor, she simply has not and cannot plead a valid *Monell* claim against the County. Thus, Plaintiff's *Monell* claim cannot survive the pleading stage. Beyond that, Plaintiff's Sixteenth Cause of Action, suggesting the County should be held liable under *respondeat superior*, is in direct conflict with controlling precedent. As a result, both claims alleged against the County should be dismissed in their entirety.

**RELEVANT FACTS ALLEGED IN COMPLAINT**

The allegations relevant to the County, as set forth in the Complaint, are summarized below and accepted as true for purposes of this motion only.

Plaintiff asserts a *Monell* claim against the County based on alleged constitutional violations by prosecutors employed by the ECDA. She also asserts a *respondeat superior* claim.

According to the Complaint, Plaintiff was wrongfully convicted in 1998 of the murder of her landlord, Louise Cicelsky, an elderly woman found dead in her apartment in the Town of Amherst. (Compl. ¶¶ 43-59, 231-33). Following her death, the Amherst Police Department began an investigation in which Plaintiff became a suspect. (Compl. ¶ 131). Plaintiff was arrested more than a year later on an unrelated larceny charge and was subsequently interviewed by detectives

1

which resulted in her allegedly coerced false confession to participating in the murder during a robbery gone wrong with Kareem Walker. (Compl. ¶¶ 183-208).

Plaintiff alleges that members of the Amherst Police Department and its detectives coerced her into a false confession, fabricated and/or withheld evidence from the ECDA and further that ECDA failed to disclose the fabricated and unfabricated evidence during the course of her underlying criminal proceedings and her post-conviction proceedings. (Compl. ¶¶ 461-62, 465(d)). Plaintiff further alleges that the prosecutor engaged in misconduct during the course of the trial and contributed to her conviction. (Compl. ¶ 464).

In an effort to support her *Monell* claim, Plaintiff alleges that the investigative and prosecutorial failures were not isolated to her case, but indicative of broader systemic issues within the ECDA. (Compl. ¶¶ 466, 468, 485). Plaintiff makes the boilerplate conclusory allegations that her alleged constitutional violations were the result of policies, customs, or practices of the ECDA.

Plaintiff attempts to support her sweeping *Monell* claim by citing other alleged incidents and complaints from the 1960s to the present in which she alleges that the ECDA suppressed exculpatory evidence, presented false or misleading arguments, or failed to comply with disclosure obligations. (Compl. ¶¶ 493–520). According to the Complaint, these are illustrative of ECDA's practices and the lack of corrective action, supervision, or discipline within the Office. (Compl. ¶¶ 469–475, 520–521). Plaintiff contends that ECDA's alleged policies, customs, and failures constituted deliberate indifference to the constitutional rights of criminal defendants and were a proximate cause of her conviction, incarceration, and damages. (Compl. ¶¶ 466, 485, 532).

## APPLICABLE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Conclusory allegations

are not sufficient to state a claim and are stripped away when considering the sufficiency of the complaint. *Iqbal*, 556 U.S. at 679. The facts pleaded must show, not merely allege, that the Plaintiff is entitled to relief. *Id.* The court is required to accept facts alleged in the complaint as true for the purposes of a motion to dismiss, but need not credit conclusory allegations. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

As with any other claim at the motion to dismiss stage, a plaintiff asserting a *Monell* claim "must allege 'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017) (quoting *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011)). Section 1983 is "not itself a source of substantive rights[,]" but instead provides a vehicle "for vindicating federal rights elsewhere conferred[.]" *Patterson v. City of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Conclusory assertions that are devoid of factual allegations cannot support a § 1983 claim. *See, e.g., Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Put simply, to allege there is a policy does not make it so." *Santiago v. City of Rochester*, 2022 WL 856780, at *3 (W.D.N.Y. Mar. 23, 2022) (internal citation and quotation marks omitted).

For all the reasons that follow, Plaintiff's Complaint fails to allege a *Monell* claim as a matter of law and should be dismissed in its entirety as to the County.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S MONELL CLAIM
FAILS TO STATE A CLAIM**

Importantly, "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Lilly v. Hall*, 16-CV-242, 2019 WL 275799, at *4 (W.D.N.Y. Jan. 22, 2019) (internal citation omitted); *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

Instead, to demonstrate the existence of a policy or custom, a plaintiff must show (1) "a formal policy officially endorsed by the municipality"; (2) actions or decisions taken by a municipal official "responsible for establishing the municipal policies that caused the particular deprivation in question"; (3) "a practice so consistent and widespread that . . . [it] constitutes a custom or usage"; or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citation omitted).

