**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

RENAY LYNCH,

                         Plaintiff,

      -against-

The TOWN OF AMHERST, Michael J. Melton, Joseph LaCorte, Raymond Klimczak, and the COUNTY OF ERIE,

                      Defendants.

**25-cv-00075-LJV**

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AMHERST DEFENDANTS' PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

FISHER & BYRIALSEN PLLC
99 Park Avenue, PH/26th Floor
New York, New York 10016
(303) 256-6345

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

NEWIRTH LINEHAN PLLC
43 West 43rd Street, Suite 160
New York, NY 10036
(917) 936-5989

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

## Contents

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 1

PROCEDURAL HISTORY................................................................................ 4

LEGAL STANDARD........................................................................................ 5

ARGUMENT ................................................................................................... 6

I.    PLAINTIFF'S § 1983 CLAIM AGAINST THE TOWN OF AMHERST MUST
      SURVIVE .............................................................................................. 6

      A.  Plaintiff Sufficiently Alleges the Town of Amherst Was Deliberately
          Indifferent to the Need to Maintain, Analyze, and/or Turn Over Forensic
          Evidence......................................................................................... 8

      B.  Plaintiff Sufficiently Alleges Failure by Supervisors to Sufficiently Train
          Officers on Proper Interrogation Tactics Leading to False Confessions ................ 11

II.   PLAINTIFF DID NOT FAIL TO MEET THE NOTICE REQUIREMENTS OF
      GENERAL MUNICIPAL LAW § 50-e ........................................................ 14

      A.  The Town Failed to Raise Any Alleged Deficiency in Service of the Notice
          of Claim ......................................................................................... 14

      B.  Plaintiff Served an Agency of the Town of Amherst, not a Separate Legal
          Entity.............................................................................................. 15

III.  THE COURT SHOULD DECLINE TO CONSIDER DEFENDANTS' MOTION TO
      DISMISS AS IT IS UNTIMELY, AND NO LEAVE FOR ADDITIONAL TIME
      WAS SOUGHT MUST FAIL BECAUSE THEY FAILED TO TIMELY ANSWER
      OR OTHERWISE RESPOND................................................................... 17

CONCLUSION............................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) …………………………………………… 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ……………………………………... 5

*Boston v. Suffolk Cty.*, 326 F. Supp. 3d 1 (E.D.N.Y. 2018) ………………………………… 9, 10

*Boyd v. City of Buffalo*, No. 22-cv-00519, 2025 U.S. Dist. LEXIS 7187 (W.D.N.Y. Jan. 14, 2025) ……………………………………………………………………11

*Cash v. Cnty. of Erie*, 654 F.3d 324 (2d Cir. 2011) ………………………………………….. 9

*Ceely v. New York City Health & Hospitals Corp.*, 556 N.Y.S.2d 694 (1990) ……………….. 15

*Chamberlain v. City of White Plains,* 986 F. Supp. 2d 363 (S.D.N.Y. 2013) ………………. 9, 14

*City of Canton v. Harris*, 489 U.S. 378 (1989) …………………………………………….. 7, 9

*Connick v.* Thompson, 563 U.S. 51 (2011) ……………………………………………………… 9

*Cordova-Bell v. N.Y.C. Tr. Auth.,* 71 Misc.3d 1206(A), 2021 N.Y. Misc. LEXIS 1500 (Sup. Ct., Bronx Cty., 2021) ……………………………………………………………………… 16

*Daniel v. T & M Prot. Res., Inc*., 992 F. Supp. 2d 302 (S.D.N.Y. 2014) ………………………. 5

*Dreckette v. New York City Health & Hosps. Corp*., 994 N.Y.S.2d 813 (Sup. Ct. 2014) ………15

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ……………………………………….. 7

*Erickson v. Pardus*, 551 U.S. 89 (2007) …………………………………………………… 5

*Edrei v. City of New York*, 254 F. Supp. 3d 565 (S.D.N.Y. 2017), *aff'd sub nom, Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) …………………………………………………………… 12

*Houston v. Lack,* 487 U.S. 266 (1988) ……………………………………………………… 17

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ……………………………………………….. 8

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ………………………………………. 7

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ……………………………………… 5

*Kumar v. Alhunaif*, No. 23 CIV. 321 (DEH), 2025 WL 833547 (S.D.N.Y. Mar. 17, 2025)      18

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) 7

*Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ……………………………….. 6, 7

*Moray v. City of Yonkers*, 924 F. Supp. 8 (S.D.N.Y. 1996) …………………………………… 7

*Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310 (W.D.N.Y. 2021) ………………………11

*Pembaur v. Cincinnati*, 475 U.S. 469 (1986) ……………………………………………………7

*Prevost v. City of New York*, No. 13-CV-3760 VEC, 2014 WL 6907560 (S.D.N.Y. Dec. 9, 2014) …………………………………………………………………….. 13

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ………………………………………….18

*Santiago v. Santanna,* 8 A.D.3d 650, 779 N.Y.S.2d 554, 2004 N.Y. App. Div. LEXIS 9140 (2d Dep't 2004) …………………………………………………………………….. 16

