**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

RENAY LYNCH,

                            Plaintiff,

      -against-

The TOWN OF AMHERST, Michael J. Melton, Joseph LaCorte, Raymond Klimczak, and the COUNTY OF ERIE, Defendants.

**25-cv-00075-LJV**

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF ERIE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

FISHER & BYRIALSEN PLLC
99 Park Avenue, PH/26th Floor
New York, New York 10016
(303) 256-6345

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

NEWIRTH LINEHAN PLLC
43 West 43rd Street, Suite 160
New York, NY 10036
(917) 936-5989

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF FACTS ....................................................... 1

LEGAL STANDARD ........................................................... 3

ARGUMENT ................................................................. 4

I.     PLAINTIFF'S § 1983 CLAIM AGAINST THE COUNTY OF ERIE IS PLAUSIBLY PLED AND SHOULD NOT BE DISMISSED ............................... 4

     A.   The Complaint Plausibly Alleges Policymakers' Direct Infliction and Ratification of Lynch's Constitutional Injuries ........................... 4

     B.   The Complaint Plausibly Alleges a Widespread Custom and Practice .................... 8

     C.   Contemporaneous Wrongful Conviction Comparators Reflect ECDA's Widespread Custom of Trial and Post-Conviction Misconduct ............................ 10

     D.   The Complaint Plausibly Alleges That the County Failed to Supervise and Discipline Prosecutors Despite Repeated Notice of Misconduct .......................... 18

II.     PLAINTIFF DOES NOT PROCEED UNDER A THEORY OF RESPONDEAT SUPERIOR ................................................................. 25

CONCLUSION ............................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) .................................. 6, 8, 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) .................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 3

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703 (S.D.N.Y. 2012)) ....................... 19

*Bolt v. City of New York*, No. 22-CV-3318 (DG)(PK), 2023 U.S. Dist. LEXIS 165934 (E.D.N.Y. Sep. 15, 2023) ................................................................................................... 20

*Boyd v. City of Buffalo, et al.*, 22-cv-519 (W.D.N.Y. March 13, 2023)) ............... 9, 13, 15, 16, 17

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010) ........................... 4

*Buari v. City of New York*, 530 F. Supp. 3d 356, (S.D.N.Y. 2021) ......................... 9, 13

*Calderon v. City of N.Y.*, 138 F. Supp. 3d 593 (S.D.N.Y. 2015) ...................... 9, 12, 15

*Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013) ........................... 8

*Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624 (S.D.N.Y. 2015) ................. 10, 16

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ................................................................. 4

*Fiacco v. City of Rensselaer*, 783 F.2d 319, 329 (2d Cir. 1986) ................................. 19

*Gaston v. Ruiz*, 2018 U.S. Dist. LEXIS 112695 (E.D.N.Y. July 6, 2018) ................ 9, 12, 16

*Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991) ........................................ 24

*Giaccio v. City of N.Y.*, 308 F. App'x 470 (2d Cir. 2009) .......................................... 15

*Gleeson v. Cty. of Nassau*, No. 15-CV-6487, 2019 U.S. Dist. LEXIS 170373 (E.D.N.Y. Sep. 30, 2019) ........................................................................................................... 8, 9

*Greene v. City of New York*, 742 F. App'x 532, 537 (2d Cir. 2018) ....................... 15, 23

*Haughey v. Cnty. of Putnam*, 2020 WL 1503513, at *13 (S.D.N.Y. Mar. 29, 2020) .................... 5

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)………………………………………………..4

*Isaac v. City of New York*, 2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018) ................ 12

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000). ................................................................. 9

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ............................................... 19

*Jones v. Town of East Haven*, 691 F.3d 72 (2d Cir. 2012) ............................................ 23

*Kistner v. City of Buffalo*,  2022 WL 22771849 (W.D.N.Y. Jan. 11, 2022)................................. 6

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)  4

*McLennon v. City of New York*, 171 F. Supp.3d 69, 97 (E.D.N.Y. 2016) ..................................... 6

*Miller v. Cnty. of Monroe*, 2024 U.S. Dist. LEXIS 97305 .................................................... 12, 15

*Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) ........................................ 9

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ..................................... 4

*Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018) ............................... 15

*O'Neal v. City of New York*, 196 F.Supp. 3d 421 (S.D.N.Y. 2016)................................ 24

*Ortiz v. Case*, 2018 U.S. Dist. LEXIS 85044 (W.D.N.Y. 2018) ................................... 17

*Ortiz v. Stambach*, 2025 U.S. App. LEXIS 11241 (2d Cir. 2025)................................ 16

*Owens v. Cnty. of Monroe*, 2021 WL 6113950 (W.D.N.Y. Dec. 27, 2021)................................ 15

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007)................................................... 18, 20

*Rodriguez v. City of New York*, 607 F. Supp. 3d 285(E.D.N.Y. 2022)........................................ 24

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) .................................................... 25

*Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015)........................................................................................... 9, 15

*Toliver v. City of New York,* 2012 U.S. Dist. LEXIS 184518 (S.D.N.Y. Sept. 25, 2012) ........... 19

*Vann v. City of New York*, 2019 WL 2646616 .............................................................. 15

*Walker v. City of Buffalo,* 22-cv-00520 (W.D.N.Y.). .................................................... 20

*Walker v. City of Buffalo, et al.*, 22-cv-519, 22-cv-520 (W.D.N.Y. June 24, 2024)……...16, 17, 20, 21, 22

*Walker v. City of N.Y.*, 2014 U.S. Dist. LEXIS 42272 *(S.D.N.Y. Mar. 18, 2014)* ....................... 15

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992)........................................................ 25

*Walker v. County of Erie*, No. 22-cv-520, ECF No. 165-2 (W.D.N.Y.) ....................................... 22

*Warney v. Monroe Cty.*, 587 F.3d 113 (2d Cir. 2009) ............................................................. 5, 17

**Rules**

Rule 12(b)(6) .................................................................................................................. 3

## PRELIMINARY STATEMENT

Renay Lynch spent over 25 years in prison for a crime she did not commit. Her wrongful conviction was not an anomaly, but the foreseeable result of systemic misconduct within the Erie County District Attorney's Office ("ECDA"). For decades, ECDA prosecutors have secured and preserved convictions—including of innocent people—through suppression of exculpatory evidence, use of false or coerced statements, misrepresentations, and post-conviction obstruction. Ms. Lynch's conviction was procured and sustained through these very tactics before trial and for decades after. These were not aberrations, but part of institutionalized practices.

The Complaint plausibly alleges three theories of *Monell* liability against the County: (1) the County policymakers' participation in, and ratification of, the unlawful conduct and the basis for it, (2) the County's unlawful policies and customs relating to *Brady/Giglio*, use of false or misleading evidence and argument, summation misconduct, and post-conviction misconduct, and (3) deliberate indifference based on the County's failure to supervise and discipline its prosecutors concerning their *Brady/Giglio* obligations, use of false or misleading evidence and argument, summation misconduct, and post-conviction misconduct.

