UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RENAY LYNCH

                    Plaintiff,

                                                  Case No.: 1:25-CV-00075-LJV

v.

THE TOWN OF AMHERST,
MICHAEL J. MELTON,
JOSPEH LACORTE,
RAYMOND KLIMCZAK, and
THE COUNTY OF ERIE,

                    Defendants.
_____

## MEMORANDUM OF LAW IN REPLY TO  THE PLAINTIFF'S RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**HURWITZ FINE, P.C.**
Michael F. Perley, Esq.
*Attorneys for Amherst, Melton,*
*LaCorte, and Klimczak*
1300 Liberty Building
Buffalo, New York 14202
Telephone: (716) 849-8900
Facsimile: (716) 855-0874
mfp@hurwitzfine.com

## TABLE OF CONTENTS

POINT I ....................................................................................................................................... 1

    A.      PLAINTIFF'S *MONELL* CLAIMS ARE INSUFFICIENTLY PLED. .................. 1

            1.      Defendant Melton Is Not Alleged To Have Final Decision-Making Authority ..................................................................................................... 3

            2.      Failure to Train on the Handling of Forensic Evidence and Conducting Proper Interrogations. .................................................................................. 5

            3.      Forensic Evidence (Count 9) ..................................................................... 6

            4.      Proper Interrogation Tatics (Count 11) ...................................................... 9

POINT II ................................................................................................................................... 12

    B.      PLAINTIFF DID NOT MEET THE REQUIREMENTS OF GENERAL MUNICIPAL LAW § 50-e. ................................................................................ 12

POINT III.................................................................................................................................. 14

    C.      THE COURT SHOULD DECIDE THE MOTION ON THE MERITS. ............. 14

CONCLUSION.......................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Allan v. City of New York*, 386 F.Supp.2d 54 (S.D.N.Y. Sept. 2005).............................................. 5

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ............................................... 3

*Arma v. Buyseasons, Inc.*, 591 F.Supp. 2d 637 (S.D.N.Y. 2008) ..................................................... 2

*Barmore v. Aidala*, 419 F. Supp. 2d 193 (N.D.N.Y. 2005) ............................................................. 2

*Baumeister v. Erie Cnty.*, 2024 U.S. Dist. LEXIS 178257 (W.D.N.Y. Sept. 30, 2024).............. 12

*Buchanan v. City of New York*, 556 F.Supp.3d 346 (S.D.N.Y. Aug. 23, 2021) ............................. 4

*Chamberlain v. City of White Plains*, 960 F.3d 100 (2d Cir. 2020) ............................................... 8

*Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. Feb. 15, 2013)............................. 7, 9

*Connick v. Thompson*, 563 U.S. 51 (2011) ........................................................................... passim

*Edrei v. City of New York*, 254 F. Supp. 3d 565 (S.D.N.Y. May 31, 2017) ............................... 6, 8

*Fantozzi v. City of New York*, 343 F.R.D. 19 (S.D.N.Y. 2022) ...................................................... 2

*Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263 (S.D.N.Y. 2015)................................................. 5

*Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789 (2d Cir. 1999)........................... 14

*Harmer v. Westchester Cty.*,16-CV-7610-VB, 2017 U.S. Dist. LEXIS 203401
    (S.D.N.Y. December 11, 2017)................................................................................................... 1

*Harris v. McAlistor*, 2023 U.S. Dist. LEXIS 159272 (W.D.N.Y. Sept. 8, 2023).................... 5, 10

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) ...................................................................... 3

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ............................................................................. 3, 4

*Jones v. Town of E. Haven*, 691 F.3d 72 (2d Cir. 2012).................................................................. 5

*Leighton v. Poltorak*, 2018 U.S. Dist. LEXIS 87007, 2018 WL 2338789
    (S.D.N.Y. May 23, 2018)......................................................................................................... 15

*Lucente v. County of Suffolk*, 980 F.3d 284 (2d Cir. 2020) ............................................................ 5

*Matthews v. City of New York*, 889 F. Supp. 2d 418 (E.D.N.Y. Sept. 5, 2012) ........................... 14

*McCormick v. County of Westchester*, 2023 U.S. Dist. LEXIS 50765
    (S.D.N.Y. Mar. 24, 2023)..................................................................................................... 8, 11

