UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RENAY LYNCH,

        Plaintiff,

v.                                              **Case No. 1:25-cv-00075-LJV**

THE TOWN OF AMHERST, MICHAEL J. MELTON,
JOSEPH LaCORTE, RAYMOND KLIMCZAK and THE
COUNTY OF ERIE,

        Defendants.

---

## DEFENDANT COUNTY OF ERIE'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

**LIPPES MATHIAS LLP**
Jennifer C. Persico, Esq.
Brian C. Mahoney, Esq.
Kirstie A. Means, Esq.
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
bmahoney@lippes.com
kmeans@lippes.com

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .......................................................................................................................... 1

POINT I:   PLAINTIFF'S SIXTEENTH CAUSE OF ACTION FOR *"RESPONDEAT SUPERIOR"* FAILS TO STATE A CLAIM AGAINST THE COUNTY ................... 1

POINT II:   PLAINTIFF'S *MONELL* CLAIM FAILS AS A MATTER OF LAW ........................ 1

   A.   Plaintiff does not allege a valid theory of policymaker participation or ratification. .. 2

   B.   Plaintiff fails to allege a widespread custom or practice. ........................................... 4

      1.   Plaintiff's Alleged Policies and Practices Are Overly Broad ..................................... 5

      2.   Plaintiff's Allegations of a Widespread Practice Contemporaneous to her 1998 ........ 6
Conviction are Numerically and Factually Deficient. ....................................................... 6

         i.   Incidents Must be Factually Similar ........................................................ 6

         ii.   Incidents Must Result in an Adjudication of Liability. .......................................... 7

      3.   Plaintiff's Allegations of a Widespread Practice Relative to Alleged Post-Conviction Misconduct are Fundamentally Flawed ................................................................. 8

   C.   Plaintiff Fails to Allege Deliberate Indifference for Failure to Discipline/Supervise .. 9

CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 126 (2d Cir. 2004) ................................................................................................. 3

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
   520 U.S. 397 (1997) ............................................................................................................ 10

*Bell v. City of New York*,
   2023 WL 11916696 (E.D.N.Y. Sept. 1, 2023) ..................................................................... 10

*Buari v. City of New York*,
   530 F. Supp. 3d 356 (S.D.N.Y. 2021) ............................................................................... 4, 6

*Collins v. City of New York,* ,
   923 F. Supp. 2d 476 .............................................................................................................. 3

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*,
   557 U.S. 52 (2009) .............................................................................................................. 11

*In re Clarke-James*,
   2025 WL 819868 (Bankr. E.D.N.Y. Mar. 13, 2025) ............................................................ 2

*Jackson v. Nassau Cnty.*,
   552 F. Supp. 3d 350 (E.D.N.Y. 2021) .................................................................................. 7

*Lipford v. City of Rochester*,
   2017 WL 4344633 (2017) .................................................................................................... 5

*Lucente v. County of Suffolk*,
   980 F.3d 284 (2d Cir. 2020) ................................................................................................. 1

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006) ................................................................................................. 2

*Miller v. Cnty. of Monroe*,
   2024 WL 2804435 (W.D.N.Y. May 31, 2024) ............................................................... 6, 10

*Miller v. United States ex rel. Miller*,
   110 F.4th 533 (2d Cir. 2024) .............................................................................................. 12

*Nieves v. Fahmy*,
   2016 WL 6804926 (E.D.N.Y. Nov. 16, 2016) ..................................................................... 5

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ................................................................................................1

*Pierre v. City of Rochester*,
    2018 WL 10072453 (W.D.N.Y. Sept. 7, 2018) ..................................................11

*Rasmussen v. City of New York*,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) .................................................................5

*Roe v. City of Waterbury*,
    542 F.3d 31 (2d Cir. 2008) ...................................................................................2

*Smith v. Town of Lewiston*,
    2020 WL 5237924 (W.D.N.Y. July 30, 2020) .....................................................5

*Triano v. Town of Harrison, NY*,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012) ................................................................10

*Vann v. City of Rochester*,
    2019 WL 2646616 (W.D.N.Y. June 27, 2019) ....................................................4

*Walker v. City of New York*,
    2014 WL 1259618 (S.D.N.Y. Mar. 18, 2014) ......................................................5

*White v. City of New York*,
    206 F. Supp. 3d 920 (S.D.N.Y. 2016) ..................................................................5

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 12

## STATE RULES

N.Y. Local R. 7 (a)(2)(C)........................................................................................................1

The County[1] submits this reply brief in further support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[2] Because Plaintiff's Complaint fails to allege a viable theory of municipal liability against the County, her Tenth and Sixteenth Causes of Action fail and must be dismissed.