Here, Plaintiff presents no plausible allegations of "a formal policy officially endorsed by the municipality," nor does she allege actions or decisions taken by a municipal official "responsible for establishing the municipal policies that caused the particular deprivation in question." Instead, Plaintiff vaguely cites to certain judicial decisions either admonishing ECDA prosecutors or overturning guilty verdicts for alleged prosecutorial misconduct. In doing so,

Plaintiff appears to frame her claim under the third and fourth theories recited above, suggestive of a *de facto* policy, or a "practice so consistent and widespread that . . . [it] constitutes a custom or usage" and/or "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Each effort fails for the reasons set forth below.

### A.    <u>Plaintiff Has Failed to Allege a De Facto or Widespread Policy or Custom</u>

#### i.    *De Facto* Monell Policy

"To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must 'show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (quoting *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). "A plaintiff may also plead the existence of *de facto* customs or policies 'by citing [ ] complaints in other cases that . . . involve factually similar misconduct, [are] contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." *See Miller v. Cnty. of Monroe*, No. 23-CV-06649-FPG, 2024 WL 2804435, at *4 (W.D.N.Y. May 31, 2024) (internal citations omitted); *see also Swinton v. Livingston Cnty.* 2023 WL 2317838 at *1 (2d Cir. 2023) ("To satisfy the requirement of an 'official policy or custom,' a litigant must establish either an 'express rule or regulation,' a practice that 'was so persistent or widespread as to [carry] the force of law,' or misconduct of 'subordinate employees' that 'was so manifest as to imply the constructive acquiescence of senior policy-making officials' that caused an alleged injury.") (internal citation omitted).

As detailed below, Plaintiff has entirely failed to plausibly allege a "persistent and widespread practice" sufficient to withstand the instant motion.

### ii.    Legally Sufficient Evidence of a *De Facto* Policy

#### a.    *Alleged Incidents Are Not Factually Comparable*

As with all purported *Monell* evidence attempting to allege a custom, policy or practice, the incidents alleged must be factually similar to the constitutional violation at issue.[1]

Stated differently, general allegations of prosecutorial misconduct or *Brady* violations will not suffice to support an inference of a municipal policy permitting the specific form of misconduct at issue. *See, e.g., Miller*, 2024 WL 2804435, at *6 (rejecting *Monell* claim where plaintiff cited a broad array of prosecutorial misconduct and Brady violations, but "a varied range of prosecutorial misconduct [was] present in each case," and "the seven specific Brady violations that [were] enumerated [were] not sufficiently 'factually similar' to Harrigan's misconduct" which dealt specifically with "disclosure of either the radio call recordings or the 'Find My iPhone' application."); *Isaac v. City of New York,* 2018 WL 5020173, at *17 (E.D.N.Y. Aug. 6, 2018) (rejecting *Monell* claim where plaintiff alleged a broad policy of "arresting innocent people and fabricating evidence" and cited several state and federal cases as support, but the court found those cases "do not support [plaintiff's] allegations of a policy or custom" because "none involved police officers providing prosecutors with false information or coercing witnesses into providing false testimony," underscoring that only closely aligned fact patterns involving the same type of misconduct can establish a *de facto* policy); *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 379–80 (E.D.N.Y. 2021) (rejecting *Monell* claim where plaintiff alleged a *de facto* policy of "conducting constitutionally inadequate investigations, committing perjury, suppressing material evidence, failing to comply with *Brady*, and using unconstitutional interrogation tactics," but cited only two lawsuits—one for malicious prosecution and another for malicious prosecution and fabrication of

---

[1] This requirement applies to both *Monell* theories alleged by Plaintiff, as confirmed in the proceeding section at Point I.B, *supra*.

evidence—that involved dissimilar misconduct and resulted in no adjudication of *Monell* liability; holding that such suits "do not involve factually similar misconduct" and therefore cannot support the alleged custom).

Here, Plaintiff's *Monell* claim relies on a scattered group of prior criminal cases, but fails to show that any involve the *same type* of *Brady* violations or misconduct alleged in her Complaint. The core allegations in *Lynch* concern the nondisclosure of physical and scientific evidence—including fingerprint analysis, DNA exclusions, and third-party alibi evidence (*see* Compl. ¶¶ 465(a)-(d))—and alleged misconduct during opening statements and summations (*see id.* ¶¶ 464, 473). However, few, if any, of the decisions cited by Plaintiff involve comparable evidence or conduct.