*Santos v. New York City*, 847 F. Supp. 2d 573 (S.D.N.Y. 2012) …………………………………7

*Schluter Sys., LP v. Sanven Corp.*, No. 8:22-CV-155, 2022 WL 17617807 (N.D.N.Y. Dec. 13, 2022) ……………………………………………………………………… 18

*Stallworth v. New York City Health & Hosps. Corp.*, 663 N.Y.S.2d 287 (2d Dep't 1997) …… 15

*Sterling v. Deutsche Bank Nat'l Tr. Co. as Tr. for Femit Tr. 2006-FF6, Mortg. Pass Through Certificates, Series 2006-F6*, No. 19-cv-205 (GBD) (KNF), 2019 WL 4199976 (S.D.N.Y. Sept. 5, 2019) ………………………………………………………………….. 18

*Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404 (S.D.N.Y. 2013) …………………… 7

*Walker v. New York*, 974 F.2d 293 (2d Cir. 1992) …………………………………….. 8, 11

*Wekenmann v. Biegasiewicz*, 2024 U.S. Dist. LEXIS 81911, 2024 WL 1947898 (W.D.N.Y. 2024) …………………………………………………………………….. 16

**Statutes**

42 U.S.C. § 1983 ……………………………………………………………………… 5

**Rules**

Fed. R. Civ. P. 12(a)(1) …………………………………………………………………17

Fed. R. Civ. P. 12(b)(6) …………………………………………………………………5

## PRELIMINARY STATEMENT

Plaintiff Renay Lynch spent over 25 years wrongfully imprisoned for the murder of her friend and landlord Louise Cicelsky: a crime she did not commit. Ms. Lynch, a victim of domestic violence,who engaged in petty crime as a means of survival was particularly vulnerable to manipulation and deprivation of her civil rights. That vulnerability was exploited byDefendant officers Michael J. Melton, Joseph LaCorte, Raymond Klimczak and was enabled, in large part, by the Town of Amherst ("Amherst" or the "Town") and the Amherst Police Department ("APD") (jointly, the "Amherst Defendants"), whose long standing failures to train and discipline officers created the conditions for such misconduct.Defendants now file the present partial motion to dismiss as to the municipal liability claims. They also seek to challenge service of a notice of claim that they never before contested—after subjecting Plaintiff to a rigorous -hour hearing pursuant to New York's General Municipal Law § 50-h. Plaintiff submits this Memorandum in Opposition to Amherst Defendants' partial motion to dismiss.

This case stems from the egregious wrongs of Defendants Melton, LaCorte, and Klimczak as well as the wrongs by Amherst and Defendant Melton in failing to properly train and supervise its officers, creating an atmosphere rife with constitutional violations that led to Ms. Lynch's unlawful incarceration for over 25 years.

## STATEMENT OF FACTS

Plaintiff relies on the thorough recitation of the facts in the Complaint. However, briefly, in May 1995, Louise Cicelsky was found stabbed to death in her apartment in Amherst, New York. (Compl., Dkt. No. 1 ¶¶ 43-46.) For eighteen months, the APD investigated the murder. (*Id.* ¶ 7.) They identified numerous suspects with motives, including individuals who Ms. Cicelsky had sued or locked out of apartments and who admitted having animosity towards her. (*Id.* ¶¶ 89-112.)

Among the persons considered as a suspect was a downstairs tenant-neighbor with a manslaughter conviction and a violent past who had a rocky relationship with Ms. Cicelsky. This person, referred to as Suspect C in the Complaint, knew Ms. Cicelsky always left her back door unlocked. (*Id.* ¶¶ 113-130.)

Ms. Lynch was not initially a suspect. (*Id.* ¶ 138.) Instead, the Defendant Officers turned to her for information about a man named Kareem Walker, with whom Ms. Lynch had a brief relationship and who drove her to Ms. Cicelsky's apartment building on one occasion to pay her rent. (*Id.* ¶¶ 87, 139, 159.) On or about October 15, 1996, APD Investigators learned that Ms. Lynch had been arrested and was facing the prospect of jail time for larceny charges. (*Id.* ¶ 157.) Officers decided to use Ms. Lynch's legal predicament to coerce her into obtaining information they could use to arrest Mr. Walker. (*Id.* ¶ 158.)

On October 22, 1996, Defendants LaCorte and Klimczak approached Ms. Lynch at the Erie County Courthouse prior to her being sentenced and told her that, if she helped them obtain information connecting Mr. Walker to Ms. Cicelsky's murder, they could help her avoid jail time for her larceny charges. (*Id.* ¶¶ 159, 161.) Although Ms. Lynch did not have any information that Kareem Walker was involved in the Cicelsky murder, she agreed to help Defendants LaCorte and Klimczak to avoid jail time by wearing a wire. (*Id.* ¶¶ 162-63.) Ms. Lynch did not obtain any information connecting Kareem Walker to the murder of Ms. Cicelsky (*Id.* ¶¶ 168-69.) Eager to close the investigation, on November 6, 1996, Defendants Melton, LaCorte, and Klimczak, and other APD Investigators again attempted to coerce Ms. Lynch into providing them with a statement implicating Mr. Walker with Ms. Cicelsky's murder. (*Id.* ¶ 172.)