The County's motion to dismiss, which attempts to reframe entrenched patterns as "isolated" events and interrelated policies as a "hodge podge", cannot be reconciled with Plaintiff's detailed allegations.  It should be denied.

## STATEMENT OF FACTS

Plaintiff incorporates by reference the factual allegations set forth in the Complaint. For purposes of this motion, Plaintiff summarizes only those facts necessary to respond to the arguments raised in the County's motion to dismiss.  ECDA proceeded against Ms. Lynch on a felony-murder theory, *i.e.*, that Ms. Lynch and Kareem Walker conspired to kill Louise Cicelsky

and that Mr. Walker killed her. (Compl. ¶ 218). ECDA knew this theory was impossible because they knew Mr. Walker was in another state on the day Ms. Cicelsky was killed. (*Id*. ¶ 221). ECDA suppressed this critical *Brady* material from Ms. Lynch (and courts) for more than two decades. ECDA exploited that suppression by presenting false testimony supporting the felony murder theory. (*Id*. ¶¶ 8, 218-30, 244, 302-306, 462(a)(i)). ECDA also suppressed favorable fingerprint evidence that excluded Ms. Lynch, implicated another man, and undermined the police investigation. (*Id*. ¶¶ 274-321, 462(b)). ECDA again exploited this suppression by presenting false evidence—specifically that no usable fingerprints had been collected from the crime scene—to strengthen its case against Ms. Lynch and prevent the defense and factfinders from learning about the alternate suspect. (*Id.*). The suppressed *Brady* evidence also conflicted with Ms. Lynch's coerced false confession and other false witness statements. (*Id*. ¶¶ 9, 409(a)).

After Ms. Lynch's wrongful conviction, the trial prosecutor was not disciplined, but instead promoted, eventually running for District Attorney, a position he won with the support of key members of ECDA. (*Id*. ¶ 531). During his tenure (2008-2016), ECDA protected Ms. Lynch's wrongful conviction by continuing to suppress exculpatory evidence and make misrepresentations to courts considering Ms. Lynch's efforts to vacate her conviction. (*Id.*).

Additional DNA testing was obtained over ECDA's objection, and it excluded both Ms. Lynch and Mr. Walker from crime scene evidence. (*Id*. ¶¶ 262-73). Thereafter, the foregoing exculpatory evidence was finally revealed. (*Id.*). ECDA told counsel for Ms. Lynch that it would not oppose Ms. Lynch's motion to vacate her conviction only if she limited her claim to police misconduct in failing to disclose all fingerprints to ECDA. (*Id.* ¶¶ 353-59). Under duress, Ms. Lynch agreed to ECDA's terms and submitted a motion in accordance with ECDA's proposal; it was unopposed by ECDA and granted. (*Id*. ¶¶ 360-69).

On January 5, 2025, ECDA issued a press release that falsely stated that Kareem Walker's "alleged participation was not corroborated and therefore he was never charged in connection with this crime." (*Id*. ¶369). ECDA District Attorney John Flynn also held a press conference where he falsely stated, in sum, that Ms. Lynch was not factually innocent and that the decision not to retry her was due to stale evidence and the passage of time. (*Id*. ¶371). Flynn also asserted that there was "nothing inappropriate" about the police investigation in Ms. Lynch's case.[1] Later, Flynn gave a press interview and acknowledged that he personally conditioned ECDA's agreement to vacate Ms. Lynch's conviction on the exclusion of information about prosecutorial misconduct[2] and asserted that "[t]here was no evidence at all that the prosecutor purposely said anything that was contrary to the information that he had."[3,4]

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1]    The Buffalo News, *Flynn on Renay Lynch 2*, YouTube (Jan. 5, 2024), https://www.youtube.com/watch?v=bDn6dYYWTjo (at 0:55–1:05).

[2]    Ryan Kost & Oishika Neogi, *When Conviction Integrity Units Exonerate the Innocent, Prosecutors Escape Blame*, N.Y. Focus (Mar. 13, 2025), https://nysfocus.com/2025/03/13/conviction-integrity-units-failure-new-york-wrongfully-incarcerated ("I tell [an intermediary for the defense], 'We're not going to consent to that,'" Flynn said, referring to the misconduct claims. "You want to blow the whole thing up? Or do you want to win?").

[3] *Id.*

[4]    "[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008), citing 5 Wright & Miller, Federal Practice & Procedure § 1366 & n. 33 (3d ed. 2004). The existence of the statements in the press conference, and of their dissemination to the general public, is subject to judicial notice. *See Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008) (recognizing that "it is proper to take judicial notice of the fact that press coverage . . . contained certain information"); *In re UBS Auction Rate Sec. Litig*., 2010 WL 2541166, at *14 15 (S.D.N.Y. June 10, 2010) (taking judicial notice of the fact that press reports "contained certain information and not for the truth of the matters asserted therein"). There is no discernible difference between print and video content posted to a news website, and Defendant has alleged no facts to dispute the publication of either.

678 (2009). At this stage, the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). A plaintiff alleging municipal liability under *Monell* is not subject to a heightened pleading standard. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

## ARGUMENT

### I. PLAINTIFF'S § 1983 CLAIM AGAINST THE COUNTY OF ERIE IS PLAUSIBLY PLED AND SHOULD NOT BE DISMISSED

Plaintiff's Complaint more than adequately pleads municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under well-established Second Circuit precedent, a plaintiff may establish municipal liability based on: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). The County does not dispute Ms. Lynch's constitutional rights were violated. The motion challenges only whether she has plausibly alleged an official municipal policy or custom under *Monell*. At the motion to dismiss stage—where all well-pled allegations must be accepted as true and all reasonable inferences drawn in Plaintiff's favor—Plaintiff has more than met her burden.

### A. The Complaint Plausibly Alleges Policymakers' Direct Infliction and Ratification of Lynch's Constitutional Injuries

1. **ECDA Frank Sedita III[5]'s Direct Infliction of Lynch's Constitutional Injuries (2008 to 2016)**

Even a single incident of a municipal policymaker directly violating a plaintiff's constitutional rights establishes *Monell* liability. *See e.g. Haughey v. Cnty. of Putnam*, 2020 WL 1503513, at \*13 (S.D.N.Y. Mar. 29, 2020) (Karas, J.) (Allegation of fire chief's participation in arson determination sufficient to survive motion to dismiss).

The Complaint alleges the trial prosecutor, Frank Sedita III, suppressed *Brady/Giglio* material and committed other constitutional violations at trial, resulting in Ms. Lynch's malicious prosecution and wrongful conviction. (Compl. ¶¶ 322-36). The Complaint further alleges that in 2008—while her post-conviction challenges were still pending—Sedita was elected Erie County District Attorney, and continued to conceal that *Brady/Giglio* material. (*Id.* ¶¶ 237-38, 531).