*McKeefry v. Town of Bedford*, 2019 U.S. Dist. LEXIS 207874, 2019 WL 6498312
    (S.D.N.Y. Dec. 2, 2019)............................................................................................................. 5

*McMillian v. Monroe County, Alabama*, 520 U.S. 781 (1997) ...................................................... 3

*Montero v. City of Yonkers, New York*, 890 F.3d 386 (2d Cir. 2018)............................................. 3

*Oriental v. Vill of Westbury*, 2019 U.S. Dist. LEXIS 171232 ........................................................ 4

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123 (2d Cir. 2001).......................... 15

*Petaway v. Osden*, 827 Fed. Appx. 150, 152 (2d Cir. 2020) ........................................................ 14

*Prevost v. City of New York*, 2014 U.S. Dist. LEXIS 170157 (S.D.N.Y. Dec. 9, 2014) .............. 11

*Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63 (2d Cir. 1998)). ............................................. 14

*Roe v. City of Westbury*, 542 F.3d 31 (2d Cir. 2008)................................................................. 3, 4

*Scantlebury v. N.Y. City Health & Hosps. Corp.*, 4 N.Y.3d 606, 611 (2005) .............................. 13

*Singh v. Suffolk Cnty.*, 2023 U.S. Dist. LEXI 27458 (W.D.N.Y. Feb. 17, 2023) ......................... 10

*Stevens & Co. LLC v. Espat*, 2025 U.S. Dist. LEXIS 58681 (S.D.N.Y. March 28, 2025)........... 15

*Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) ............. 11

*Vassiliou v. City of New York*, 2021 U.S. Dist. LEXIS 3433 (E.D.N.Y. Jan. 7, 2021) ................. 4

*Viruet v. City of New York*, 97 N.Y.2d 171, 176-77 (2001)......................................................... 13

*Walker v. New York*, 974 F.2d 293 (2d Cir. 1992)........................................................................ 6

*Wekenmann v. Biegasiewicz*, 2024 U.S. Dist. LEXIS 81911 (W.D.N.Y. March 29, 2024)......... 13

**Statutes**

Fed. R. Civ. P. 6(b) ...................................................................................................................... 14

New York General Municipal Law § 50-e(3)(c) ......................................................................... 12

## POINT I

### A.    PLAINTIFF'S *MONELL* CLAIMS ARE INSUFFICIENTLY PLED.

The Plaintiff abandons multiple theories set forth in her Complaint, and, instead asserts the

following three (3) areas of *Monell* liability:

1)  "the Town of Amherst was deliberately indifferent to the need to maintain, analyze, and/or turn over forensic evidence, including fingerprint evidence[;]"

2)  "the Town of Amherst failed to train its officers, including on proper interrogation tactics and charging decisions, ultimately leading to Ms. Lynch's false confession[;]" and

3)  "Defendant Captain Melton was a policymaker who knowingly caused the unconstitutional conduct and intentionally violated Ms. Lynch's constitutional rights and caused others to do the same[.]"

*See* Dkt. 22, p. 6

These theories of liability are rooted in the second and fourth areas of *Monell* liability,

specifically final policymaking authority and deliberate indifference.  As the Court is well aware,

the four areas of *Monell* liability are as follows:

> [A] plaintiff may assert one of the following: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with ***final*** decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees."

*Harmer v. Westchester Cty*.,16-CV-7610-VB, 2017 U.S. Dist. LEXIS 203401, at *17-18

(S.D.N.Y. December 11, 2017) (emphasis added).  The Plaintiff never alleged the first theory of

*Monell* liability.