## ARGUMENT

**POINT I:     PLAINTIFF'S SIXTEENTH CAUSE OF ACTION FOR *"RESPONDEAT SUPERIOR"*[3] FAILS TO STATE A CLAIM AGAINST THE COUNTY**

Plaintiff's argument that there is no basis to dismiss her Sixteenth Cause of Action, entitled "*Respondeat Superior*" "because [her] claims are grounded in well-established *Monell* theories – not vicarious liability" (*see* Dkt. 23 at p. 25), reflects a fundamental misunderstanding of municipal liability and does not credibly oppose the County's motion.

The Second Circuit and Supreme Court have long held that "a municipality cannot be made liable under § 1983 by application of the doctrine of *respondeat superior.*" *See Lucente v. County of Suffolk,* 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). As a result, Plaintiff's Sixteenth Cause of must be dismissed.

**POINT II:     PLAINTIFF'S *MONELL* CLAIM FAILS AS A MATTER OF LAW[4]**

Plaintiff's opposition argues three *Monell* theories in purported support of her Tenth Cause of Action: (i) policymaker participation and ratification, (ii) widespread custom or practice, and (iii) deliberate indifference for failure to supervise and discipline. Plaintiff's effort falls short, as

---

[1] Capitalized terms have the same meaning as those defined in the County's initial moving brief.
[2] The County respectfully seeks leave, *nunc pro tunc*, to exceed the page limitations imposed under Local Rule 7(a)(2)(C) by less than two (2) pages, necessitated in part by Plaintiff's reference to matters beyond her Complaint in her opposition brief.
[3] Plaintiff's argument that she "does not proceed under a theory of respondeat superior" ignores that her Complaint explicitly alleges otherwise. (*Compare* Dkt. 1 at p. 95 *with* Dkt. 23 at p. 25).
[4] Plaintiff's opposition asserts "[t]he County does not dispute Ms. Lynch's constitutional rights were violated." (*See* Dkt. 23 at p. 4). This statement demonstrates a misunderstanding of the posture of this case, but for the sake of clarification, the County disputes Plaintiff's allegations, though they are generally accepted as true for purposes of this motion only.

even accepting her allegations as true, they are insufficient to allege any viable *Monell* theory.

### A. Plaintiff does not allege a valid theory of policymaker participation or ratification.

Despite acknowledging the Complaint does not even identify Frank Sedita III, Plaintiff strains to support her theory of policymaker participation by citing that "[t]he Complaint alleges [he] . . . suppressed *Brady/Giglio* material and committed other constitutional violations at trial", and that he was elected District Attorney ten years later in 2008. (*See* Dkt. 23 at p. 10, n.5).

Setting aside Plaintiff's opposition confirms the Complaint does not sufficiently plead policymaker participation, the implication that the fact Sedita was eventually elected District Attorney in 2008[5] – a decade after Plaintiff's underlying conviction in 1998 – somehow equates to "policymaker participation" strains credulity. Contrary to Plaintiff's implication, this does not retroactively transform her claim into one amounting to direct infliction by a municipal policymaker. In the Second Circuit, an official has final authority "if his decisions, <u>at the time they are made</u>, for practical or legal reasons constitute the municipality's final decisions." *Roe v. City of Waterbury*, 542 F.3d 31, 38 (2d Cir. 2008) (emphasis added). Indisputably, Sedita was not the policymaker at the time of Plaintiff's 1998 conviction. As a result, to the extent Plaintiff's claim is premised on any alleged retroactive "direct infliction" by a municipal policymaker, it fails.