In *People v. Lorenzo*, 84 Misc. 3d 1207(A), 218 N.Y.S.3d 746 (Sup. Ct. Erie Cnty. 2023), the court found a *Brady* violation based solely on the prosecution's failure to disclose that a witness was unable to identify a 1921 Morgan silver dollar alleged to tie the defendant to the crime. That case involved a narrow impeachment point regarding a witness's visual recognition of an object—not forensic, scientific, or exculpatory third-party evidence of the kind at issue in *Lynch*. As indicated above, the withholding of different categories of evidence fails to establish a relevant pattern or put policymakers on notice of a need for corrective measures regarding DNA or forensic disclosures.

*Barney v. Conway*, 730 F. Supp. 2d 264, 276 (W.D.N.Y. 2010) explicitly recognized that the Appellate Division, Fourth Department "rejected Barney's contention that there was a violation of *Brady*" and went on to state "in light of the Second Circuit's cases interpreting *Brady,* the Court cannot conclude that state court unreasonably applied Federal law in essentially concluding the evidence was not 'suppressed' for purposes of establishing a *Brady* violation since defense counsel

was able to use the evidence to try to impeach Snyder on cross-examination. *Id.* at 277. Wholly contrary to suggesting a pattern of *Brady* violations, *Barney* held the opposite and, as such, cannot support Plaintiff's *Monell* claim.

Plaintiff's reference to *Goston v. Rivera*, 462 F. Supp. 2d 383, 395 (W.D.N.Y. 2006) is similarly misplaced, again precisely because the court in that decision explicitly found the defendant did "not have a viable *Brady* claim," and aside from confirming the evidence was not suppressed within the meaning of *Brady*, made no determination as to whether the evidence it even constituted *Brady* material. *See id.* ("Even if the Court were to assume that Stines' grand jury minutes constituted *Brady* material, there was not a 'suppression' of the material simply because defense counsel did not receive it prior to trial.").

Finally, *People v. Maldonado*, 122 A.D.3d 1379, 1380 (4th Dep't 2014), involved the alleged nondisclosure of recorded telephone conversations between the defendant and the victim—a fundamentally different category of evidence from the forensic and physical evidence at issue in this case. Moreover, as discussed *infra*, the decision is temporally remote from Plaintiff's 1998 conviction and fails to establish any relevant policy or practice during the operative period.

In addition to their factual dissimilarity, none of the cases cited by Plaintiff involved alleged misconduct during summations or at preliminary hearings. Accordingly, Plaintiff's *Monell* claim must fail to the extent it is predicated on any purported pattern of improper opening or closing arguments, or on alleged violations during the "grand jury at the bail hearing, and grand jury stages of the case" (*see* Compl. ¶ 469). Plaintiff simply alleges no factually similar incidents of misconduct in those phases of a criminal proceeding. *See Vann v. City of Rochester*, 2019 WL 2646616, at *7–8 (W.D.N.Y. June 27, 2019) (dismissing Monell claim where cited cases involved summation misconduct, not Brady violations or fabrication of evidence).

Thus, the disparate incidents cited by Plaintiff span different decades, involve different categories of evidence, and fail to show the same kind of prosecutorial misconduct alleged in her Complaint. Without factual similarity, Plaintiff's *Monell* theory lacks the necessary foundation to proceed, warranting dismissal in the first instance.

### b.  *Alleged Incidents Are Not Temporally Relevant*

To establish a *de facto* policy under *Monell*, the incidents cited must be not only factually similar, but also *temporally proximate* to the alleged constitutional violation at issue.  Incidents that are temporally remote—whether occurring well before or long after the conduct giving rise to the plaintiff's claim—are insufficient to plausibly support an inference of a then-existing policy, custom, or practice.  Courts within this Circuit routinely reject *Monell* claims based on stale or disconnected incidents, reasoning that such evidence fails to place municipal policymakers on notice and lacks probative value regarding the policies in effect at the relevant time.

For example, in *Gleeson v. County of Nassau*, the court held that incidents "too far removed" from the plaintiff's alleged constitutional violation could not be probative of an existing policy or practice. 2019 WL 4754326, at *16 (E.D.N.Y. Sept. 30, 2019). Similarly, in *Rodriguez v. City of Westchester*, the court dismissed a Monell claim based on a DOJ report written six years before the events in question, finding it "too stale, and too disconnected in personnel" to support an inference of a municipal custom. 2017 WL 118027, at *7 (S.D.N.Y. Jan. 11, 2017); *see also Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *15 (S.D.N.Y. Mar. 29, 2016) (DOJ letter four years before events too remote); *Lopez v. City of New York*, No. 19-CV-3882, 2022 WL 2078194, at *6–7 (S.D.N.Y. June 9, 2022) (dismissing Monell claim where most cited events occurred more than or close to a decade earlier).