Shortly thereafter, Defendants Melton, LaCorte and Klimczak learned that Kareem Walker was in Florida around the time of Ms. Cicelsky's murder and could not have been involved. Around

this time, Defendants Melton, LaCorte, and Klimczak also learned that Ms. Lynch had been involved in the robbery of an expensive fur coat. (*Id*. ¶ 183.) Defendants LaCorte and Klimczak arrested Ms. Lynch for the robbery and brought her to the APD. (*Id*. ¶ 184.)  Defendant LaCorte testified at trial that he was enraged with Ms. Lynch and acted "nasty" towards her because she "ma[de] [him] look bad" by stealing the coat while she was out on appeal bond because of his efforts. (*Id*.  ¶ 185.)

While in custody, Ms. Lynch was visibly suffering severe withdrawal symptoms from drugs and was in great physical distress. (*Id*. ¶ 186.) Knowing she was suffering from withdrawal symptoms, Defendant LaCorte threatened Ms. Lynch with seven years in prison for the theft of the fur coat, but said that she would not be arrested if she helped them retrieve the coat, which she subsequently did. (*Id*. ¶ 188.) Despite his earlier promise that he would keep her out of prison if she recovered the coat, Defendant LaCorte told Ms. Lynch he was charging her for the stolen coat and that she would be in prison for several years. (*Id*. ¶ 191.) At this point, Ms. Lynch had been in police custody for approximately six hours and her sickness from withdrawal had significantly worsened. (*Id*. ¶ 192.) Defendants Melton, LaCorte, and Klimczak told Ms. Lynch that she would be prosecuted for the theft of the coat unless she gave them information about Ms. Cicelsky's murder. (*Id*. ¶ 193.) Defendant LaCorte falsely told Ms. Lynch that they knew Walker committed the murder but that her November 6 statement—in which she placed Walker but not herself at the scene of the crime—would not be enough to arrest him as they "needed [her] to be there at the murder." (*Id*. ¶ 194.)

Though Defendants Melton, LaCorte, and Klimczak knew that Mr. Walker could not have committed the murder because he was in Florida at the time, they nevertheless showed Ms. Lynch gruesome crime scene photographs of  her friend's murder and fed her false information about

how Mr. Walker had murdered Ms. Cicelsky. (*Id*. ¶¶ 195-96.) The Defendants used threats, pressure, and intimidation including threats of a charge of perjury and ten-to-fourteen years in jail if she did not "confess." (*Id*. ¶¶ 197-99.) As a result of the Defendants' coercion, Ms. Lynch agreed to sign a statement "confession" written by Defendant Klimczak. (*Id*. ¶ 201.)

At the trial in which Ms. Lynch was ultimately convicted, Defendant Captain Melton, who was in charge of fingerprint analysis at the APD, falsely testified that only two latent prints from the crime scene were suitable for comparison. (*Id*. ¶ 288.). He also falsely testified that there were no "usable" prints obtained from inside the victim's home. (*Id*. ¶ 289.) Both of these statements were provably, and knowingly, false. In fact, APD Officers had submitted five prints, not two, to be compared against fingerprints maintained in the state's database. (*Id*. ¶ 292.) Additional documentation suppressed from Ms. Lynch until after 2017 established that at least nine fingerprints from inside the crime scene were found, and that some, if not all of those prints, were "usable." (*Id*. ¶ 294.) Defendant Melton himself had started analyzing a fingerprint of the downstairs neighbor which placed him in probative locations inside the victim's home. (*Id*. ¶¶ 314-316.) Defendant Melton knew that many of these prints were usable, including those recovered from inside the victim's home, but knowingly lied under oath about this evidence at trial when he testified otherwise. (*Id*. ¶ 303.) Though Ms. Lynch testified at trial, disavowing her November 6 and November 25 statements and maintaining her innocence, she was convicted. On April 9, 1998, Ms. Lynch was sentenced to twenty-five years to life. (*Id*. ¶¶ 226-28, 231-32.) Ms. Lynch was incarcerated as of her November 25, 1996 arrest, and remained so until her release on parole on January 27, 2022. (*Id*. ¶ 233.) She was exonerated on January 4, 2024. (*Id*. ¶ 368.)

**PROCEDURAL HISTORY**

On April 2, 2024, Plaintiff served a Notice of Claim upon the Town of Amherst within

4

ninety days of the events giving rise to her claims.  On October 1, 2024, Plaintiff appeared for an examination pursuant to Section 50-h taken jointly by attorneys for the Town of Amherst, the Town of Tonawanda, the County of Erie, and the individually named defendants. . At no time did Defendant Town of Amherst ever return the Notice of Claim as defective or assert any objection to  service of the Notice of Claim.