Sedita had an ongoing obligation to disclose the *Brady* material he suppressed during Lynch's trial. *Warney v. Monroe Cty.*, 587 F.3d 113, 125 (2d Cir. 2009) (recognizing prosecutors' continuing ethical duty to disclose exculpatory evidence post-conviction). Rather than disclose that evidence, Sedita suppressed it and continued Lynch's malicious prosecution from 2008 until he left office in 2016. Thus, Sedita, in his capacity as the County policymaker after his election to District Attorney, personally violated Lynch's right to ongoing disclosure of *Brady* material suppressed during her trial. As such, the County is liable for Ms. Lynch's injuries during that period.

---

[5] The Complaint did not name Ms. Lynch's trial prosecutor, who was Frank Sedita III. Instead, he is described as being elected District Attorney in 2008. (Compl. ¶ 531). The historical society of New York Courts lists Frank Sedita III as the person elected to Erie County District Attorney in 2008. https://history.nycourts.gov/figure/district-attorneys-erie-county/ Plaintiff respectfully requests that the Court take judicial notice, pursuant to Federal Rule of Evidence 201(b)(2), of the list of District Attorneys published by the New-York Historical Society, which identifies the elected District Attorneys of [County Name] for the relevant time period. This historical roster is publicly available on the Society's website and constitutes a source "whose accuracy cannot reasonably be questioned."

### 2. Ratification By ECDA District Attorney John J. Flynn

Section 1983 plaintiffs may establish that a municipality is liable for their injuries by proving that "the authorized policymakers approve[d] a subordinate's decision and the basis for it." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). "Because the disposition of the policymaker may be inferred from his conduct after the events giving rise to the constitutional violation, a policymaker's implicit ratification may be established by his or her reward or encouragement of the unlawful conduct." *McLennon v. City of New York*, 171 F. Supp.3d 69, 97 (E.D.N.Y. 2016) (Brodie, J.) (citations omitted); *Kistner v. City of Buffalo*, 2022 WL 22771849, at *14 (W.D.N.Y. Jan. 11, 2022) (same). "[E]ven a single action by [such a] decision maker who possesses final authority to establish municipal policy with respect to the action ordered is sufficient to implicate the municipality[.]" *Amnesty Am.*, 361 F.3d at 127.

The Complaint alleges the ECDA ratified the relevant misconduct of its prosecutors. (Compl. ¶475). The Complaint alleges Ms. Lynch's post-conviction counsel provided ECDA with a draft motion to vacate that included a discussion of the violations of Ms. Lynch's rights by prosecutors—including suppressing the Walker information, eliciting and failing to correct false testimony, using fabricated evidence, and making false arguments. (*Id.* ¶¶ 353-54). The Complaint further alleges that ECDA told counsel for Ms. Lynch that the Office would not oppose her motion to vacate only if references to prosecutorial misconduct were removed and if Ms. Lynch proceeded only on the claim that all fingerprints were not disclosed and that a police witness lied about there being no usable prints. (*Id.* ¶¶ 355-63). Under duress, Ms. Lynch agreed; ECDA did not oppose and Ms. Lynch's conviction was finally vacated. (*Id.* ¶¶ 362-368).

Then-District Attorney John J. Flynn, the county policymaker, admitted in statements to the press following the vacatur that he was personally aware of the trial prosecutor's conduct at

Lynch's trial, and the basis for it, but nevertheless ratified it by forcing Lynch's attorneys to omit it as a basis for vacatur:

> In an interview before stepping down from his post last March, then-DA Flynn confirmed the negotiations around Lynch's motion and disputed the alleged misconduct. "I tell Terry, '*We're not going to consent to that*,'" Flynn said, referring to the misconduct claims. '*You want to blow the whole thing up? Or do you want to win?*'"[6]

The Complaint alleges Defendant District Attorney Flynn, by conditioning his agreement not to oppose vacatur on Ms. Lynch abandoning any allegation of direct prosecutorial misconduct, effectively whitewashed that misconduct. (Compl. ¶¶ 363-64). Despite Flynn's knowledge of the prosecutor's conduct (including arguing a felony murder theory to the jury that relied upon the innocent Walker committing the murder), he defended the prosecutor's conduct following vacatur: "[t]here was no evidence at all that the prosecutor purposely said anything that was contrary to the information that he had." (*See supra* at 4-5).

The Complaint further alleges that Flynn, by the ECDA, published a press release falsely claiming Kareem Walker's "alleged participation was not corroborated and therefore he was never charged in connection with this crime." (Compl. ¶369.)[7] Despite having full knowledge of the violations of Lynch's constitutional rights, Flynn also praised the prosecutors who worked with him to block Lynch from exposing the full scope of the nearly 25 year violation of her rights by prosecutors in his office: "District Attorney Flynn commends Special Assistant Natalie Lesh of the Conviction Integrity Unit for her work on this case as well as Special Assistant Collen Curtin

---

[6] Ryan Kost and Oishika Neogi, *When Conviction Integrity Units Exonerate the Innocent, Prosecutors Escape Blame*, N.Y Focus, March 13, 2025, available at, https://nysfocus.com/2025/03/13/conviction-integrity-units-failure-new-york-wrongfully-incarcerated (emphasis added).

[7] Press Release, *Erie County DA Flynn Moves to Dismiss Indictment Against Woman Convicted as Accomplice in 1995 Homicide, available at* https://www4.erie.gov/da/press/erie-county-da-flynn-moves-dismiss-indictment-against-woman-convicted-accomplice-1995

Gable and Confidential Criminal Investigator Salvatore Valvo."[8]

Flynn's response to the trial prosecutor's misconduct is similar to conduct by the DA in *Collins v. City of New York* who praised the conduct of a subordinate even after the subordinate had been criticized by the Court, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) (upholding a *Monell* ratification theory). Flynn's praise of prosecutors who caused Ms. Lynch's wrongful incarceration reflects "a tacit policy on [the DA's] part to condone whatever his subordinates deemed necessary to secure a conviction." *Id.* at 477 (citing *Amnesty Am.,* 361 F.3d at 113) (noting the difference between plaintiff's burden at the pleading stage and the burden after an opportunity for discovery).

As in *Collins*, Lynch's "theory does not hinge solely on [the DA's] response to an isolated incident. [She] further alleges that despite scores of cases involving *Brady* violations and other prosecutorial misconduct, [the DA] has never disciplined an assistant for such misconduct, even after the violations were confirmed by court decisions." *Collins*, 923 F. Supp. 2d at 477. Considering these facts along with the history of the ECDA's failure to discipline other prosecutors following findings of judicial findings misconduct, see *infra* Section D, Ms. Lynch has plausibly alleged the County is liable under *Monell* for her constitutional injuries.