As to the third theory of *Monell* liability, despite repeated allegations in the Complaint of

Amherst having policies and customs of widespread and persistent misconduct (*Monell* theory

three), Plaintiff does not attempt to address this theory of *Monell* liability.  As such, the Plaintiff

1

has failed to defend or address any of the arguments related to the widespread pattern allegations set forth in Defendants' brief. *See* Dkt. 13-3, pgs. 9-14. Failure to respond to these arguments should deem this the widespread and persistent theory of liability as abandoned. *Fantozzi v. City of New York*, 343 F.R.D. 19, 32 (S.D.N.Y. 2022) ("Courts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (quoting *Arma v. Buyseasons, Inc*., 591 F.Supp. 2d 637, 643 (S.D.N.Y. 2008); and *Barmore v. Aidala*, 419 F. Supp. 2d 193, 201 (N.D.N.Y. 2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim."). Accordingly, any reliance on the following allegations from the Complaint to establish a municipal "custom" must now be deemed waived, including, but not limited to: the destruction and withholding of forensic evidence (e.g., ¶¶ 433 and 436), the asserted practice of coercing confessions through threats and promises (e.g., ¶¶ 539, 544, 546, 553, 561), the encouragement of illegal detentions (e.g., ¶¶ 553, 556), preparing false reports (e.g., ¶¶ 553, 561, 565),  their dealings with informants (e.g., ¶¶ 546-547), failure to turn over *Brady* evidence (e.g., ¶¶ 546-547, 553, 554, 559, 561, 565), and any suggestion of a departmental policy or failure to supervise and discipline officers.

In Plaintiff's response, rather than defend the allegations of there being widespread issues within the Amherst Police Department ("APD"), she anchors her argument to the claim that Captain Melton was a policymaker (not a ***final*** policymaker) – an assertion that is not adequately pled in the Complaint, and if so, in a barebones, conclusory fashion, but, importantly, is legally deficient. *Monell* liability under the second theory requires factual allegations showing that the individual had ***final*** decision-making authority under state law, not simply a supervisory or senior position. The plaintiff offers no such allegations here.

2

Left with no policy, no custom, and no final policymaker, Plaintiff attempts to reframe her claim under the single-incident theory discussed in *Connick v. Thompson*, 563 U.S. 51 (2011). But that theory is an exceedingly narrow exception applicable only in rare cases involving obvious training deficiencies – conditions not present or plausibly alleged here. The rationale of *Connick* is not a blanket endorsement for avoiding the requirement of identifying a policy or a policymaker; rather, it is narrowly tailored to a specific failure-to-train theory, which Plaintiff improperly seeks to extend. Accordingly, Plaintiff's *Monell* claim remains deficient under any recognized theory.

### 1.    Defendant Melton Is Not Alleged To Have Final Decision-Making Authority

To prevail under the second theory of *Monell* liability, the final decision-making prong, "a plaintiff must allege facts suggesting that an officer with final policymaking authority ordered, ratified, or "was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Hu v. City of New York*, 927 F.3d 81, 105 (2d Cir. 2019) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)). "An official has final authority if his decisions, at the time they are made, 'may be fairly said to represent official policy.'" *Roe v. City of Westbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quoting *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 784 (1997). "A plaintiff need only identify one such decision to bring a *Monell* claim, for 'even a single action by a decisionmaker who possesses final authority to establish municipal policy with respect to the action ordered may deprive the plaintiff of his or her constitutional rights.'" *Id.* (quoting *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403 (2d Cir. 2018)). Whether an official "possessed final policymaking authority is a legal question, which is to be answered on the basis of state law, . . . includ[ing] state and local positive law, as well as custom or usage having the force of law." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Moreover, "the court must specifically determine whether the government official is

3

a final policymaker with respect to the particular conduct challenged in the lawsuit." *Roe, supra*, 542 F.3d at 37.

The Complaint is devoid of any allegations that Captain Melton operated as a final policymaker. *See e.g. Oriental v. Vill of Westbury*, 2019 U.S. Dist. LEXIS 171232, *10 ("The amended complaint is devoid of any factual allegations to support that the actions complained of were by a final decisionmaker."). Captain Melton is described repeatedly as being involved in the investigation and allegedly providing false testimony (e.g., ¶¶ 223–225, 287–288). He is identified as a Captain in the Amherst Police Department (¶ 31), but nowhere in the 97-page complaint does Plaintiff allege or assert that Melton had ***final*** policymaking authority, only blanket assertions of having generalized policymaking authority. There is simply no claim that Melton had the authority to establish municipal policy, or that his actions were not subject to review by higher officials. The Complaint relies on Melton's alleged conduct in this particular case to imply municipal liability without pleading a proper *Monell* theory tied to a final policymaker.