Plaintiff makes another specious argument to suggest ratification, based on an even greater temporal gap, and facts removed entirely from her 1998 conviction and controlling precedent.[6]

---

[5] Plaintiff's opposition takes a liberal approach to the concept of judicial notice, overlooking that the cases she cites, including *Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006) generally analyze that ability when assessing matters raised by *the defendant*. By contrast, Plaintiff controlled the allegations in her pleading, and the County objects to her effort to brief new allegations in opposition to the County's motion. *See In re Clarke-James*, 2025 WL 819868, at *4 (Bankr. E.D.N.Y. Mar. 13, 2025) ("Generally, allegations outside the complaint, including new allegations in a plaintiff's objection to a motion to dismiss cannot be considered by a court.").

[6] Plaintiff's post-conviction complaints are generally inconsistent and vague, but to the extent she claims they constitute a distinct constitutional violation, they fail to state a claim under Supreme

2

While her argument is difficult to follow, she complains that the District Attorney serving in or around 2020, John Flynn, refused to concede her allegations of prosecutorial misconduct relative to her underlying conviction.  (*See* Dkt. 23 at pp. 6-7).  She otherwise conflates the alleged wrongdoing at the time of her underlying conviction with an allegation that Flynn complimented those involved in the reinvestigation decades later.  (*See id.* at pp. 6-8).

The sole case Plaintiff cites, *Collins v. City of New York*, lends no support to her case.  The plaintiff in *Collins* complained that the policymaker, despite being on notice, took no disciplinary action against the defendant-prosecutor and instead continued to praise him after a grant of *habeas* relief.  *See Collins*, 923 F. Supp. 2d at 477.  The *Collins* court held that the plaintiff's allegations "regarding [the policymaker's] response—or lack thereof—to misconduct by [the ADA in his underlying prosecution] and other assistants make plausible his theory that [the policymaker] was so deliberately indifferent to the underhanded tactics that his subordinates employed as to effectively encourage them to do so."  *Id.* at 478.

By contrast, Plaintiff's allegations are limited to complaints that Flynn did not concede her allegations of prosecutorial misconduct when presented with them decades later and complimented his subordinates for their role in the reinvestigation beginning in or around 2020, which effort led to Plaintiff's successful vacatur.  Plaintiff does not allege, nor could she, that Flynn was on notice of, and retroactively "ratified", Sedita's alleged misconduct or that he failed to discipline him, as among other things, Sedita was never his subordinate, and Flynn did not assume office until 2017.

Plaintiff's ratification theory is not only entirely distinguishable from the sole case she relies upon but is otherwise incompatible with *Monell* because it ignores notice and causation.  *See Collins*, 923 F. Supp. 2d at 476-78 (citing *Amnesty Am.,* 361 F.3d at 126) (explaining ratification

---

Court precedent, as discussed below in Point II.D.

is predicated on showing "that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions").

Accordingly, because Plaintiff fails to plausibly allege facts suggestive of policymaker participation or ratification, her claim necessarily fails to the extent predicated upon either theory.

### B. **Plaintiff fails to allege a widespread custom or practice.**

Plaintiff concedes that to rely on comparator cases to demonstrate a municipal custom or practice "so widespread as to have the force of law", they must involve factually similar misconduct and result in adjudicated findings of misconduct. (*See* Dkt. 23, p. 14 (citing *Buari* at 398-99). Despite that concession, the comparators upon which Plaintiff relies fail to plausibly suggest such a practice for the reasons previously set forth in the County's initial brief.

In her effort to contend otherwise, Plaintiff identifies six "interrelated ECDA policies and practices" that she claims "formed a consistent prosecutorial approach to securing and maintaining convictions in violation of the Constitution", namely: (1) withholding *Brady* material; (2) suppressing favorable trial evidence, including recantations and contradictions; (3) ignoring fabricated or coerced evidence, including by police; (4) presenting and failing to correct false testimony and making misleading arguments;[7] (5) continuing to withhold exculpatory material post-trial; and (6) obstructing post-conviction relief through concealment and misrepresentation. (*See* Dkt. 23 at pp. 9-10).