The Second Circuit has made clear that incidents lose evidentiary force when they are spread too far apart in time. In *Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012), the plaintiff identified "two instances, or at the most three, over a period of several years" as evidence of a racially discriminatory municipal policy. The Second Circuit found this showing "fell far short of showing a policy, custom, or usage . . . and far short of showing abusive conduct among officers so persistent that it must have been known to supervisory authorities." Similarly, in *Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018), the Court rejected the plaintiff's reliance on 48 alleged instances of prosecutorial misconduct occurring over a span of 23 years.

District courts within the Second Circuit have applied similar rationale with respect to post-incident conduct. In *Chepilko v. City of New York*, 2012 WL 398700, at *15 (E.D.N.Y. Feb. 7, 2012), the court emphasized the weakness of relying on subsequent incidents that occurred two years after the alleged constitutional violation. The court held that the "five isolated instances of subsequent conduct are only minimally, if at all, probative of the existence of a municipal policy of unlawful enforcement in effect" at the relevant time two years earlier. It further observed that such instances "offer[ed] no evidence that a widespread or persistent custom in violation of plaintiff's constitutional rights had emerged" during the critical pre-incident period. *Id.*

Here, the vast majority of the incidents cited in Plaintiff's Complaint are either *long before* or *well after* her 1998 prosecution and thus fail to demonstrate any contemporaneous policy or deliberate indifference sufficient to support *Monell* liability.

Several of the matters cited by Plaintiff—including the incidents grouped at paragraph 520 of the Complaint—date as far back as the 1960s and 1970s. See Compl. ¶ 520. These are temporally and contextually disconnected from Plaintiff's prosecution and therefore cannot plausibly support an inference of any unconstitutional policy or custom existing in the late 1990s.

*See Lopez*, 2022 WL 2078194, at *6 (rejecting events occurring decades earlier as too remote to support *Monell* theory); *Rodriguez*, 2017 WL 118027, at *7 (same).

Likewise, Plaintiff's reliance on incidents that occurred in or after 2012—fourteen years after her 1998 conviction—is even more deficient. Compl. ¶ 519. In *Melvin*, the court found that a DOJ letter written just four years *before* the alleged events was too stale to support Monell liability. 2016 WL 1254394, at *15. If pre-incident conduct four years removed is insufficient, then post-incident conduct spanning more than a decade—as alleged here—is plainly too attenuated to establish any ongoing policy or practice during the relevant period. *See also Chepilko*, 2012 WL 398700, at *15 (subsequent incidents two years later lacked probative value); *Lopez*, 2022 WL 2078194, at *6–7 (dismissing Monell claim based on temporally remote statements and conduct).

Thus, where, as here, Plaintiff's *Monell* theory hinges on conduct that is several years removed from the incident in question, the evidentiary weight of such conduct is drastically diminished, if relevant whatsoever. Temporal distance undermines the inferential link necessary to establish either municipal notice or the existence of a persistent and widespread policy. Courts have repeatedly rejected temporally remote evidence even when it is significantly more voluminous or factually analogous than what Plaintiff alleges in her Complaint.

### c. No Adjudications of Liability

In addition to being factually and temporally relevant, incidents cited in support of a *Monell* claim must have resulted in an adjudication of liability against the municipality or its agents to carry evidentiary weight. Courts in this Circuit have made clear that mere allegations—particularly those resolved by dismissal or settlement—are insufficient to support an inference of a widespread municipal policy or custom. *See Buari*, 530 F. Supp. 3d at 399 (explaining that to allege a *de facto* policy, or a "practice so consistent and widespread that . . . [it] constitutes a custom

or usage" by citing to other cases, those cases "must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, <u>and result in an adjudication of</u> <u>liability</u>") (emphasis added); *see also Isaac,* 2018 WL 5020173, at *17 (finding that other court cases could not establish a *de facto* policy or custom because they involved dissimilar misconduct, were resolved by settlement, or the city prevailed); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) ("None of the [16] lawsuits cited resulted in an adjudication or admission of liability and the number of suits does not suggest a pervasive illegal practice."); *A.P. v. Dannhauser*, 2025 WL 917233, at *8 (E.D.N.Y. Mar. 25, 2025) ("[U]nproven allegations in a handful of cases . . . do not plausibly allege the existence of an unconstitutional policy, sufficient to defeat a motion to dismiss a *Monell* claim.").