Plaintiff filed this civil rights action on January 23, 2025. All Defendants were properly served. On April 15, 2025 Defendants Town of Amherst, Melton, LaCorte and Klimczak filed the present partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  First, Defendant's partial motion seeks dismissal of Plaintiff's Claims 9 and 11 on the grounds that the Complaint "failed to assert within its four corners that the alleged constitutional violations by Amherst attach *Monell* liability under 42 U.S.C. § 1983."  (Dkt. 14-3, p. 1).  Second, Amherst Defendants claim for the first time that Plaintiff failed to meet the notice requirements of General Municipal Law § 50-e in relation to claims 12-16.[1]

## **LEGAL STANDARD**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) requires that a court considering a motion to dismiss "draw all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Based on this view of the allegations, if there are "enough facts to state a claim to relief that is plausible on its face," the Court must deny the motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible if it contains enough factual

---

[1] Defendants Amherst, Melton, LaCorte and  Klimczak have not moved to dismiss claims 1-8, 10.

allegations, taken as true, "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.   Plaintiff's Complaint clearly meets the requisite standard.

## ARGUMENT

I. **PLAINTIFF'S § 1983 CLAIM AGAINST THE TOWN OF AMHERST MUST SURVIVE**

Plaintiff's detailed Complaint more than sufficiently alleges municipal liability at the motion to dismiss stage.  The Defendants' claim that Plaintiff has not provided sufficient facts to allege municipal liability is patently wrong. (Amherst Defs' MOL at 2.) Plaintiff has alleged (1) that the Town of Amherst was deliberately indifferent to the need to maintain, analyze, and/or turn over forensic evidence, including fingerprint evidence, *see, e.g.*, Compl. ¶¶ 433-36; (2) that the Town of Amherst failed to train its officers, including on proper interrogation tactics and charging decisions, ultimately leading to Ms. Lynch's false confession, *e.g.*, *id.* ¶¶ 556-58; and (3) that Defendant Captain Michael Melton was a policymaker who knowingly caused the unconstitutional conduct and intentionally violated Ms. Lynch's constitutional rights and caused others to do the same, *e.g.*, *id.* ¶¶ 300, 312-320.

For a person deprived of a constitutional right to have recourse against a municipality under Section 1983, he or she must show harm that results from an identified municipal "policy," "custom," or "practice." *See generally Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To state a claim for municipal liability pursuant to *Monell*, a plaintiff must allege:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees

will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996); *see also Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 439 (S.D.N.Y. 2013) (internal citations omitted).

The Second Circuit has consistently held that a municipality's failure to train or supervise its employees can constitute a "policy or custom" if that failure amounts to "deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "Deliberate indifference may be inferred where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Jenkins*, 478 F.3d at 94 (quoting *City of Canton*, 489 U.S. at 390).

At the motion to dismiss stage, a plaintiff need not prove these elements, but rather need only sufficiently allege them to make out a plausible claim for relief. *See Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). There is no heightened pleading requirement for complaints alleging municipal liability under 42 U.S.C. § 1983. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Under § 1983, local governments are responsible for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). In other words, the municipality must be the "the moving force" causing the underlying constitutional violation. *Monell*, 436 U.S. at 694. Causation may be proven either by showing that a final policymaker directly committed or commanded the violation of the plaintiffs federal rights, "or that while the policymaker himself engaged in 'facially lawful . . . action,' he indirectly caused the misconduct of a subordinate municipal employee." *Jeffes v.*

*Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405-07 (1997)).

### A.  Plaintiff Sufficiently Alleges the Town of Amherst Was Deliberately Indifferent to the Need to Maintain, Analyze, and/or Turn Over Forensic Evidence

The need for training on properly maintaining, analyzing, and turning over forensic evidence, including fingerprint evidence—the bedrock of many criminal prosecutions and defenses—is "so obvious" that Amherst's failure to provide it is plausibly deliberately indifferent. *Walker v. New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (finding deliberate indifference where a municipality knows its employees will confront a situation presenting difficult choices that could lead to constitutional violations, and the wrong choice will frequently cause such violations, yet fails to train).

Ms. Lynch alleges in great detail how the APD failed to properly maintain, analyze, or turn over fingerprint evidence in her case and failed to properly train its employees on maintaining, analyzing, and turning over fingerprint records. (Compl. ¶¶ 433, 434, 436.) These fingerprint records included the discovery of 14 digital images of fingerprints taken from the crime scene and, most egregiously, a CD of ten latent prints collected from the crime scene that were only turned over to her 25 years after her conviction. (*Id*. ¶¶ 276-282, 311.) Some of these prints were found in probative locations within Ms. Cicelsky's home, including on a door jamb in the kitchen near where Ms. Cicelsky's body was found and a door jamb leading to the hallway where a bloody drawer and purse were found. (*Id*. ¶¶ 283-286.).