**B. The Complaint Plausibly Alleges a Widespread Custom and Practice**

A plaintiff may establish a municipal policy or custom by showing that misconduct, while not formally approved, was "so widespread as to have the force of law." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A practice qualifies as "widespread" if it is "common or prevalent throughout the [entity]." *Gleeson v. Cty. of Nassau*, No. 15-CV-6487, 2019 WL 4754326, at *16 (E.D.N.Y. Sept. 30, 2019). Such a policy may arise from a policymaker's

---

[8] https://www4.erie.gov/da/press/erie-county-da-flynn-moves-dismiss-indictment-against-woman-convicted-accomplice-1995

acquiescence in longstanding practices that effectively constitute official policy. *Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006).

Courts have found *Monell* liability where lower-level misconduct was persistent enough to amount to a "standard operating procedure." *Jeffes v. Barnes*, 208 F.3d 49, 62 (2d Cir. 2000). That pattern can be shown through contemporaneous comparator cases involving factually similar misconduct and resulting in adjudicated findings of misconduct. *Buari v. City of New York*, 530 F. Supp. 3d 356, 398–99 (S.D.N.Y. 2021); *Gaston v. Ruiz*, No. 17-CV-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018).

Courts in the Second Circuit have made clear that "[t]here is no magic number of instances of unconstitutional conduct that will suffice to permit the inference of a broader [entity] policy." *Gleeson v. Cty. of Nassau*, No. 15-CV-6487, 2019 U.S. Dist. LEXIS 170373, at *42 (E.D.N.Y. Sep. 30, 2019) (cleaned up). In considering whether the proffered number of contemporaneous comparator cases suffice, courts consider the allegations in context. *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *17 (S.D.N.Y. Mar. 26, 2015) (frequency in context matters); *Calderon v. City of N.Y.*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (jurisdiction size relevant). For example, in a recent case against these same defendants related to similar misconduct in 1977, the district court denied summary judgment on a *Monell* claim alleging a policy and practice of *Brady* violations and summation misconduct, and failure to discipline. *Boyd v. City of Buffalo*, No. 22-cv-00519, 2025 U.S. Dist. LEXIS 7187 (W.D.N.Y. Jan. 14, 2025). On summary judgment, the Court recognized that a triable issue of fact had been created by just two instances of contemporaneous *Brady* violations, together with conflicting testimony from ECDA line prosecutors and the former DA regarding disclosure practices. (*Id*. at *41–46).

Here, the Complaint identifies six interrelated ECDA policies and practices: (1)

withholding *Brady* material (Compl. ¶ 469); (2) suppressing favorable trial evidence, including recantations and contradictions (*Id*. ¶ 470); (3) ignoring fabricated or coerced evidence, including by police (*Id*. ¶ 471); (4) presenting and failing to correct false testimony and making misleading arguments (*Id*. ¶¶ 472–73); (5) continuing to withhold exculpatory material post-trial (*Id*. ¶ 474); and (6) obstructing post-conviction relief through concealment and misrepresentation. (Compl. ¶ 475). These policies and practices formed a consistent prosecutorial approach to securing and maintaining convictions in violation of the Constitution, especially in cases involving serious felonies and innocent defendants. They deprived criminal defendants of their constitutional rights at every stage—from investigation to post-conviction review—and persisted before, during, and long after Ms. Lynch's trial.

### C. Contemporaneous Wrongful Conviction Comparators Reflect ECDA's Widespread Custom of Trial and Post-Conviction Misconduct

The County attempts to dismiss as irrelevant the comparator cases pled in the Complaint, but the cases identified—*Lorenzo*, *Pugh*, *Peters*, and *Epps*—each occurred between 1994 and 1998, involved the same ECDA office and arose from materially identical misconduct: coercion, *Brady* violations, false testimony, and post-conviction obstruction. (Compl. ¶¶ 493-510, 512-519). These are precisely the types of factually similar, temporally proximate comparator cases that courts routinely accept as evidence of a custom. *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 639–40 (S.D.N.Y. 2015).

The Complaint alleges that the ECDA secured the wrongful convictions of five innocent individuals—Brian Scott Lorenzo, James Pugh, Lynn Peters, Cory Epps, and Renay Lynch—between 1994 and 1998. (Compl. ¶¶ 493-510, 512-519). In each case, ECDA prosecutors engaged in the same categories of unconstitutional conduct: using coerced false confessions and/or false witness statements, suppressing favorable evidence in violation of *Brady/Giglio*, presenting false

or misleading testimony and argument, and obstructing post-conviction relief efforts through concealment and deception. (*Id.*) These convictions are not isolated or unconnected—they reflect a coherent and disturbing pattern, and corroborate the very policies and practices Ms. Lynch challenges here.[9] The Complaint further alleges post-conviction misconduct in the case of Josue Ortiz.

In all, ECDA secured five wrongful murder convictions through substantially similar prosecutorial misconduct during a four-year span in a mid-sized jurisdiction with relatively few annual homicides.[10]   In this context, the number and concentration of wrongful murder convictions—each involving the same misconduct as alleged here—is compelling circumstantial evidence of an entrenched policy. These allegations more than satisfy the pleading standard for a *Monell* claim.

### 1.  Lorenzo and Pugh

Brian Lorenzo and James Pugh were wrongfully convicted in 1994 of a 1993 home invasion murder. As in Ms. Lynch's case, ECDA secured their convictions using coerced false confessions and false statements from incentivized informants, suppressed *Brady* material, and false argument and testimony. (Compl. ¶¶ 494–499). ECDA opposed their efforts to vacate, continuing to deny the existence of the suppressed evidence. (*Id.* ¶¶ 498–499). These acts align precisely with the policies Ms. Lynch challenges and are sufficient to support a *Monell* claim.

The County's attempt to discount *Lorenzo* and *Pugh* on the ground that the misconduct is not *identical* to that in Ms. Lynch's case is unavailing. First, courts have never required perfect

---

[9] As discussed *infra*, these cases also support Plaintiff's other theories of *Monell* liability.

[10] See *Index Crimes by County and Agency: Beginning 1990*, https://data.ny.gov/Public-Safety/Index-Crimes-by-County-and-Agency-Beginning-1990/ca8h-8gjq/data_preview. For the relevant period of 1994-1998, Erie County recorded 96, 66, 61, 53, and 45 murders per year, respectively.   Plaintiff respectfully requests that the Court take judicial notice, pursuant to Federal Rule of Evidence 201(b)(1)

factual identity between comparator cases and the plaintiff's allegations to support a policy and practice *Monell* claim. The standard is whether the misconduct is factually similar. *See Miller v. Cnty. of Monroe*, 2024 U.S. Dist. LEXIS 97305, at 13 (W.D.N.Y. May 17, 2024) ("factually similar misconduct" is sufficient).  Nevertheless, the misconduct in *Lorenzo* and *Pugh* is not merely factually similar—it is functionally identical to that alleged in Ms. Lynch's case.