Labeling Captain Melton as a supervisor over homicide investigations and this investigation in particular does not remedy this deficiency. The Plaintiff has cited no statutory authority conferring final policymaking authority to the head of homicide investigations. *See e.g., Jeffes, supra*, 208 F.3d at 58-59 (providing a robust discussion of the constitutional and statutory authority that provided a Sheriff with final decision-making authority). Nor has Plaintiff cited any town policy or ordinance. *See e.g., Buchanan v. City of New York*, 556 F.Supp.3d 346, 364 (S.D.N.Y. Aug. 23, 2021) (analyzing the City's charter to determine final policymaking authority). Moreover, even higher-ranking officers, like Captain Melton, are routinely not considered final policymakers. In *Vassiliou v. City of New York*, 2021 U.S. Dist. LEXIS 3433, *17 (E.D.N.Y. Jan. 7, 2021), the Court easily dismissed a similar claim against a high-ranking Sergeant who

supervised an arrest, finding "a police sergeant, even if the ranking officer on a matter, is not a policy maker." (quoting *McKeefry v. Town of Bedford*, 2019 U.S. Dist. LEXIS 207874, 2019 WL 6498312, at *5 (S.D.N.Y. Dec. 2, 2019)); *see also Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263, 303 (S.D.N.Y. 2015) (finding that a Sergeant who supervised a search did not have final policymaking authority related to how searches were conducted), and *Allan v. City of New York*, 386 F.Supp.2d 542, 546 (S.D.N.Y. Sept. 2005) (finding that a police captain did not have final policymaking authority).  Plaintiff's inability to sufficiently plead facts that Captain Melton had final policymaking authority dooms the second theory of *Monell* liability.  Moreover, as argued below, Plaintiff's inconsistent pleadings related to Captain Melton profoundly impacts her fourth theory of *Monell* liability, and her lawsuit in general.

### 2. Failure to Train on the Handling of Forensic Evidence and Conducting Proper Interrogations.

Recognizing that a pattern or practice of corruption was so widespread did not exist at APD, Plaintiff pivots by arguing this single, particular incident of unconstitutional activity towards her was "so patently obvious" to demonstrate deliberate indifference related to the training of forensic evidence and interrogation techniques.  When a Plaintiff asserts a failure to train, like here, "[a] municipality's culpability for a deprivation of rights is at its most tenuous . . ." *Connick, supra*, 563 U.S. at 61.  "[D]emonstrating deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  "A policy of acquiescing in or ratifying illegal conduct 'cannot be inferred from the failure of those in charge to discipline a single officer for  a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in prior patterns of conduct." *Harris v. McAlistor*, 2023 U.S. Dist. LEXIS 159272, *28-29 (W.D.N.Y. Sept. 8, 2023) (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020)).  "Proof

of a single incident of unconstitutional activity is usually insufficient to demonstrate the existence of a policy, unless 'the unconstitutional consequences of failing to train could be so patently obvious that a city should be liable under [Section] 1983' and that violation of constitutional rights must be a 'highly predictable consequence' of the failure to train." *Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y. May 31, 2017) (quoting *Connick, supra*, 563 at 63-64).  .

   To prevail under one-incident theory of indifference for failure to train, the following three (3) requirements must be met: 1) a policymaker knew to a "moral certainty" that an employee "will confront a given situation[,]" and not "rare or unforeseen events[;]" 2) that the training would help confront "a difficult choice" that training "will make less difficult" or that "there is a history of employees mishandling the situations[;]" and 3) that the "wrong choice" by the employee would frequently cause the deprivation of a citizen's rights. *Walker v. New York*, 974 F.2d 293, 297-298 (2d Cir. 1992).