But simply reciting the foregoing cannot and does not rebut or even address the authority cited by the County establishing as a matter of law that these alleged "policies and practices" are

---

[7] Plaintiff does not address, and therefore concedes, that none of the incidents relied upon in her Complaint involved misconduct during summations or at preliminary hearings. Accordingly, at a minimum, those corresponding portions of her *Monell* claim must be dismissed. (*See* Dkt. 18-1 at p. 8 (citing *Vann v. City of Rochester*, 2019 WL 2646616, at *7–8 (W.D.N.Y. June 27, 2019) (dismissing *Monell* claim where cited cases involved dissimilar conduct)).

4

entirely too vague to allege a widespread custom or practice under *Monell*. Regardless, these alleged "policies and practices," appear to generally fall into two time periods: (i) contemporaneous to her 1998 conviction (*see id.* at pp. 10-16) and (ii) post-conviction (*see id.* at pp. 16-18), and Plaintiff's showing is deficient under either timeframe.

### 1.     *Plaintiff's Alleged Policies and Practices Are Overly Broad*

Preliminarily, *Monell* claims premised upon broadly defined policies are fundamentally flawed and routinely end in dismissal.  *See, e.g., Lipford v. City of Rochester*, 2017 WL 4344633, at *7; *Smith v. Town of Lewiston*, 2020 WL 5237924, at *12 (W.D.N.Y. July 30, 2020).  Indeed, courts have cautioned this approach imposes upon the plaintiff "an almost impossible burden." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011); *see also White v. City of New York*, 206 F. Supp. 3d 920, 928 n.2 (S.D.N.Y. 2016) ("The broader the policy a plaintiff seeks to plead, the greater the factual allegations that are required to render it plausible.").

In this case, Plaintiff advances precisely the kind of vague and overly broad *Monell* theories courts reject,[8] namely generalized accusations of withholding evidence and ignoring and/or making use of fabricated evidence, untethered to any specific alleged custom, policy or practice. Plaintiff's alleged "interrelated policies and practices" do not identify what types of favorable evidence were allegedly withheld, in what contexts, or by what mechanism, and her suggestion that they are "interrelated" confirms her theory amounts to a generalized claim of prosecutorial misconduct, rather than to any specific custom, policy or practice.

This overarching point aside, which is sufficient to dismiss Plaintiff's claim outright, and

---

[8] Other examples of overly broad policies include: *Walker v. City of New York*, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) ("using excessive force after individuals are already in custody"); *White v. City of New York*, 206 F. Supp. 3d 920, 937 (S.D.N.Y. 2016) (policy "to abuse" transgender individuals); *Nieves v. Fahmy*, 2016 WL 6804926, at *6 (E.D.N.Y. Nov. 16, 2016) (excessive force, false arrest, and falsification of evidence).

otherwise contextually relevant to the analysis below, her opposition fails to defeat this motion.

> 2. *Plaintiff's Allegations of a Widespread Practice Contemporaneous to her 1998 Conviction are Numerically and Factually Deficient.*[9]

Plaintiff's claim of sweeping, systemic, and categorical misconduct relative to the contemporaneous period of her 1998 conviction is limited to an alleged showing of less than a handful of cases over four years: *Lorenzo*, *Pugh*, *Peters* and *Epps* ("The Four Comparators"). As confirmed in the County's initial moving brief, that showing is insufficient as a matter of law (*see* Dkt. 18-1 at pp. 14-17),[10] and Plaintiff cites no case that has held an average of one incident per year is sufficient to allege a widespread custom or practice.[11]

Regardless, because a widespread custom or practice based on other cases "must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case and result in an adjudication of liability" (*see Buari v. City of New York,* 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021), Plaintiff's showing is insufficient for reasons beyond sheer numbers.

> i. Incidents Must be Factually Similar.

While Plaintiff's opposition attempts to cast her claim as one sounding in prosecutorial misconduct generally, which is foreclosed under controlling precedent (*see* Point I(C)(i) *supra*),

---

[9] Plaintiff appears to concede the cases cited at paragraph 520 of her Complaint dating back decades from her 1998 conviction are irrelevant to this claim, as she references only *Lorenzo*, *Pugh*, *Peters* and *Epps* in her opposition on this point.