　　　　None of the cases Plaintiff relies on to establish a pattern or practice of misconduct resulted in any adjudication of liability against the ECDA.  Indeed, the incidents cited in her Complaint, including those already addressed in the preceding sections concerning factual dissimilarity, fail not only for lack of relevance or similarity but also because they offer no legal determination of wrongdoing by ECDA.

　　　　Plaintiff first references *People v. Lorenzo*, which involved a 1994 conviction, later vacated in 2023.  *Lorenzo*, 84 Misc. 3d 1207(A), *7.  However, and as partly conceded in Plaintiff's Complaint, that vacatur resulted from a combination of newly discovered evidence, specifically certain DNA exclusion evidence that resulted from more advanced technology available in 2018 than that available in 1994, coupled with a *Brady* violation.  *Id*. at *10.  In fact, the *Lorenzo* court held that the newly discovered evidence was sufficient to grant a new trial standing alone.  *See id.* at *7 ("Because the defendants have met their burden on the basis of newly discovered evidence, the defendants' motion on this ground is granted.").

Plaintiff next cites *Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 383 (W.D.N.Y. 2012), which involved a civil rights claim surrounding a 1994 conviction vacated in 2007. Notably, this decision addresses a motion to dismiss, and not to any dispositive findings or an adjudication of any alleged wrongdoing on the part of the ECDA. *See generally, id.* Plaintiff's reliance on this case is thus misplaced, and reference to this decision cannot support her alleged *Monell* claim.

Plaintiff's reference to the matter of Josue Ortiz is similarly unavailing, and it is noteworthy that Plaintiff includes no citation to any decision pertaining to this matter. In *Ortiz v. Case*, 2019 WL 1236413, at *3 (W.D.N.Y. Mar. 18, 2019), *aff'd,* 782 F. App'x 65 (2d Cir. 2019), the claims alleged against the ECDA were dismissed, and as such, no findings or adjudication was made relative to any alleged conduct on the part of the ECDA; to the contrary, it was dismissed altogether from the lawsuit. As a result, the *Ortiz* matter likewise cannot support Plaintiff's *Monell* claim.

With respect to Plaintiff's reference to the complaint filed in *Epps v. City of Buffalo et al*, 19-cv-00281 (LJB) (LGF), Plaintiff's reliance is misplaced because neither the ECDA nor the County were named as a defendant, and instead the allegations related to conduct of the City of Buffalo. As such, no adjudication was or could have been had relative to alleged conduct on the part of ECDA and Plaintiff's allegations are entirely speculative, if not misleading.

As a result, not one of the cases cited by Plaintiff resulted in a finding of liability or even reached the merits of any claim relative to the ECDA. Without such an adjudication, Plaintiff's body of *Monell* evidence amounts to nothing more than unproven allegations, conclusory speculation, and reference to proceedings where the ECDA was either exonerated or not involved. *See Isaac*, 2018 WL 5020173, at *17 ("Contrary to the premise of plaintiff's argument, unproven allegations in a handful of cases -- whether involving these defendants or other officers—do not

plausibly allege the existence of an unconstitutional policy, sufficient to defeat a motion to dismiss a *Monell* claim.").

### d.  Alleged Incidents Are Too Isolated to Establish a Pattern

A plaintiff asserting a *Monell* claim based on a *de facto* policy must allege more than a handful of discrete instances of misconduct spread over many years. Courts have consistently held that isolated or sporadic episodes of wrongdoing are not enough to plausibly establish a "widespread" or "persistent" municipal custom. The Second Circuit and district courts within this Circuit have repeatedly emphasized that frequency, numerical sufficiency, and a concentrated temporal nexus are essential elements when assessing whether alleged incidents amount to an informal policy that acquires the force of law.  Without a substantial volume of factually similar cases concentrated within a defined time frame, there can be no inference that policymakers had notice of, acquiesced in, or tolerated the challenged conduct.

For instance, in *Nunez v. City of New York*, 735 Fed Appx 756, 760 (2d Cir. 2018), the Second Circuit held "as the district court observed, the cited 48 instances of prosecutorial misconduct over 23 years involve sufficiently different conduct from that alleged here—non-disclosure of impeachment materials and the alleged maintenance of a prosecution in the absence of reliable evidence—that they cannot plausibly plead misconduct sufficiently persistent or widespread as to indicate a pattern acquir[ing] the force of law."  Likewise, in *Buari*, the court concluded that 23 prior cases "does not plausibly suggest that the alleged practice is 'so widespread as to have the force of law,' or 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" 530 F. Supp. 3d at 406 (internal citations omitted).