Plaintiff also alleged that Defendant Melton, a Captain and supervisor in the APD, knowingly testified falsely that there were no "usable" prints obtained from inside the victim's home. (*Id*. ¶¶ 288-290.) The Complaint alleges that Defendant Melton was the only supervisor capable of overseeing fingerprint analysis and that he individually marked and began analyzing

the photograph of at least a fingerprint that placed the downstairs tenant in a probative location inside Ms. Cicelsky's apartment and near her body. (Compl. ¶¶ 313-17.) This fingerprint would have been suitable for comparison during the relevant time period. (*Id.* ¶ 317.)

Additionally, Plaintiff alleged that, despite APD's formal policy requiring officers to create a written report regarding the findings of any latent print analyses, only one latent print analysis report was ever issued and/or produced. (*Id.* ¶ 301.) Defendants, including Defendant Captain Melton, failed to produce written reports regarding the findings of latent print analyses for the recovered fingerprints, as compared against at least 23 suspects. (*Id.* ¶ 300.)

In *Connick v. Thompson*, the Supreme Court reaffirmed the viability of the "single-incident" theory of liability established in *Canton*. 563 U.S. 51, 61, 62; *Canton*, 489 U.S. at 390 n.10. Under that theory, a municipality can be found to be deliberately indifferent based on a single constitutional violation where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under [Section] 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 61. The violation of constitutional rights must be a "highly predictable consequence" of the failure to train. *Id.* (internal quotation marks omitted). Thus, deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (alterations and internal citations and quotation marks omitted), *cert. denied*, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012). Courts in this Circuit have found that "similar single incident claims survive motions for summary judgment or motions to dismiss." *Boston v. Suffolk Cty.*, 326 F. Supp. 3d 1, 24 (E.D.N.Y. 2018) (collecting cases).

In *Chamberlain v. City of White Plains*, the Southern District of New York applied the

single-incident theory to the White Plains Police Department's response to a welfare check on an emotionally disturbed person. 986 F. Supp. 2d 363 (S.D.N.Y. 2013). The court held that the plaintiff's complaint made sufficient allegations to survive a motion to dismiss on their claim that "'to a moral certainty'. . .WPPD officers would encounter EDPs in the course of their duty." *Id.* at 393. Similarly, in *Boston v. Suffolk Cty*, the court held that there was a "material issue of disputed fact as to whether the Plaintiff's injuries were caused by Suffolk and Smithtown's failure to train their officers on the effects of drugs on individuals and how to interact with arrestees" based on the single-incident theory. 326 F. Supp. 3d at 24-25 (E.D.N.Y. 2018). The court further noted that, "if other officers responded in the same way as Rangers Sokol and Paterson and Sergeant Health did, then other arrestees' constitutional rights would also likely be violated." *Id.* at 24. Here, if officers acted in the same way as Defendant Officers Melton, LaCorte, and Klimczak, then others' constitutional rights would certainly be violated.

Defendants' reliance on *Santana v. City of New York*, a case involving a pro se incarcerated person who brought a conditions-of-confinement case, is misplaced. (Amherst Defs' MOL at 8.) There, the Court relied on the fact that the allegation against the municipality did not include "actors below the policy-making level." 2018 U.S. Dist. LEXIS 53865, at *30 (S.D.N.Y. Mar. 29, 2018). The reliance on *Bird v. County of Westchester* similarly must fail because Plaintiff is alleging deliberate indifference on the part of the Town of Amherst and a policymaker, Defendant Melton, in providing appropriate training to avoid the inevitable unconstitutional conduct. (Amherst Defs' MOL at 8.) Plaintiff has specifically alleged that a supervisor and policymaker— Defendant Melton—was involved in this failure. (Compl. ¶¶ 536-540). Defendants knew to a moral certainty that officers would undertake fingerprint analysis and maintenance and that they would be required to turn that evidence over. Their failure to do so in Ms. Lynch's case, intentional

or not, on its own should be sufficient to allege a violation under *Monell*. *Walker v. New York*, 974 F.2d 293, 300 (2d Cir. 1992) ("a complete failure by the DA in 1971 to train ADAs on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to give rise to § 1983 municipal liability."); *see also Boyd v. City of Buffalo*, No. 22-cv-00519, 2025 U.S. Dist. LEXIS 7187, at *30-31 (W.D.N.Y. Jan. 14, 2025) (flawed understanding of a district attorney's office's *Brady* obligations was sufficient to establish widespread practice).[2]

This Court should therefore conclude that "the need to train police officers about the constitutional limitations involved in [turning over fingerprint evidence as well as fingerprint maintenance and analysis] duties is 'so obvious,' and the consequences of deficient training are so likely to result in constitutional deprivations, that the failure to provide sufficient training can be properly characterized as 'deliberate indifference' to the constitutional rights of citizens." *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 326-27 (W.D.N.Y. 2021).