In both prosecutions, ECDA suppressed singular, dispositive pieces of exculpatory evidence that severed the only purported link between the accused and the crime and directly undermined the State's theory. (*Id.* ¶¶ 495–496, 462(a)(i), 464(a)). Both pieces of evidence were clearly material under *Brady*; both directly contradicted the prosecution's theory of guilt; and in both cases, ECDA prosecutors exploited their suppression by eliciting false testimony, relying on coerced false confessions and statements, and making false arguments. (*Id.* ¶¶ 464(a)–(c), 497, 502). Finally, ECDA obstructed post-conviction efforts in both cases, including by continuing to suppress favorable evidence and lying about its existence. (*Id.* ¶¶ 497-99). These parallels are more than sufficient to establish the requisite factual similarity. *Cf. Isaac v. City of New York*, 2018 U.S. Dist. LEXIS 132995, at *17 (E.D.N.Y. Aug. 6, 2018) (entirely different conduct); *Gaston v. Ruiz*, 2018 U.S. Dist. LEXIS 112695, at *6 (E.D.N.Y. July 6, 2018) (different factual context); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (no common factual thread).  Here, by contrast, every element of the misconduct in *Lorenzo* and *Pugh* maps onto the misconduct in Ms. Lynch's case, before, during, and after trial. No greater similarity is required.

Finally, the County's claim that no "legal determination of wrongdoing" was made in *Lorenzo* and *Pugh* is simply wrong. As the Complaint alleges—and the County concedes—the state court ruling vacating their convictions expressly found that ECDA violated *Brady* by suppressing exculpatory evidence. (Compl. ¶ 500, MTD at 12). That the court also referenced

newly discovered DNA evidence as an alternative ground for relief does not negate that finding. The suppression of the coin evidence was adjudicated unlawful, and ECDA's conduct—before, during, and after trial—mirrors the misconduct alleged in Ms. Lynch's case.

### 2. Lynn Peters

Lynn Peters was wrongfully convicted based on ECDA's suppression of exculpatory crime scene photos, false argument, use of unreliable jailhouse informants, and interference with DNA testing. (Compl. ¶¶ 503-508). Her conviction was vacated following post-conviction DNA testing undermining the prosecution's theory of the case. (*Id.* ¶508). The County's argument that no adjudication of wrongdoing occurred in Peters' civil case again fails. Courts routinely credit criminal court and post-conviction findings as comparator evidence in *Monell* pleadings and, of course, the allegations of Lynch's complaint must be assumed to be true. *See Boyd,* 2025 U.S. Dist. LEXIS 7187, at *46 (citing criminal court decisions and appellate opinions to support *Brady*-related comparator claims); *Buari*, 530 F.Supp.3d at n.10 (listing appellate court and habeas decisions). The Complaint alleges Ms. Peters was exonerated based on post-conviction DNA testing and her conviction was vacated based on ECDA's suppression of exculpatory crime scene photographs, interference with forensic testing, use of a known unreliable jailhouse informant, subornation of perjury, and false and misleading arguments to the jury. (*Id.* ¶¶ 503–508). These allegations more than satisfy the requirement for factual similarity and reinforce the pattern of systemic misconduct by ECDA during the relevant time period.

### 3. Cory Epps

Mr. Epps was exonerated after it emerged that ECDA suppressed witness statements implicating an alternate suspect. (*Id.* ¶¶ 512–515). As in Lynch, ECDA resisted post-conviction efforts and misrepresented its own files. (*Id.* ¶¶ 515). That the County was not sued in Epps's civil

case is irrelevant. What matters is that ECDA prosecutors engaged in materially similar misconduct—suppression, false presentation, and obstruction—which supports the inference of a widespread custom. The Complaint plausibly alleges that Mr. Epps was wrongfully convicted following an ECDA prosecution in which critical exculpatory evidence—witness statements pointing to an alternate suspect who matched the physical description of the perpetrator—was suppressed at trial and throughout post-conviction litigation, and ECDA prosecutors resisted Mr. Epps's efforts to vacate his conviction, continuing to suppress the exculpatory evidence and affirmatively misleading the court.(Compl. ¶¶ 512–515). These allegations closely mirror those set forth in the Complaint, and are more than sufficient to support a de facto policy inference.

### 4. The Same Misconduct Leading to Five Wrongful Murder Convictions in Four Years Establishes a Custom

*Lorenzo*, *Pugh*, *Peters*, *Epps*, and *Lynch* represent five wrongful murder convictions in four years involving substantially similar prosecutorial misconduct. In a mid-sized county with between 45 and 96 homicides annually during the relevant period, this pattern is not incidental—it is systemic. No case cited by the County involves such similar misconduct occurring in rare situations (homicide trials in Erie County) in so concentrated a timeframe. Plaintiff's comparators are focused, factually aligned, and legally sufficient to plead a de facto policy under *Monell*.[11]

The County's effort to analogize to decisions involving larger jurisdictions, broader timeframes, more common and dissimilar types of misconduct is misplaced. In *Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018), the comparator cases involved different types of

---

[11] Critically, there is no minimum number of prior incidents required to prove a valid *Monell* claim of deliberate indifference to the need to supervise or discipline; even one may suffice.  *See Cash v. County of Erie*, 654 F.3d at 339 (one incident where the risk of injury was inherently obvious); *Amnesty America*, 361 F.3d at 129 (single "egregious" incident); *Disorbo v. Hoy*, 74 Fed. Appx. 101, 2003 WL 22037275, *3 (2d Cir. 2003) (unpublished opinion) (one prior incident); Fiacco, 783 F.2d at 329-32 (five incidents in a two-year period); *Babi-Ali v. City of New York*, 979 F. Supp. 268, 274 (S.D.N.Y. 1997) (Batts, J.) (nine *Brady* violations by prosecutors over many years).

misconduct and lacked judicial findings. In *Buari*, 530 F. Supp. 3d at 405–06, the court found no policy across a 20-year span in a vastly larger jurisdiction. *Accord Greene v. City of New York*, 742 F. App'x 532, 537 (2d Cir. 2018) (no policy where only two pre-incident cases were cited, neither involving similar conduct); *Miller v. Cnty. of Monroe*, 2024 U.S. Dist. LEXIS 97305 (no liability where seven incidents over thirty years). In *Owens v. Cnty. of Monroe*, 2021 WL 6113950, at *12 (W.D.N.Y. Dec. 27, 2021), the court found one incident every four years insufficient. By contrast, the Complaint alleges five times that density.   *Vann* and *Walker* likewise involved comparators lacking factual similarity, adjudications of liability, or detail. See *Vann v. City of New York*, 2019 WL 2646616, at *7–8; *Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410, at *23.