### 3.  Forensic Evidence (Count 9)

   On the failure to train related to forensic evidence theory of *Monell* liability, Plaintiff offers confusing and contradictory allegations related to Captain Melton that exposes her legal deficiencies.  For example, she claims Captain Melton, who she alleges had had policymaking authority, failed to implement proper training protocols regarding the maintenance, analysis, and disclosure of evidence – suggesting a broader institutional failure. She does not allege any facts to support how or why the training was deficient within APD.  No policy or training manual is cited, nor are other examples of such institutional failure.  As to her claim about failing to turn the fingerprints over, she alleges that the ECDA, not the APD, "suppressed [this evidence] from the defense . . ."  ¶ 301.  Simply, she does not allege what deficiencies were within APD's failure to train related to forensic evidence.  In fact, in her complaint, she states that Steven Kasper, a retired Detective and Latent Print Examiner, discussed how he and Melton had "the requisite training and

experience to analyze latent prints for APD at the time . . ." ¶ 315. Nowhere does she discuss a lack of training conferred to Kasper or Melton, or anyone else handling forensic evidence.

As to the issuance or lack thereof forensic reports, Plaintiff affirmatively acknowledges that the Amherst Police Department had a "formal policy requiring officers to create a written report regarding the findings of any latent print analyses . . ." (Dkt. 22 p. 13). Given this existing policy, her allegation that Captain Melton failed to produce any such reports in this case cannot plausibly be attributed to a failure to train, but reflects an alleged deviation from established protocol—further confirming that her claim is rooted in an isolated incident, not a systemic deficiency.

As to Melton's distinct role here, she alleges that he personally gave false testimony about the usability of fingerprints in this specific case. As to the specific allegations, Plaintiff asserts that Captain Melton testified "there [were] only two latent prints from the crime scene [that] were suitable for comparison[,]" and that there were "no 'usable' prints obtained from inside the victim's home." She alleges these statements were false. *See* ¶¶ 223-225. She does not allege that he failed to properly train or receive proper training; rather, that he testified falsely as to the usability and numerosity of latent prints in or near the apartment. Plaintiff's allegations that Melton perjured himself undermines any claim of a systemic training deficiency and instead reinforces that Plaintiff's allegations are limited to a single, isolated occurrence—precisely the kind of individualized misconduct that cannot support *Monell* liability absent evidence of a broader pattern or policy.[1]

---

[1] To the extent Plaintiff relies on *Walker, supra*, 974 F.2d at 299, to suggest that one-incident of perjury may be enough to satisfy the pleading standard, the Court in *Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. Feb. 15, 2013), discussed that such a scenario would not survive the higher *Iqbal* standard.

Plaintiff's opposition improperly relies on broad citations to *Boston*, *Chamberlain*, and *Edrei* without acknowledging the factual specificity and institutional documentation that supported *Monell* claims in those cases. As the court made clear in *McCormick v. County of Westchester*, 2023 U.S. Dist. LEXIS 50765 (S.D.N.Y. Mar. 24, 2023), those decisions are distinguishable because they involved detailed allegations supported by a lack of manuals, *see Edrei*, training deficiencies, *see Boston and Chamberlain,*[2] or documented policies, that plausibly established deliberate indifference by the municipality.

Moreover, the common thread running through the cases cited by Plaintiff—*Connick*, *Boston*, *Chamberlain*, and *Edrei*—is that they involved the use of police weaponry or tactics in high-risk situations requiring specialized, technical training, such as the use of deadly force with firearms, *see Connick*, the deployment of long range acoustic devices, *see Edrei*, the use of tasers emotional disturbed individuals, *see Chamberlain*, and how to deal with arrestees who require medical attention after ingesting drugs, *see Boston*.  Those cases turned on whether the municipality failed to equip its officers with the necessary instruction to safely and constitutionally navigate those specific encounters.

In contrast, the allegations here relating to the handling of fingerprint evidence and avoiding coercive or dishonest interrogation tactics do not suggest an "utter lack of ability to cope with constitutional situations" that would trigger a *Connick*-style single-incident training failure. The *McCormick* court dismissed *Monell* claims where, as here, the complaint relied on conclusory allegations of widespread custom without anchoring them in factual support or specific examples.

---

[2] The *Monell* claim in *Chamberlain* was later dismissed at the summary judgment stage because although the police department had no written policy related to interacting with emotional disturbed individuals who were barricaded, the evidence clearly establishes that officers had academy and in-service training.  *Chamberlain v. City of White Plains*, 960 F.3d 100, 115 (2d Cir. 2020).