[10] Plaintiff's opposition is generally limited to an attempt to minimize the population of Erie County, which overlooks that *Buari* assesses the conduct of the District Attorney in Bronx County, in the early 2000s, at which time the population of Bronx County was comparable to Erie County's in 1998, and that the population of Monroe County, as was at issue in *Miller v. Cnty. of Monroe*, 2024 WL 2804435, at *6 (W.D.N.Y. May 31, 2024) is less than Erie County. In general, Plaintiff's characterization of Erie County is inaccurate, but more fundamentally, her opposition does not substantively address the County's arguments, and the showing required to withstand this motion.

[11] Plaintiff mistakenly cites to cases premised on a theory of deliberate indifference to support her single incident liability argument (*see* Dkt. 23 at n.11), but those cases, and Plaintiff's argument, are misplaced under a widespread practice or custom theory.

6

the violations she claims in her case relate to the alleged nondisclosure of fingerprint analysis, DNA exclusions, and third-party alibi evidence. (*See* Dkt. 1 ¶¶ 465(a)-(d)).  The Four Comparators involve entirely different fact patterns (*see* Dkt. 18-1 at pp. 6-8 (addressing the distinct allegations at issue among The Four Comparators, and citing, among other relevant authority, *Miller*, 2024 WL 2804435, at *6 (rejecting *Monell* claim where plaintiff cited a broad array of incidents, but "a varied range of prosecutorial misconduct [was] present in each case," and "the seven specific *Brady* violations . . . [were] not sufficiently 'factually similar' to Harrigan's misconduct" which dealt specifically with "disclosure of either the radio call recordings or the 'Find My iPhone' application")), and Plaintiff's suggestion that they are sufficiently similar to this case based on general allegations of prosecutorial misconduct and/or overturned convictions reflects a misunderstanding of *Monell*.  (Dkt. 23 at pp. 11-14).

Simply put, that other convictions were overturned does not create an inference of a policy and is necessarily irrelevant to evaluating factual similarity.  Plaintiff's attempt to analogize these purported comparator cases through an irrelevant, outcome determinative approach, rather than by citing incidents with alleged factual similarities is again demonstrative of the heart of the County's argument: Plaintiff simply does not have a viable *Monell* theory against the County.

ii. Incidents Must Result in an Adjudication of Liability.

As indicated above and in the County's prior brief, courts consistently reject the type of unproven allegations Plaintiff offers, and *Jackson v. Nassau Cnty.*, makes explicit reference to the lack of "adjudication of *Monell* liability", which is indisputably absent from any of The Four Comparators.  *See Jackson*, 552 F. Supp. 3d 350, 379 (E.D.N.Y. 2021) (stating "even if the lawsuits and complaints involved similar conduct to that alleged here, only two ended in adjudication of liability . . . and none resulted in adjudication of *Monell* liability", and concluding they could not

7

"support Plaintiff's allegation of a widespread *de facto* custom"); *see also* Dkt. 18-1 at pp. 11-12 (collecting cases). Aside from inaccurately claiming the adjudication requirement does not exist,[12] Plaintiff's opposition does not rebut the County's initial showing on this point.

In sum, without contemporaneous incidents comprised of factual similarity and sufficient numerosity, Plaintiff's *Monell* claim lacks the necessary foundation to proceed under a theory of a widespread custom or practice, warranting dismissal.

### 3. Plaintiff's Allegations of a Widespread Practice Relative to Alleged Post-Conviction Misconduct[13] are Fundamentally Flawed.

Plaintiff's attempt to advance a distinct "widespread" practice relative to alleged post-conviction misconduct also fails, citing three convictions occurring in 2004 (*Ortiz*) and 1977 (*Walker* and *Boyd*), and post-conviction measures spanning into this decade (*see* Dkt. 23 at pp. 16-18),[14] also fails. Plaintiff's post-conviction argument is even less developed than the foregoing and lacks factual details sufficient to allege a constitutional violation or a municipal custom or practice. Instead, her claim of a policy of "obstructing post-conviction relief" appears based on little to nothing more than the fact ECDA opposed vacatur of these convictions.