Here, Plaintiff primarily relies upon four (4) incidents predating her February 1998 conviction (*see* Compl. ¶¶493-515), and three (3) post-dating her conviction (*see id.* at ¶¶517-519).

She otherwise references, at subparagraphs (a) through (f) of paragraph 520, six (6) incidents dating back to the 1960s, involving a wide range of factually distinct circumstances.[2]

In total, even accepting the shortcomings stemming from the lack of temporal proximity, factual similarities and any adjudication as to liability, the incidents which precede Plaintiff's February 1998 conviction are limited to ten (10) over a forty (40) year period. Extrapolated, this amounts to one incident every four (4) years —a far cry from the type of widespread or persistent misconduct required to establish *Monell* liability, and entirely removed from the "contemporaneous" requirement necessary to establish a *de facto* policy.[3] As such, Plaintiff's allegations lack both the frequency and concentration of conduct necessary to convert the isolated incidents relied upon in the Complaint into a pattern and are fundamentally inadequate to allege the existence of a widespread practice or policy.

For instance, in *Giaccio v. City of New York*, the plaintiff presented "four separate examples of constitutional violations," which the Second Circuit held "falls short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability." *Giaccio*, 308 F. App'x 470, 472 (2d Cir. 2009); *see also Dwares v. City of New York*, 985 F.2d 94, 101 (2d. Cir. 1993); *Greene v. City of New York*, 742 Fed. App'x 532, 537 (2d Cir. 2018).

---

[2] As indicated above, the matters cited at paragraph 520 of Plaintiff's Complaint cannot credibly support a contention suggestive of a "contemporaneous" pattern or practice or deliberate indifference because they are entirely too temporally removed, as they include incidents dating back decades prior to Plaintiff's 1998 conviction. *See, e.g.*, *Melvin*, 2016 WL 1254394, at *15 (finding that a Department of Justice letter written more than four years before the events in the complaint was too remote to support *Monell* liability). Regardless, even including these matters for purposes of analyzing this motion at this stage fails to rise to the level of a custom, practice or policy and thus does not disturb the County's *prima facie* showing.

[3] Notably, in addition to amounting to distinct *Brady* issues, the incidents cited by Plaintiff do not include any summation misconduct, nor any allegations relating to alleged violations occurring at the preliminary hearing phase. As a result, and at a minimum, Plaintiff's *Monell* claim should be dismissed as to any alleged practice, custom or policy pertaining to opening statements and summations (*see* Compl. at 473) and alleged violations occurring at the "grand jury at the bail hearing, and grand jury stages of the case" (*see* Compl. at 469) as Plaintiff's alleged Monell evidence (while deficient as her alleged Brady claim for the reasons cited throughout this brief) is entirely lacking with respect to either contention.

The case of *Owens v. Cnty. of Monroe*, 2021 WL 6113950, at *5 (W.D.N.Y. Dec. 27, 2021) is particularly instructive. There, the court found the plaintiff failed to plead a *de facto* policy based on a widespread practice of prosecutorial misconduct including the failure to disclose *Brady* materials and presenting false and misleading evidence and testimony at trial, where the plaintiff cited to 30 cases, spanning about 30 years, 18 of which occurred prior to Plaintiff's prosecution, and only 7 of which involved *Brady* violations. "In other words, Plaintiff alleges about one similar instance of misconduct involving *Brady* violations every four or so years." *Id.* The *Owens* Court concluded, "[e]ven drawing all inferences in Plaintiff's favor, such a small number of similar instances of misconduct, over the span of multiple decades, does not suggest that the practice is 'so widespread as to have the force of law,' or 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* (citations omitted). As a result the Plaintiff's claim alleging the existence of a *de facto* policy was dismissed. *Id.* The County respectfully submits the same result should occur here, as the alleged incidents relied upon by Plaintiff are even more lacking than what was deemed insufficient in *Owens*.