## B. Plaintiff Sufficiently Alleges Failure by Supervisors to Sufficiently Train Officers on Proper Interrogation Tactics Leading to False Confessions

Plaintiff has also alleged Defendant Amherst's deliberate indifference in failing to train officers on proper interrogation and investigation tactics and on decisions to charge in the absence of probable cause. First, Ms. Lynch has alleged that the Defendant policymakers knew or should have known "to a moral certainty" that during the course of a criminal investigation officers would regularly confront decisions relating to the questioning of witnesses and suspects and the initiation of charges, Compl. ¶¶ 536, 540(a); that adequate training would make the right choice less difficult

---

[2] The additional cases cited by the Defendants are unavailing. In *Greene v. City of New York*, Amherst Defs' MOL at 12, the Second Circuit issued a summary order related to a district court's grant of summary judgment after the parties had the benefit of discovery. Similarly, in *Brogdan v. City of New Rochelle*, Amherst Defs' MOL at 8, the court found that, after discovery, the plaintiff "adduces no evidence that the alleged violations of Brogdon's right resulted from any City policy or custom." 200 F. Supp. 2d 411, 415 (S.D.N.Y. 2002).

to choose, *id*. ¶ 540(b); and that the wrong choice would frequently result in a constitutional violation, *id*. ¶ 540(d). Additionally, Plaintiff has alleged that the policymakers created substantial incentives for their employees to commit constitutional violations when confronted with these decisions by pressuring police officers to close cases and initiate prosecutions through coercion and trickery, *id*. ¶ 539, and that policymakers themselves ratified the unconstitutional conduct, *infra*.

The Town's violations of Ms. Lynch's constitutional rights demonstrate that APD training was so "obviously deficient" that the Court should apply *Connick*'s single-incident theory of liability, discussed *supra*. *See Edrei v. City of New York*, 254 F. Supp. 3d 565, 581 (S.D.N.Y. 2017), *aff'd sub nom, Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) (finding that plaintiff stated a *Monell* claim "under the single-incident theory of liability contemplated in *City of Canton,* and recognized by the cited authority post-*Connick*."). Defendants, including policymaker Defendant Captain Melton, used the threat of jail time to coerce Ms. Lynch into obtaining information that they could purportedly use to arrest Mr. Walker. (Compl.¶¶ 158-75.) Defendants, including policymaker Defendant Melton, prepared a statement which falsely claimed that Kareem Walker confessed to Ms. Lynch that he had killed Ms. Cicelsky. (*Id*. ¶¶ 175-76.) Defendants, including policymaker Defendant Melton, demanded that Ms. Lynch call Mr. Walker and falsely claim that he had infected her with HIV in order to trick him into returning to Buffalo. (*Id*. ¶178.) Even after later learning that Mr. Walker was in Florida at the time of the murder (*Brady* evidence not disclosed to Ms. Lynch or her attorneys), i*d*. ¶¶ 181-82, Defendants, including policymaker Defendant Melton, threatened to charge Ms. Lynch with the theft of a fur coat unless she implicated Mr. Walker in Ms. Cicelsky's murder. (*Id*. ¶ 193.). Following this pattern of coercion, Defendants LaCorte and Klimczak fed Ms. Lynch non-public details about the murder of Ms. Cicelsky and

through threats, pressure, and intimidation, frightened Ms. Lynch into signing a false confession. (*Id.* ¶¶ 195-207.) Ultimately, despite knowing that Ms. Lynch's confession was false and coerced and that Mr. Walker was in Florida at the time of the murder, Defendants, including policymaker Defendant Melton, decided to charge Ms. Lynch with the murder of Ms. Cicelsky. (*Id.* ¶ 208.)

In *Prevost v. City of New York*, a single instance of a low-level officer's decision to arrest an individual for attempted murder despite exculpatory evidence was sufficient for the court to sustain a *Monell* claim at the motion to dismiss stage. No. 13-CV-3760 VEC, 2014 WL 6907560, at *7 (S.D.N.Y. Dec. 9, 2014). There, the Plaintiff had called the police to report an assault he had suffered, and he restrained his assailant until the police arrived. An officer, which the court assumed was aware of these exculpatory facts, arrested the Plaintiff on multiple charges, including attempted murder. Plaintiff "[did] not allege[] a pre-existing pattern of violations" and the *Monell* claim rose and fell "on the existence of a single violation." *Id.* The court found that "the City's failure to provide adequate training regarding the importance of an exculpatory defense when determining whether probable cause exists carried a 'highly predictable' consequence" that satisfied the *Monell* standard at the motion to dismiss stage. *Id.*

Here, Ms. Lynch's *Monell* claim presents even more flagrant and systemic violations that similarly arose as a highly predictable consequence of deficient training on determining whether to charge an individual with a crime: Ms. Lynch has not only alleged the involvement of multiple low-level officers, but also that a high-level policymaking official was one of the APD employees directly involved in the violations of her constitutional rights. And rather than merely ignore exculpatory evidence as the officer did in *Prevost*, Ms. Lynch has alleged that the Defendant officers here actively fabricated evidence against her in order to ultimately charge her with murder. As such, and as discussed *supra*, Defendant's attempts to minimize this conduct as an "isolated

13

act[] . . . by non-policymaking municipal employees" should be rejected. (Amherst Defs' MOL at 13.)