Courts in this Circuit have repeatedly emphasized that both jurisdiction size and underlying incident frequency matter. *See Walker v. City of N.Y.*, 2014 U.S. Dist. LEXIS 42272, at 6–7 (S.D.N.Y. Mar. 18, 2014) (ten excessive force lawsuits over a decade in New York City "hardly suggests" a pervasive custom); *Calderon v. City of N.Y.*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015); *Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703, at *17 (S.D.N.Y. Mar. 26, 2015) (13 excessive force claims over four years insufficient given the high volume of arrests). The Americans with Disabilities Act disclosure violations in *Giaccio v. City of N.Y.*, 308 F. App'x 470, 472 (2d Cir. 2009), involved only four comparator incidents out of thousands of drug tests— a wholly different scale than the conduct alleged here at murder trials. By comparison, in *Boyd*, 2025 U.S. Dist. LEXIS 7187, the court found a triable issue of fact as to whether ECDA maintained policies and practices of *Brady* and summation misconduct, citing just two comparator cases plus conflicting testimony by ECDA prosecutors. 2025 U.S. Dist. LEXIS 7187, at *46.

Unlike the broad and scattered comparators rejected in the cases relied upon by the County,

15

Plaintiff's allegations focus narrowly on wrongful murder prosecutions of actually innocent people arising from nearly identical forms of misconduct. That is precisely the sort of specific, factually coherent pattern courts recognize as sufficient to plead a custom and practice. *See Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 639–40 (S.D.N.Y. 2015); *Gaston v. Ruiz*, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018).

### 5.  ECDA's Post-Conviction Misconduct After 1994

The Complaint also pleads that ECDA had a policy of obstructing post-conviction relief, as evidenced by the misconduct in each of the comparators described *supra* as well as in the case of Josue Ortiz[12]. (Compl. ¶ 475). That pattern is further corroborated by two judicially noticeable comparator cases in which ECDA engaged in similar misconduct. *See Walker v. City of Buffalo, et al.*, 22-cv-520 (W.D.N.Y.) and *Boyd v. City of Buffalo, et al.*, 22-cv-519 (W.D.N.Y.).

### a. Josue Ortiz

As alleged in the Complaint, ECDA obtained Ortiz's conviction in 2004 based on a coerced false confession and fabricated evidence. (Compl. ¶ 516). Even after a federal task force concluded Ortiz was not involved in the crime, ECDA opposed vacatur and suppressed exculpatory evidence. *Ortiz v. Stambach*, 2025 U.S. App. LEXIS 11241, at *34 (2d Cir. 2025); Compl. ¶¶ 516–518. These tactics—which delayed Mr. Ortiz's exoneration and extended his wrongful incarceration— mirror ECDA's conduct in Ms. Lynch's post-conviction proceedings. (*Id.* ¶¶ 462(b), 464(a)–(c), 465(c)–(d)). The County claims that *Ortiz* is irrelevant because his civil claims were dismissed as to ECDA and no findings were made against ECDA. (MTD at 19.) But that dismissal was based solely on immunity grounds. The district court expressly acknowledged that Ortiz's claims— grounded in ECDA's ongoing duty to disclose—fell within the scope of protected prosecutorial

---

[12] The Complaint erroneously described Mr. Ortiz's conviction as occurring in 1998, when in fact it occurred in 2004. Plaintiff seeks leave to amend the Complaint to correct this error.

advocacy. *Ortiz v. Case*, 2018 U.S. Dist. LEXIS 85044, at *43 ("Ironically, the very duty plaintiff claims defendants failed to follow—this continuing obligation to disclose exculpatory information and to seek plaintiff's exoneration—is the basis for their absolute immunity."); *see also Warney v. Monroe Cty.*, 587 F.3d 113, 125 (2d Cir. 2009) (recognizing prosecutors' continuing ethical duty to disclose exculpatory evidence post-conviction). Immunity does not refute wrongdoing; it simply bars individual liability. Ortiz's case is probative of institutional practice.

### b.    Darryl Boyd and John Walker, Jr.

Although not pleaded in the Complaint, the *Boyd* and *Walker* cases provide additional, publicly available support rendering Plaintiff's *Monell* claim plausible.[13]   The Court can take judicial notice of ECDA's post-conviction misconduct following the 1977 convictions of Darryl Boyd and John Walker, Jr.[14], which continued until their exonerations in 2021. (See Am. Compl., ECF No. 78, *Walker v. City of Buffalo, et al.*, 22-cv-520 (W.D.N.Y. March 13, 2023) and Am. Compl., ECF No. 78, *Boyd v. City of Buffalo, et al.*, 22-cv-519 (W.D.N.Y. March 13, 2023)).

The murder convictions of Boyd and Walker were ultimately vacated upon a showing that ECDA had failed to turn over photographs of the crime scene that contradicted the prosecution's theory of the case. The suppression of the photographs was exploited by the presentation of false testimony and argument. (Boyd Am. Compl. ¶¶ 421-431; Walker Am. Compl. ¶¶ 427-37). That ECDA had a policy to obstruct post-conviction proceedings is also established by ECDA's responses to Boyd and Walker's CPL ¶ 440.10 motions, made in 1982, 1984, 1986, and 2012 (Boyd Am. Compl. ¶¶ 396-426; Walker Am. Compl. ¶¶ 397-420). ECDA prosecutors made false

---

[13] Plaintiff does not offer these public records for the truth of any disputed factual assertions, but rather to demonstrate the County's litigation posture, ongoing endorsement of constitutionally deficient discovery practices, and continuing failure to discipline or retrain prosecutors in the face of well-publicized misconduct. These materials are matters of public record. The Court can take judicial notice of the decisions and other pleadings in the case as matters of public record. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).
[14] *See Boyd*, 22-cv-00519, 2025 U.S.Dist. LEXIS 7187.

sworn statements and misrepresentations about suppressed exculpatory material, causing courts to deny these motions and delaying exonerations for decades. (*Id.*)

Together, these cases underscore that ECDA had a custom of illegal post-conviction customs challenged here, further supporting *Monell* liability.[15] (Compl. ¶475).

### D. The Complaint Plausibly Alleges That the County Failed to Supervise and Discipline Prosecutors Despite Repeated Notice of Misconduct

As a threshold matter, Defendant improperly analyzes Plaintiff's failure-to-supervise and failure-to-discipline theories as if they constitute a single, undifferentiated claim (together with a failure-to-train theory). (MTD at Point I.B.). As the Second Circuit has made clear, each theory provides a distinct and independently sufficient basis for *Monell* liability. *Amnesty Am.*, 361 F.3d at 127 (2d Cir. 2004). Moreover, "courts must analyze these theories separately because they emphasize different facts and require different showings to establish deliberate indifference." *Id.* The Complaint does just that—pleading discrete theories, each supported by specific factual allegations.