### 4.    Proper Interrogation Tatics (Count 11)

Plaintiff's opposition narrows her *Monell* theory to focus solely on APD's alleged "deliberate indifference in failing to train officers on proper interrogation and investigation tactics and on decisions to charge in the absence of probable cause." By doing so, she effectively abandons the broader and more sweeping deliberate indifference allegations asserted in Count 11. Specifically, any claims relating to APD's alleged failure to train officers on the use of jailhouse informants or the disclosure of Brady material have now been waived, as they are neither defended nor mentioned in Plaintiff's response. What remains is a pared-down theory that fails to meet the high bar established under *Connick, supra,* for single-incident *Monell* liability.

Importantly, Plaintiff's allegations that officers engaged in coercion, trickery, outright false testimony, and arresting without probable cause fall outside the scope of *Connick*, which recognized a narrow exception only where the need for specific training is so obvious that failure to provide it amounts to deliberate indifference. It requires more than misconduct; it requires misconduct that would be the "highly predictable" result of not training officers on a particular subject. Here, common sense dictates that officers should not fabricate evidence, coerce confessions, or lie under oath.  Because the alleged misconduct involves behavior that any reasonable officer, rookie or otherwise, would inherently know to avoid, the absence of specific training cannot be said to have made the "right choice" more difficult. The *Connick* exception applies only where the constitutional line is so unclear that training is needed to navigate it. But there is no ambiguity in the proposition that fabricating evidence, using coercion, or nefariously arresting citizens without probable cause is unconstitutional.

Courts have found like in *Collins, supra*, that "egregious conduct" does not fall within the one-incident exception.  923 F. Supp. 2d at 479-80 (ultimately denying dismissal of the complaint based on other allegations in another court proceeding and a comprehensive report documenting

perjury and falsifying information; both of which are missing here).  The very obviousness of this misconduct defeats Plaintiff's theory and further confirms that she has not stated a viable *Monell* claim under the one-incident exception.  This Court recognized such in *Singh v. Suffolk Cnty.*, 2023 U.S. Dist. LEXI 27458, * (W.D.N.Y. Feb. 17, 2023), "particular circumstances" of a false arrest or baseless prosecution were not regularly presented as "highly predictable constitutional danger[s]," in dismissing a deliberate indifference *Monell* claim.  This Court further dismissed a deliberate indifference *Monell* claim where "the particular circumstances" of the encounter did not point to any employee's 'utter lack of [] ability to cope with constitutional situations' that would make it a 'highly predictable consequence'" that an employee would violate a citizen's constitutional rights.  *See Harris v. McAlistor*, 2023 U.S. Dist. LEXIS 159272, *30-31 (W.D.N.Y. Sept. 8, 2023) (quoting *Connick, supra*, 563 U.S. at 64, 67).

Another fundamental flaw in Plaintiff's argument is her misapplication of the *Connick* standard. She asserts that municipal policymakers would have known to a "moral certainty" that officers would question suspects.  This is not the relevant inquiry and greatly oversimplifies the one-incident hypothetical. The correct standard, as set forth in *Connick, supra*, requires a showing that policymakers would have known to a moral certainty that officers would engage in unconstitutional conduct – here, coercion, trickery, deceit, and pursuing "actively fabricated evidence" – absent specific training. Plaintiff's formulation would effectively impose *Monell* liability any time an officer improperly interrogates a suspect, regardless of the nature or intent of the misconduct. That sweeping theory is unsupported by case law and would render *Connick*'s "rare" and "hypothetical" exception into irrelevance.  All day, every day, officers' encounters involve citizen's rights pursuant to the 4th, 5th, and 6th Amendments.  Taking Plaintiff's argument to its logical conclusion would render any misconduct involving an unconstitutional stop or

unconstitutional questioning to fall within the one-incident theory. *Connick* does not contemplate such sweeping liability and focuses on nuanced, technical training not present here.