Plaintiff cites no authority to support this tenuous argument, she does not attempt to detail factual similarities of these purported comparator cases beyond the foregoing, she ignores that no finding of adjudication was made relative to any "post-conviction misconduct", and she makes no effort to connect the obvious temporal gaps among these incidents or otherwise set forth how these

---

[12] Plaintiff's opposition does not address the cases cited in the County's initial brief, or the fact that they confirm an adjudication of liability is relevant, beyond brief parentheticals suggesting these cases involved different facts (which ironically supports the County's argument immediately above). Plaintiff otherwise relies on cases analyzing *Monell* liability under theories other than widespread practice, and thus her arguments are generally misplaced, if advanced at all.

[13] This claim also fails as a threshold matter inasmuch as it rejects Supreme Court precedent as discussed immediately below in Point II.D.

[14] Plaintiff acknowledges the matters of *Boyd* and *Walker* are not alleged in her Complaint.

three incidents spanning a half century amount to a widespread practice.

In general, and similar to her attempt to analogize the incidents in the preceding section, the fact that a few convictions over the course of fifty years were successfully challenged does not *ipso facto* constitute factual similarity or a widespread practice under *Monell*. Instead, to rely on these cases, Plaintiff must (but has failed to) allege temporal proximity, sufficient numerosity and factual similarity to the alleged constitutional challenge she claims in this case. Given that reality, Plaintiff's *Monell* claim premised on a widespread practice for post-conviction misconduct fails.

### C. **Plaintiff Fails to Allege Deliberate Indifference for Failure to Discipline/Supervise.**[15]

Plaintiff's final theory, suggestive of a claim of deliberate indifference for failure to supervise and discipline, relies on erroneous interpretations of controlling precedent.

Plaintiff argues this theory is sufficiently pleaded because the "Complaint plausibly alleges that senior officials within the ECDA, as well as Erie County policymakers, failed to supervise and discipline prosecutors despite repeated notice of unconstitutional conduct," vaguely citing to 12 paragraphs therein. (*See* Dkt. 23 at p. 23 (citing Dkt. 1 at ¶¶ 479-485, 540, 543, 547, 553, 560)). However, review of these paragraphs makes clear Plaintiff has failed to allege a deliberate indifference claim against the County.

Rather than setting forth any relevant facts to support this claim, five of those paragraphs (*see* Dkt. 1 at ¶¶ 540, 543, 547, 553, 560) contain allegations solely against the Amherst Defendants, and the remaining seven are boilerplate, conclusory allegations such as alleging the District Attorney "kept no record of misconduct", "neither investigated nor disciplined prosecutors", and "did not train prosecutors," unsupported by any factual details. (*See generally*

---

[15] Plaintiff complains the County analyzed her claims for deliberate indifference collectively yet proceeds with a collective analysis in opposition. (*See* Dkt. 23 at pp. 18-25). Regardless, they fail, and at a minimum, she does not address, and thus concedes, her lack of a failure to train claim.

*id.* at ¶¶ 479-485). As such, Plaintiff's opposition all but concedes this theory is insufficiently pleaded. *See Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 541 (S.D.N.Y. 2012) ("Because Plaintiff has done no more than make conclusory assertions, he has not adequately alleged that the Town's training policies caused Plaintiff's injuries, thus providing an independent basis to dismiss this claim."); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

Even had Plaintiff argued she has sufficiently alleged a deliberate indifference claim, to support such a claim, and as set forth in the County's earlier brief, evidence must predate the alleged constitutional violation, and share temporal proximity and factual similarities. (*See* Dkt. 18-1 at pp. 17-21). Plaintiff's argument that post-conviction incidents are relevant to a deliberate indifference claim is foreclosed by the case she cites at page 20 of her brief, *Bell v. City of New York*, 2023 WL 11916696, at *17 (E.D.N.Y. Sept. 1, 2023),[16] which confirms a plaintiff must sufficiently allege "a causal connection" between the alleged failure to supervise/discipline and the alleged constitutional violation resulting in her conviction. Indisputably, Plaintiff cannot plausibly allege that connection by referencing incidents post-dating her conviction. Plaintiff's opposition does not disturb the County's initial argument on this point, and her allegations fail to state a claim for deliberate indifference.[17]

---

[16] Indeed, *Bell* generally supports the County's argument, as the factual details alleged by the plaintiff pre-dating his 1999 conviction are in stark contrast to those alleged here: (i) a survey compiled by the QDAO of at least 39 instances of misconduct in the "few years" prior; and (ii) a prosecutor who was involved in multiple convictions that were overturned, admonished by the grievance committee, yet received positive evaluations and was promoted. *See id.* at *12-14.