In light of the foregoing, and drawing all reasonable inferences in Plaintiff's favor, her attempt to argue a "practice so consistent and widespread" fails as a matter of law. *See, e.g.*, *Miller v. County of Monroe*, 2024 WL 2804435, at *4–6 (W.D.N.Y. May 31, 2024) (dismissing *Monell* claim where plaintiff cited 27 prior misconduct cases, including seven (7) *Brady* violations); *Buari*, 530 F. Supp. 3d at 406 (finding 23 prior cases "does not plausibly suggest that the alleged practice is 'so widespread as to have the force of law,' or 'so manifest as to imply the constructive acquiescence of senior policy-making officials'") (internal citation omitted); *Vann*, 2019 WL 2646616 at *7-8 (dismissing *Monell* claim where most of the cases relied upon were related to summation misconduct and thus could not support *Monell* claim alleging *Brady* violations and the

presentation of false evidence or testimony); *Walker v. City of New York*, 2015 WL 4254026, at *9 (S.D.N.Y. July 14, 2015) (finding allegations of thirty-six lawsuits involving allegedly false arrests, none of which resulted in an adjudication or finding of liability, over the span thirteen years, were "insufficient to plausibly support an inference of a widespread custom"); *Walker v. City of New York*, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (finding ten complaints, "none resulting in an adjudication of liability[ ]," over the span of a decade, "hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim").

In sum, Plaintiff's *Monell* theory relies on evidence that is temporally remote and factually dissimilar from the events giving rise to her claim. Plaintiff's purported *Monell* complaints thus lacks both the frequency and the concentration of conduct necessary to convert isolated incidents into a widespread pattern or practice. As such, even giving Plaintiff the benefit of every evidentiary doubt, the numerical showing alone fails to support any rational conclusion that the ECDA maintained a practice so "widespread" as to constitute municipal policy.

### B.     <u>Plaintiff Cannot Maintain a Failure to Train, Discipline or Supervise Claim</u>

Plaintiff's effort to allege *Monell* liability by invoking the County's alleged failure to train, supervise, or discipline prosecutors, and/or a "policy" of deliberate indifference, is also deficient as a matter of law. Courts have repeatedly emphasized that such theories represent one of the most tenuous grounds for municipal liability under § 1983 and require a stringent showing—one that Plaintiff neither has nor can allege. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To sustain such a claim, Plaintiff must demonstrate that the County acted with "deliberate indifference to the risk that civil rights would be violated by the lack of training," which in turn requires proof that:

> (1) a policymaker knows to a moral certainty that [his] employees
> will confront a given situation; (2) the situation either presents the

> employee with a difficult choice of the sort that training or
> supervision will make less difficult, or there is a history of
> employees mishandling the situation; and (3) the wrong choice by
> the city employee will frequently cause the deprivation of a citizen's
> constitutional rights.

*Ocasio v. City of Canandaigua*, 513 F.Supp.3d 310, 326 (W.D.N.Y. 2021) (internal citation

omitted); *see also Connick*, 563 U.S. at 61 ("a municipality's failure to train its employees in a

relevant respect must amount to deliberate indifference to the rights of persons with whom the

untrained employees come into contact . . . deliberate indifference is a stringent standard of fault,

requiring proof that a municipal actor disregarded a known or obvious consequence of his action.")

(internal citations, quotations, and brackets omitted).

    Moreover, a plaintiff must go further than alleging training was inadequate in the abstract.

Instead, a plaintiff must "identify a specific deficiency in the city's training program and establish

that that deficiency is closely related to the ultimate injury, such that it actually caused the

constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)

(internal citation and quotation marks omitted).  These requirements are essential because they

"ensure that a failure to train theory does not collapse into *respondeat superior* liability." *Id.*

    Here, Plaintiff relies on nothing but boilerplate failure-to-train allegations, which are

plainly insufficient "to state a claim upon which relief could be granted," thus requiring dismissal

at this juncture.  *See A.P.*, 2025 WL 917233, at *9 ("[B]oilerplate *Monell* claim[s]" are insufficient

"to state a claim upon which relief could be granted.").

    Perhaps most fatally, and as addressed more fully above, Plaintiff's allegation of deliberate

indifference likewise fails because it relies on temporally removed conduct occurring several years

prior or after the events giving rise to the alleged constitutional violation.  This is plainly

insufficient under binding precedent.  In *Greene*, the Second Circuit made clear that "[a] plaintiff

cannot point to contemporaneous or subsequent violations to establish a pattern of violations that provided notice to the [municipality] that it needed to conform its training or supervising program to constitutional dictates." 742 Fed. App'x at 536–37 (cleaned up).