Plaintiff has also alleged a pattern of misconduct that stretches beyond just Ms. Lynch's case. In 1978, the chief judge of the United States District Court for the Western District of New York condemned the very same interrogation techniques used against Ms. Lynch in a case involving APD's illegal arrest, threats, promises of benefits, use of incentivized informants, fraud and deceit, and an extended duration of interrogation. (Compl. ¶ 545). Two decades later, after coercing a false confession from Ms. Lynch, the APD enlisted incentivized jailhouse informant Ms. Hunter to provide a false testimony to further incriminate Ms. Lynch in the murder of Ms. Cicelsky, another foreseeable consequence of the Town's failure to train officers in proper interrogation and evidence-gathering techniques. (*Id*. ¶ 548)

For the foregoing reasons, Plaintiff's failure-to-train claim should not be dismissed as "discovery will shed light on" whether the APD policymakers were deliberately indifferent. *Chamberlain*, 986 F. Supp. 2d at 393.

## II.   PLAINTIFF DID NOT FAIL TO MEET THE NOTICE REQUIREMENTS OF GENERAL MUNICIPAL LAW § 50-e

### A.  The Town Failed to Raise Any Alleged Deficiency in Service of the Notice of Claim

After requiring Ms. Lynch to sit for a hearing pursuant to General Municipal Law § 50-h, the Amherst Defendants argue for the first time in the present Motion that Plaintiff improperly served her Notice of Claim on the Town Comptroller rather than the Town "supervisor" "clerk", or "attorney".

The Notice of Claim in the present case was timely served, as the Town of Amherst concedes, on April 2, 2024, one year prior to their present motion. (Amherst Defs' MOL at 19 and Attorney Decl., Ex. A.) The notice was stamped "received" by the "Town of Amherst,

Comptroller's Office". (*Id*. at Attorney Decl., Ex. A.) The Amherst Defendants' sole argument to dismiss all of Ms. Lynch's state law claims related to her 25 year wrongful incarceration is that Ms. Lynch should have served the Town "supervisor or clerk" or "attorney regularly engaged in representing such public corporation" declaring without citation "Service on the Town's Comptroller constitutes defective service." (*Id*. at 20.)

Assuming, arguendo, that Defendants' claim that service on the Town Comptroller was "deficient," pursuant to General Municipal Law §50-e(3)(c), service will still be deemed valid as long as "the public corporation demands the claimant be examined in regard to it" *or* "the public corporation fail[s] to return the notice specifying the defect in the manner of service, within thirty days after the notice is received." Gen. Mun. § 50-e(3)(c).

Amherst fails on both fronts. The Town demanded that Ms. Lynch appear for an examination and she did in fact appear on October 1, 2024, as the Amherst Defendants concede. (Amherst Defs' MOL at 21.) The 50-h examination lasted over three hours and there was no mention of any defect. The Town also failed to specify any alleged defect in service within 30 days. Therefore, service must be deemed valid.

**B.  Plaintiff Served an Agency of the Town of Amherst, not a Separate Legal Entity**

Additionally, the arguments made by the Town of Amherst misrepresent the law and exclusively focus on cases concerning notices of claim served on the Comptroller of the City of New York for injuries allegedly inflicted by New York City Health and Hospitals Corporation, an entirely independent entity which is not an agency of the City of New York. *See, e.g.*, Amherst Defs' MOL at 20-21 (citing *Stallworth v. New York City Health & Hosps. Corp.*, 663 N.Y.S.2d 287 (2d Dep't 1997); *Dreckette v. New York City Health & Hosps. Corp*., 994 N.Y.S.2d 813 (Sup. Ct. 2014); and *Ceely v.  New York City Health & Hospitals Corp.*, 556 N.Y.S.2d 694 (1990)). This

reliance is misplaced because an agency of the Town of Amherst *was* in fact served, not a separate, independent entity.[3]

This case is more appropriately compared to *Wekenmann v. Biegasiewicz*, 2024 U.S. Dist. LEXIS 81911, 2024 WL 1947898 (W.D.N.Y. 2024). There, the plaintiff served a Notice of Claim on the Erie County Sheriff's Office rather than the County of Erie. The Court held that the County examined the plaintiff at a 50-h hearing and therefore "that service of the Notice of Claim was valid as against the County under § 50-e(3)(c)." *Wekenmann*, 2024 U.S. Dist. LEXIS 81911, at *29. That is precisely what occurred here. Ms. Lynch served an agency of the Town of Amherst, rendering discretion pursuant to § 50-e (3)(c) available to validate service of the Notice of Claim against the Town of Amherst.