The Complaint plausibly alleges that senior officials within the ECDA, as well as Erie County policymakers, failed to supervise and discipline prosecutors despite repeated notice of unconstitutional conduct. (Compl. ¶¶ 479-485, 540, 543, 547, 553, 560). This failure to respond—despite longstanding, publicly documented prosecutorial misconduct—constitutes deliberate indifference under Second Circuit precedent and supports *Monell* liability. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *Amnesty Am.*, 361 F.3d at 126; *Fiacco v. City of Rensselaer*, 783 F.2d 319, 329 (2d Cir. 1986). This theory requires a showing that: (1) the municipality knew to a moral certainty that its employees would confront the situation at issue; (2)

---

[15] As discussed *infra*, the trial level misconduct that occurred in these cases is relevant to Ms. Lynch's deliberate indifference-based theories of *Monell*.

it faced a history of mishandling similar situations or a difficult choice; and (3) its failure to act would likely cause constitutional deprivations. *Reynolds*, 506 F.3d at 192 (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)); *see also Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).

All three elements are satisfied here. First, it is well established that district attorney policymakers know "to a moral certainty" that assistant district attorneys will acquire *Brady* material, present witness testimony in court, confront potentially false or misleading evidence, and make arguments. These are "basic facets of an ADA's job." *Buari*, 530 F. Supp. 3d at 399 (quoting *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012)). It is also well established that the failure to supervise or discipline prosecutors for violations of these obligations will likely result in constitutional harm. *Bertuglia*, 839 F. Supp. 2d at 739; *Walker*, 974 F.2d at 300.

The Complaint alleges that ECDA had a well-documented history of failing to properly handle *Brady* and related disclosure obligations, suborning perjury, false and misleading argument, summation misconduct, and post-conviction obstruction. In addition to the comparator cases, the Complaint identifies at least six additional cases predating Ms. Lynch's trial in which ECDA prosecutors engaged in similar misconduct. (Compl. ¶ 520). These cases strengthen Ms. Lynch's *Monell* claim, in that they demonstrate a "widespread pattern" of misconduct. *Compare* MOL at 18-19 *with Toliver v. City of New York,* 2012 U.S. Dist. LEXIS 184518, at *21 (S.D.N.Y. Sept. 25, 2012) ("Courts have found sufficient facts to plausibly infer a widespread pattern where the complaints allege 'multiple incidents of a long, continuous time period.'" (citing cases)). *Accord Bolt v. City of New York*, No. 22-CV-3318 (DG)(PK), 2023 U.S. Dist. LEXIS 165934, at *42 (E.D.N.Y. Sep. 15, 2023) (longstanding practice constitutes the standard operating procedure of

the entity). A persistent and widespread policy exists where "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

The Complaint also pleads that, rather than be disciplined for his misconduct in Ms. Lynch's case, the trial prosecutor was instead promoted. (Compl. ¶ 531). So, too, in *Walker*, where the trial prosecutor, whose history of misconduct predated the *Boyd* and *Walker* trials, was promoted to deputy DA in charge of prosecutions after obtaining those convictions. (Walker Am. Compl. ¶566). *See Bell v. City of New York,* No. 22-CV-3251 (DG)(PK), 2023 U.S. Dist. LEXIS 156802, at *48 (E.D.N.Y. Sep. 1, 2023).

In further support of this widespread practice, the Court may also take judicial notice of several recent developments. First, in *Walker* (discussed *supra*), the Court can judicially notice the *Monell* evidence submitted at that trial and the recent jury verdict finding Erie County maintained illegal policies and practices in 1977 relating to *Brady* and summation conduct. *See* Jury Verdict and Plaintiff's Notice of Filing of Annotated Proposed Rule 1006 Summary ["Walker *Monell* Evidence"], ECF Nos. 366 and 291, *Walker v. City of Buffalo,* 22-cv-00520 (W.D.N.Y.). The Walker *Monell* evidence identifies 40 incidents of withholding favorable evidence, summation misconduct, or both, occurring between 1966 and 1985 and involving 12 different prosecutors– none of whom were the same prosecutor as in Ms. Lynch's case. *See* Walker *Monell* Evidence.

Taken together, these incidents far exceed showings held sufficient to survive motions to dismiss in other cases. *Buari*, 530 F. Supp. 3d at 407 (five vacated convictions in two years proceeding the plaintiff's prosecution in the large jurisdiction of the Bronx); *Tieman*, 2015 U.S. Dist. LEXIS 38703, at *22 (13 allegations of excessive force across nine lawsuits over five years).

They establish that senior ECDA officials were repeatedly placed on notice of serious prosecutorial misconduct for decades but took no remedial action: no investigations, no discipline, and no systemic reforms. To the contrary, as the Complaint alleges, not a single prosecutor involved in any of the wrongful convictions or other cases involving prosecutorial misconduct was ever disciplined or subjected to internal review. (Compl. ¶ 521). So, too, in *Walker*, where discovery in the federal civil rights action revealed that, of 31 cases spanning 1966 to 1985 where prosecutorial misconduct was identified by a court, the County found no instance of discipline, negative performance evaluations, or referrals to any Departmental Grievance Committees for the ADAs involved. *See* Request Nine of Plaintiffs' First Set of Interrogatories and Requests for Production to the County of Erie and Response to Interrogatory Four Defendant County of Erie's Supplemental Responses and Objections, ECF Nos. 176-122 and ECF No. 176-56, *Boyd and Walker v. City of Buffalo, et al.*, 22-cv-519, 22-cv-520 (W.D.N.Y. June 24, 2024).

The absence of any disciplinary consequence—not just in isolated cases, but across all of the cases cited by Plaintiff and by *Boyd* and *Walker*—establishes that supervisory officials knew of the misconduct and chose not to respond. *Buari,* 530 F.Supp. 3d at 399-400. That inaction is itself sufficient to plead deliberate indifference and constitutes ratification of the unlawful practices described in the Complaint.

Finally, the County's recent conduct in response to both Ms. Lynch's exoneration (discussed *supra*) and in *Walker v. County of Erie* further supports Plaintiff's claim that no corrective measures have ever been taken in response to ECDA's long history of *Brady* and other trial and post-conviction violations. In 2024, Erie County submitted an expert report under Fed.R.Civ.Pro R. 30(b)(6) from witness Kevin Gagan in support of its motion for summary judgment, as well as his deposition. (Gagan Report and Gagan Deposition Transcript, ECF Nos.

165-2 and 165-1, *Walker v. City of Buffalo, et al.*, 22-cv-520 (June 4, 2024 W.D.N.Y.).[16] Gagan—unaware of the Supreme Court's decision in *United States v. Agurs*, 427 U.S. 97 (1976)—asserted that the conduct of the prosecutors in *Walker*, which indisputably included withholding favorable photographic evidence and engaging in summation misconduct, complied with the laws and rules of evidence and ethics governing prosecutors in 1977. (Gagan Dep. at 167-169; Gagan Report at 3-4, 8, 13-14, 23-24). Gagan opined erroneously that, *inter alia*, *Brady* only addressed "exculpatory material", that prosecutors in 1977 only had to turn over material specifically requested by the defense, and had no duty to disclose inconsistent witness statements, early recantations, or internal police notes, and that any failure to disclose such materials—even when used to secure a conviction—was consistent with ethical norms.  (Gagan Report at 6, Gagan Dep. at 221, 112-113, 134-148).  He dismissed documented *Brady* violations in *Walker* and *Boyd* as "specious." (Gagan Report at 4). Erie County not only stood by this inaccurate assessment of *Brady* and progeny as of 1977, it relied on it as part of its official litigation position decades after multiple wrongful convictions and numerous judicial findings of misconduct. That the County continues to defend this legally incorrect view of *Brady*—rather than repudiate it—speaks volumes about its ongoing failure to supervise or discipline and its institutional indifference to constitutional norms. *See Walker v. County of Erie*, No. 22-cv-520, ECF No. 165-2 (W.D.N.Y.).