Plaintiff's reliance on *Prevost v. City of New York*, 2014 U.S. Dist. LEXIS 170157 (S.D.N.Y. Dec. 9, 2014), is misplaced. In *Prevost*, the court allowed a single-incident *Monell* claim to proceed based on a failure to train officers on how the privileged use of force can dissipate probable cause, thus requiring nuanced judgment in rapidly evolving situations. That scenario involved a sophisticated legal understanding of a citizen's right to use privileged use of a force under the New York Penal Law. The Court there explicitly relied on *Connick*'s deadly force exception for situations where the constitutional terrain is not intuitive, even for trained officers, and, as such, discussed concerns that a "novice" might unwittingly violate constitutional rights absent proper training. In contrast, the misconduct alleged here of coercing confessions, engaging in trickery, and providing false testimony to secure an egregious felony murder conviction is not a matter of legal nuance. It is common sense, even to the most inexperienced officer, that such conduct is unconstitutional and unethical. As such, this case falls well outside the narrow *Connick* framework and renders Plaintiff's analogy to *Prevost* wholly unpersuasive.

Finally, and fundamental to this Complaint as discussed in detail in the Defendants' original brief, the Plaintiff fails to assert facts as to what training was received on obtaining confessions, how such training was deficient, and how such deficiency placed Amherst on notice. These barebone accusations are fatal to the Plaintiff's Complaint. *See Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703, *22 (S.D.N.Y. Mar. 26, 2015) ("mere allegations of . . . inadequate training and/or supervision are insufficient to demonstrate the existence of such custom unless supported by factual details."); and *McCormick, supra*, 2023 U.S. Dist. LEXIS 50765 at *42-43 (finding allegations "wholly conclusory" where not facts were alleged from any manuals, websites,

11

or practices or policies).  Plaintiff's suggestion that "discovery will shed light on" APD's training cannot survive the *Iqbal* standard.  *See Baumeister v. Erie Cnty.*, 2024 U.S. Dist. LEXIS 178257, * 24-25 (W.D.N.Y. Sept. 30, 2024) (this Court discussing *Iqbal's* standard on a failure to train claim).  Simply, Plaintiff's *Monell* claims must be dismissed.

In all, Plaintiff's allegations against Captain Melton and others related to their conduct in this "particular" case not only undermine her *Monell* theory, but also highlights the logical inconsistency at the heart of her 97-page Complaint. If, as suggested Melton truly discovered a "usable" fingerprint belonging to a neighbor already convicted of manslaughter, and if he were so corrupt, as suggested by the Plaintiff, it defies logic to suggest he would suppress that evidence in order to frame an innocent woman – particularly one who had cooperated with police by wearing a wire to gather evidence against Kareem Walker. If Melton and others were as corrupt and conspiratorial as alleged, the "path of least resistance" would have been to prosecute the convicted murderer whose print was allegedly inside the victim's home, certainly not the woman who admitted to acting as a lookout during a robbery that escalated into a murder. Occam's razor applies: the simplest explanation is often the correct one. Here, the more plausible narrative is not a sprawling conspiracy to wrongfully convict an innocent woman, but that officers pursued charges based on what they knew at the time, namely her own admissions and other evidence.

## POINT II

### B.    PLAINTIFF DID NOT MEET THE REQUIREMENTS OF GENERAL MUNICIPAL LAW § 50-E.

Plaintiff appears to acknowledge that she improperly served her notice of claim, however, she argues that the savings provision under New York General Municipal Law § 50-e(3)(c) saves her defective service.  Because the Plaintiff appeared for her § 50-h hearing, Plaintiff argues that the savings provision applies.

12

The savings provision applies to the "manner" in which the Notice of Claim is served, not who is improperly served. General Municipal Law § 50-e(3)(c), the savings provision, specifies that if a notice of claim is timely served "but in a *manner* not in compliance with the provisions of this subdivision [3] . . ." For instance, in *Scantlebury v. N.Y. City Health & Hosps. Corp.*, the Court discussed that the savings provision "was s intended to cure improper *methods* of service, *such as service by ordinary mail*, not service on the wrong public entity." 4 N.Y.3d 606, 611 (2005) (emphasis added). In *Viruet v. City of New York*, the Court discussed that the savings provision "which sets forth two *methods* of service of a notice of claim, by personal service and by mail, and two classes of persons upon whom service may be made, a person designated by law and an attorney regularly engaged in representing the public corporation." 97 N.Y.2d 171, 176-77 (2001) (emphasis added) (finding that service upon corporation counsel constituted proper service).