[17] Plaintiff's vague references to allegations contained in court filings in the cases of *Walker* and *Boyd*, which involved distinct allegations of prosecutorial misconduct, distinct alleged policies and practices existing at the time of their 1977 convictions, and a timeframe removed from Plaintiff's conviction by more than 20 years, are misplaced but nevertheless demonstrative of her attempt to

10

Even accepting Plaintiff's argument that temporally removed and/or post-conviction incidents may at times be relevant to this analysis (which the County does not concede), her reference to the "exonerations" of Peters (2008), Ortiz (2015), Epps (2017), Walker (2021) and Boyd (2021)[18] and suggestion that the same were "delayed because of ECDA's continued suppression of Brady material, false representations to the court, or refusal to acknowledge innocence" (*see* Dkt. 23 at p. 23) is misplaced for at least two related reasons.

First, Plaintiff's grievance of alleged post-conviction misconduct, and any policies or practices she claims are the moving force behind the same, is demonstratively distinct from alleged misconduct at the trial level. She cannot string together these distinct claims to suggest a pattern that existed prior to, contemporaneously, and post-conviction, and her opposition instead establishes that they amount to distinct alleged constitutional violations, at distinct points in time.

Relatedly, and even more fundamentally, her distinct complaint of post-conviction obstruction, which her opposition suggests amounts to a complaint the "process took longer than it would have in a more-perfect world" involves an analysis entirely distinct from *Brady*, and which the County disputes can even give rise to a Section 1983 due process claim. *See Pierre v. City of Rochester*, 2018 WL 10072453, at *19 (W.D.N.Y. Sept. 7, 2018) (explaining "*Osborne* established that there is no freestanding substantive due process right to *Brady*-like disclosure post-conviction") (citing *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (explaining those seeking postconviction relief have "only a limited interest," that "*Brady* is the wrong framework," and that "federal courts may upset a State's postconviction relief procedures

---

analogize any *Brady* or summation misconduct claim, whenever occurring, to the specific violations she claims in this case. Reserving that these incidents are not pleaded in her complaint, even if they were, they cannot meet the requirements to render them relevant under *Monell*.

[18] Plaintiff's representation that these individuals were each exonerated is false, but even if true, her claim still fails.

only if they are fundamentally inadequate to vindicate the substantive rights provided")).

## CONCLUSION

In sum, Plaintiff's shifting and conflated theories fail to defeat the County's initial showing, and Plaintiff's opposition only further confirms the tenuous and unfounded nature of her claim. As a result, her claims against the County should be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(6), together with any such other and further relief the Court deems just and proper.[19]

Dated: June 6, 2025
      Buffalo, New York

                                                    **LIPPES MATHIAS LLP**

                                                    *s/ Kirstie A. Means*
                                                    Jennifer C. Persico, Esq.
                                                    Brian C. Mahoney, Esq.
                                                    Kirstie A. Means, Esq.
                                                   *Attorneys for Defendant, County of Erie*
                                                   50 Fountain Plaza, Suite 1700
                                                   Buffalo, New York 14202
                                                   (716) 853-5100
                                                   jpersico@lippes.com
                                                   bmahoney@lippes.com
                                                   kmeans@lippes.com

---

[19] The County opposes Plaintiff's closing request "for an opportunity to amend her Complaint to amplify the allegations" (Dkt. 23 at p. 25) because her opposition confirms any such amendment would be futile and because she "failed to submit proposed amendments" with her opposition or otherwise "specify . . . how amendment would cure the pleading deficiencies." *See Miller v. United States ex rel. Miller*, 110 F.4th 533, 550–51 (2d Cir. 2024) (internal citation omitted).