Notice, by definition, must precede the constitutional injury to be relevant toward a deliberate indifference claim. Post-incident evidence cannot place a municipality on notice of a risk it has already allegedly failed to avert. *See, e.g.*, *Connick*, 563 U.S. at 63 fn. 7 ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates ....'") (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part); *Simms v. City of New York*, 480 F. App'x 627, 631 (2d Cir. 2012); *O'Neal v. City of New York*, 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016) ("almost all of these decisions—about 23—were decided after the events affecting O'Neal and thus, O'Neal cannot rely on them to plead that the City had notice of the alleged failure to train prosecutors to avoid *Brady* violations"); *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 300 (E.D.N.Y. 2022) ("A plaintiff alleging a municipality's deliberate indifference on a failure to supervise theory must cite violations that occurred before the conduct at issue took place."). As a result, only those incidents which predate Plaintiff's 1998 conviction are relevant to any allegation of deliberate indifference and/or failure to train, supervise or discipline.

Additionally, as indicated above, the Second Circuit has made clear that incidents lose evidentiary force when they are spread too far apart in time. For instance, in *Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012), the plaintiff identified "two instances, or at the most three, over a period of several years" as evidence of a racially discriminatory municipal policy. The Second Circuit found this showing "fell far short of showing a policy, custom, or usage . . .

19

and far short of showing abusive conduct among officers so persistent that it must have been known to supervisory authorities." *Id.*

In general, Plaintiff's failure-to-train, supervise and/or discipline claim suffers from the same deficiencies already discussed in Point I, as it is grounded in isolated and scattered alleged incidents that are not factually similar to the alleged misconduct in her case, instead involving alleged misconduct or procedural issues unrelated to the nondisclosure of forensic or third-party evidence alleged in her case. These disparities, coupled with the lack of temporal proximity and numerical frequency preclude any plausible inference that the County was on notice of the specific risk that prosecutors would suppress exculpatory forensic or scientific material or fail to correct alleged misstatements regarding physical evidence.

Courts consistently reject attempts to aggregate dissimilar constitutional violations into a generalized pattern of misconduct. As the Supreme Court held in *Connick*, "showing only four *Brady* violations in ten years" was insufficient where "none of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind," and thus "could not have put [the municipality] on notice" that additional training was needed on that type of violation. *Connick*, 563 U.S. at 61–62. The Court emphasized that only violations involving the *same type of misconduct* can establish notice and deliberate indifference. *Id.* (emphasis added).

Federal courts applying *Connick* have reiterated that alleged prior misconduct must involve factually similar conduct, both in kind and in context. *See Mosca v. City of New York*, No. 17-cv-4327, 2019 WL 938936, at *3 (E.D.N.Y. Feb. 25, 2019) ("The prior instances of misconduct must be sufficiently similar to the constitutional deprivations alleged by the plaintiff as to have put the City on notice that specific training was necessary."); *see also O'Neal*, 196 F. Supp. 3d at 436

(finding prior *Brady* cases did not trigger notice where the alleged misconduct involved different categories of evidence and distinct procedural contexts).

For all the foregoing reasons, inasmuch as Plaintiff attempts to allege deliberate indifference and/or a failure to train, supervise or discipline claim under *Monell*, her claim necessarily fails as a matter of law and should be dismissed.

## POINT II

### THE COUNTY CANNOT BE HELD LIABLE UNDER *RESPONDEAT SUPERIOR*

"A municipality cannot be held liable on the theory of *respondeat superior* or simply because it employs a tortfeasor." *Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 389 (W.D.N.Y. 2012); *accord Delanuez v. City of Yonkers*, 2022 WL 16540682, at *9 (S.D.N.Y. Oct. 28, 2022). "To impose liability under those circumstances would be to impose it simply because the [county] hired one 'bad apple.'" *Id.* (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985)). Instead, and as indicated above, to impose liability on a municipal entity under 42 U.S.C. § 1983, a plaintiff must meet the exacting requirements of *Monell*. In accordance with this clear precedent, the County cannot be held vicariously liable under § 1983 based on a theory of *respondeat superior* liability. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). As a result, Plaintiff's Sixteenth Cause of Action should be dismissed.

**CONCLUSION**

For these reasons, the Court should grant the County's motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6) and dismiss all causes of action asserted against it in their entirety, together

with any such other and further relief the Court deems just and proper.

Dated:  April 17, 2025
        Buffalo, New York

                                          **LIPPES MATHIAS LLP**

                                          *s/ Kirstie A. Means*
                                          Jennifer C. Persico, Esq.
                                          Brian C. Mahoney, Esq.
                                          Kirstie A. Means, Esq.
                                          *Attorneys for Defendant, County of Erie*
                                          50 Fountain Plaza, Suite 1700
                                          Buffalo, New York 14202
                                          (716) 853-5100
                                          jpersico@lippes.com
                                          bmahoney@lippes.com
                                          kmeans@lippes.com