Here, the Court should find that Plaintiff Lynch's service of a Notice of Claims on the Amherst Comptroller is valid and acceptable service just as the courts did in *Wekenmann*, *Santiago v. Santanna*, 8 A.D.3d 650, 779 N.Y.S.2d 554, 2004 N.Y. App. Div. LEXIS 9140 (2d Dep't 2004), and *Cordova-Bell v. N.Y.C. Tr. Auth.*, 71 Misc.3d 1206(A), 2021 N.Y. Misc. LEXIS 1500 (Sup. Ct., Bronx Cty., 2021). The Town failed to identify any "defect" within 30 days of receipt of the Notice of Claim. The Town scheduled and participated in a 50-h hearing, without raising an issue regarding service of the Notice of Claim until the instant motion. Therefore, their argument that Plaintiff, who was imprisoned for over 25 years for a crime she did not commit, should have her New York State claims be dismissed on an alleged "deficiency" after subjecting her to a hearing on the very notice they claim was deficient is not only an absurdity, but must be rejected.

---

[3] "In deciding a Rule 12(b)(6) motion, the Court is generally limited to reviewing 'the allegations contained within the four corners of [Plaintiff's] complaint.'" *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 472 (W.D.N.Y. 2017) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)).

**III.    THE COURT SHOULD DECLINE TO CONSIDER DEFENDANTS' MOTION TO DISMISS AS IT IS UNTIMELY, AND NO LEAVE FOR ADDITIONAL TIME WAS SOUGHT MUST FAIL BECAUSE THEY FAILED TO TIMELY ANSWER OR OTHERWISE RESPOND**

In addition to being meritless, the Amherst Defendants' motion to dismiss is untimely. The Court, in its discretion, should decline to consider it. Defendant Amherst accepted service on January 29, 2025, and the individual Amherst Defendants accepted service on February 1, 2025. (Dkt. No. 3). Under Fed. R. Civ. P. 12(a)(1), Defendants had 21 days to respond or request an extension from the Court. Defendants did neither, ignoring the February 20, 2025 deadline for the Town of Amherst and the February 21, 2025 deadline for the Individual Defendants and instead filing a response nearly two months later, on April 15, 2025. Therefore, in addition to being meritless, the motion is also untimely. The court in its discretion should decline to consider it.

Counsel for Ms. Lynch repeatedly reached out to Amherst Defendants' counsel to inform them of their default, even consenting to an extension after the deadline to respond had already passed. First, on March 3, 2025, Plaintiff's counsel reached out to Defendants by phone and via email follow up. (Droubi Decl. ¶ 2, Exh. 1) After receiving no response, Plaintiff's counsel again reached out to counsel for the Amherst Defendants by phone with email follow up on March 12, 2025, noting that Defendants "have defaulted on responding to the complaint by over two weeks." (Droubi Decl. Exh. 1.) In response to this communication, Defendants inquired via email whether Plaintiff would be willing to consent to an extension for Defendants' response to April 15, 2025. Plaintiff consented "to an application for an extension of time," (Droubi Decl. Exh. 1) but Defendants never applied to the Court for this extension. "Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." *Houston v. Lack,* 487 U.S. 266, 282 (1988). Here, the Court should deny the

Amherst Defendants' motion to dismiss Plaintiff's claims due to its untimeliness. *See, e.g., Schluter Sys., LP v. Sanven Corp.*, No. 8:22-CV-155, 2022 WL 17617807, at *3 (N.D.N.Y. Dec. 13, 2022) (denying motion to dismiss as untimely under Fed. R. Civ. P. 12); *Sterling v. Deutsche Bank Nat'l Tr. Co. as Tr. for Femit Tr. 2006-FF6, Mortg. Pass Through Certificates, Series 2006-F6*, No. 19-cv-205 (GBD) (KNF), 2019 WL 4199976, at *2 (S.D.N.Y. Sept. 5, 2019) (affirming magistrate judge's decision that "Defendants' untimely motion to dismiss should be denied"); *cf. Kumar v. Alhunaif*, No. 23 CIV. 321 (DEH), 2025 WL 833547, at *2 (S.D.N.Y. Mar. 17, 2025) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").

<u>**CONCLUSION**</u>

For the foregoing reasons and based on the pleadings and papers filed in this action, Defendants' motion should be denied.  Should the Court perceive deficiencies with respect to any of her claims, Plaintiff requests the opportunity to amend her Complaint to amplify the allegations. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).

Dated: New York, New York
       May 23, 2025

                                    Respectfully submitted,

                                    FISHER & BYRIALSEN PLLC
                                    99 Park Avenue, PH Suite/ 26 Floor
                                    New York, NY 10016
                                    (303) 256-6345

                                    /s/
                                    Jane Fisher-Byrialsen

                                    BELDOCK LEVINE & HOFFMAN LLP
                                    99 Park Avenue, PH Suite/ 26 Floor
                                    New York, NY 10016
                                    (212) 490-0400

                                    Luna Droubi
                                    Marc Cannan
                                    Karen Dippold
                                    Tala Alfoqaha*

                                    NEWIRTH LINEHAN PLLC
                                    43 West 43rd Street, Suite 160
                                    New York, NY 10036
                                    (917) 426-5551

                                    /s/
                                    Karen A. Newirth
                                    Charles F. Linehan

                                    *Attorneys for Plaintiff Renay Lynch*

                                    *pending admission*