That this indifference continues today is also illustrated by the decision, set forth in the Complaint, in *People v. Nesbitt*, 81 Misc. 3d 907 (Buffalo City Ct. 2023), where a trial judge excoriated an ECDA prosecutor for his legally incorrect view of *Brady* and fundamental misunderstanding of his constitutional obligations. (Compl. ¶¶ 523-529). The ECDA prosecutor's

---

[16] Plaintiff does not offer these public records for the truth of any disputed factual assertions, but rather to demonstrate the County's litigation posture, ongoing endorsement of constitutionally deficient discovery practices, and continuing failure to discipline or retrain prosecutors in the face of well-publicized misconduct. These materials are matters of public record and subject to judicial notice.

conduct in *Nesbitt* mirror the very practices that led to Ms. Lynch's wrongful conviction: treating *Brady* and related discovery obligations as narrow, technical rules to be avoided rather than enforced. *Nesbitt* confirms that the constitutional violations alleged here are not relics of the past—they remain embedded in ECDA's institutional practices to this day.

Defendant's claim that Plaintiff's allegations rely on "temporally removed conduct" and are therefore insufficient to establish deliberate indifference is both factually and legally flawed. (MTD at 20–21). This case is nothing like *Greene v. City of New York*, 742 F. App'x 532, 537 (2d Cir. 2018), where the plaintiff cited only two cases predating his trial or *Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012), where the plaintiff cited only "two instances, or at the most three, over a period of several years."

Moreover, Defendant's argument ignores a critical second source of notice: ECDA's misconduct throughout the period after Ms. Lynch's conviction, which persisted for decades and continued to place County policymakers on notice of the very same constitutional violations alleged here. Ms. Peters was exonerated in 2008; Mr. Ortiz in 2015; Mr. Epps in 2017; and both Mr. Walker and Mr. Boyd in 2021—years before Ms. Lynch was exonerated in 2024. Each of these exonerations—like Ms. Lynch's—was delayed because of ECDA's continued suppression of *Brady* material, false representations to the court, or refusal to acknowledge innocence. Yet even as these cases came to light and received public and judicial attention, the County failed to discipline the prosecutors involved or to implement meaningful oversight. Most damningly, ECDA continued to oppose the post-conviction efforts of Ms. Lynch and every other wrongly convicted individual during this entire period—even as the evidence of their innocence mounted and the parallels to prior misconduct became undeniable. This prolonged and well-documented failure to supervise and discipline, both before and after Ms. Lynch's trial, supports a powerful

inference of deliberate indifference and institutional ratification of prosecutorial misconduct.

The County attempts to exclude post-conviction misconduct by asserting that only pre-1998 incidents are relevant to Plaintiff's claims. (MTD at 19). That is both a misstatement of the law and a mischaracterization of the Complaint. While Plaintiff must allege that the County had notice of constitutional violations before her own injury to establish liability for deliberate indifference, courts routinely consider post-injury conduct as relevant corroborative evidence of an existing policy or failure. *See, e.g.*, *Gentile v. County of Suffolk*, 926 F.2d 142, 152–53 (2d Cir. 1991) (post-incident failure to investigate or discipline supported inference of policy); *Chepilko v. City of New York*, 2012 WL 398700, at *4 (E.D.N.Y. Feb. 7, 2012) (subsequent incidents "may help establish that the constitutional violations at issue resulted from a municipal custom or policy"). In contrast to cases like *O'Neal*, *Simms*, and *Rodriguez*, where plaintiffs relied exclusively on post-incident conduct to establish notice, Plaintiff here has pled multiple contemporaneous and pre-1998 incidents sufficient to establish the County's awareness of systemic constitutional violations. *Compare O'Neal v. City of New York*, 196 F.Supp. 3d 421 (S.D.N.Y. 2016); *Simms v. City of New York*, 480 F. Spp'x 627 (2d Cir. 2012); *Rodriguez v. City of New York*, 607 F. Supp. 3d 285(E.D.N.Y. 2022). The post-1998 incidents are not offered to prove notice, but, as in *Gentile* and *Chepilko*, to confirm that the County's unconstitutional supervisory and disciplinary failures were ongoing, uncorrected, and institutionally embedded, as further support for the existence and persistence of the challenged policies and practices.

Plaintiff has met her burden to plausibly allege that ECDA and County policymakers were repeatedly placed on notice of prosecutorial misconduct and chose not to respond. That failure—both in individual cases and as a systemic practice—constitutes deliberate indifference. By failing to supervise or discipline line prosecutors after repeated constitutional violations—and instead

promoting them—County officials not only tolerated but effectively ratified a pattern of misconduct that caused Ms. Lynch's wrongful conviction and incarceration.

## II.    PLAINTIFF DOES NOT PROCEED UNDER A THEORY OF RESPONDEAT SUPERIOR

The County's argument that it cannot be held vicariously liable under § 1983 is a straw man. The Complaint pleads multiple theories of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). These are precisely the kinds of institutional failings that support *Monell* liability and are explicitly distinguished from respondeat superior in the case law the County cites. *Walker v. City of New York*, 974 F.2d 293, 296–98 (2d Cir. 1992); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127–29 (2d Cir. 2004). Accordingly, because Plaintiff's claims are grounded in well-established *Monell* theories—not vicarious liability—this argument provides no basis for dismissal of the Sixteenth Cause of Action.

## <u>CONCLUSION</u>

For the foregoing reasons and based on the pleadings and papers filed in this action, Defendant's motion should be denied.  Should the Court perceive deficiencies with respect to any of her claims, Plaintiff requests the opportunity to amend her Complaint to amplify the allegations. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).

Dated: New York, New York
        May 23, 2025

Respectfully submitted,


FISHER & BYRIALSEN PLLC
99 Park Avenue, PH Suite/ 26 Floor
New York, NY 10016
(303) 256-6345

/s/
Jane Fisher-Byrialsen


BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH Suite/ 26 Floor
New York, NY 10016
(212) 490-0400

Luna Droubi
Marc Cannan
Karen Dippold
Tala Alfoqaha*

NEWIRTH LINEHAN PLLC
43 West 43rd Street, Suite 160
New York, NY 10036
(917) 426-5551

/s/
Karen A. Newirth
Charles F. Linehan

*Attorneys for Plaintiff Renay Lynch*

*pending admission*

26