Here, Defendants are not claiming issue with the method and manner of service in how Plaintiff served the notice of claim; rather, the issue remains that the Plaintiff served the wrong person. This is a jurisdictional defect that is not cured by the savings provision. In *Lowrance c. N.Y.C. Hous. Auth.*, 2022 N.Y. Misc. LEXIS 25702 (Bronx Cty. Feb. 16, 2022), the Court discussed the distinction between method and class of persons. In *Lowrance*, the Court determined service on the wrong person (even if the right entity) constitutes a "jurisdictional defect" that cannot be cured by the savings provision.

Plaintiff's reliance on *Wekenmann v. Biegasiewicz*, 2024 U.S. Dist. LEXIS 81911 (W.D.N.Y. March 29, 2024) should be given little weight. In that case, this issue was not fully addressed since the Defendant did not "argued otherwise in its reply memorandum." To the extent Plaintiff seeks further relaxation of the savings provision, "New York state courts strictly construe

13

Notice of Claim requirements . . . which federal courts must apply in exercising supplemental jurisdiction over state law claims." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. Sept. 5, 2012); *see also Hardy v. New York City Health & Hosps. Corp*., 164 F.3d 789, 794 (2d Cir. 1999) (discussing strict construction of notice of claim requirements and that "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Id*. Plaintiff has fallen short of meeting this burden. Plaintiff's state claims must be dismissed.

**POINT III**

**C.   THE COURT SHOULD DECIDE THE MOTION ON THE MERITS.**

Plaintiff's assertion that Defendants' motion to dismiss should be deemed untimely should be denied. Extension to answer or otherwise respond to a complaint may be honored where agreed to by counsel in good faith, even if a stipulation is not immediately filed with the court. Pursuant to Fed. R. Civ. P. 6(b) a court may grant an extension of time "after the time has expired if the party failed to act because of excusable neglect." "[T]he inquiry into whether a failure to abide by a specified time constraint constitutes 'excusable neglect' is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Petaway v. Osden*, 827 Fed. Appx. 150, 152 (2d Cir. 2020) (quoting *Raymond v. Int'l Bus. Machs. Corp*., 148 F.3d 63, 66 (2d Cir. 1998)).

Here, counsel for both parties explicitly agreed to an extension for Defendant to file a responsive pleading. Defendant relied on that agreement in good faith and filed its motion to dismiss on the agreed-upon date. Plaintiff raises no claim of prejudice resulting from the short delay or the absence of a formal stipulation, and none exists. *See Petaway, supra,* 827 Fed. Appx.

14

at 152 (finding that a 2-month delay in the defendant filing a motion for summary judgment did not cause prejudice). Plaintiff never sought default and the pleadings were still open. Moreover, Defendant's motion is meritorious on its face and seeks to significantly narrow the scope of litigation at an early stage, in line with the judicial economy goals underlying Rule 12. Accordingly, the Court should consider the motion on the merits in the interests of fairness and judicial efficiency.

To the extent the Court denies the motion as untimely and that the pleading window has closed, the Defendants seek to convert their motion into a Rule 12(c) motion. The Second Circuit has treated untimely Rule 12(b)(6) motions as Rule 12(c) motions to ensure procedural efficiency and to avoid unnecessary dismissal of motions based on timing. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123 (2d Cir. 2001). As the standards are identical, "[t]here is therefore 'no point' in denying a Rule 12(b)(6) motion as untimely, as the movant 'would be free to make an essentially identical motion pursuant to Rule 12(c).'" *Stevens & Co. LLC v. Espat*, 2025 U.S. Dist. LEXIS 58681, \*12 (S.D.N.Y. March 28, 2025) (quoting *Leighton v. Poltorak*, 2018 U.S. Dist. LEXIS 87007, 2018 WL 2338789, at \*1 (S.D.N.Y. May 23, 2018)).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's *Monell* and New York State claims in her Complaint.

DATED:     Buffalo, New York
           June 6, 2025

**HURWITZ & FINE, P.C.**

*/s/ Michael F. Perley*

Michael F. Perley, Esq.
*Attorney for Defendants Town of Amherst,*
*Melton, LaCorte, and Klimczak*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900
mfp@hurwitzfine.com