UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RENAY LYNCH,

        Plaintiff,

    v.

THE TOWN OF AMHERST et al.,

        Defendants.
_____

25-CV-75-LJV-JJM
DECISION & ORDER

      This case stems from the 1998 wrongful conviction of the plaintiff, Renay Lynch, for the 1995 killing of Louise Cicelsky.  *See* Docket Item 1 ¶¶ 1, 231.  Lynch "spent over twenty-seven years wrongfully imprisoned or on parole" before her conviction was vacated in 2024.  *See id.* ¶¶ 1, 368.  She now brings various claims against the Town of Amherst ("Amherst"), whose police department investigated her case; Amherst Police Department ("APD") Captain Michael J. Melton; APD Lieutenant Joseph LaCorte; APD Detective Raymond Klimczak; and the County of Erie ("Erie County"), whose district attorney's office prosecuted the case.  *See id.* ¶¶ 30-34.  Lynch raises federal claims under 42 U.S.C. § 1983, including claims against Amherst and Erie County under *Monell v. Department of Social Services,* 436 U.S. 658 (1978); she also raises claims under state law, including claims for malicious prosecution and negligence.  *See id.* ¶¶ 377-589.

      Before this Court are partial motions to dismiss filed by Amherst, Docket Item 14, and Erie County, Docket Item 18.  Both municipalities move to dismiss the *Monell* claims against them; Amherst moves to dismiss the state law claims against it due to

Lynch's alleged failure to properly serve a notice of claim; and Erie County moves to dismiss any claims against it based on respondeat superior. *See* Docket Items 14-3 and 18-1 (memoranda of law).

After careful consideration, the Court denies Amherst's motion and grants in part and denies in part Erie County's motion. More specifically, the Court grants Erie County's motion as to the sixteenth cause of action based on respondeat superior but otherwise denies the motion.

## **LEGAL PRINCIPLES**

### I.     **MOTION TO DISMISS UNDER RULE 12(B)(6)**

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### II.    ***MONELL* LIABILITY**

Under *Monell,* municipalities are subject to section 1983 liability based on their employees' conduct only when the plaintiff's injury is "inflicted" by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy." *See* 436 U.S. at 694; *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992). To state a *Monell* claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

A section "1983 plaintiff need not prove that his injury was caused by an explicitly stated municipal rule or regulation." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018). "Absent an express municipal policy, [a] plaintiff may prove a municipal custom, policy[,] or practice in several ways." *Ramos v. County of Suffolk*, 2009 WL 10708571, at *2 (E.D.N.Y. Sep. 8, 2009). For instance, a plaintiff might show a "policymaker's acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (citation and internal quotation marks omitted). Alternatively, a plaintiff can show that the municipality "fail[ed] to act" and in doing so "exhibited deliberate indifference to constitutional deprivations caused by subordinates." *See Outlaw*, 884 F.3d at 372-73 (alteration and citation omitted). "[T]o proceed on a deliberate[ ]indifference theory, a plaintiff must first establish 'that the need for more or better supervision to protect against constitutional violations was obvious.'" *Id.* at 373 (second set of internal quotation marks omitted) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)).

## DISCUSSION[1]

I.  **TOWN OF AMHERST**

A.  ***Monell* Claims**

Lynch alleges that Amherst was deliberately indifferent to her constitutional rights by failing to train and supervise its police officers with respect to (1) "maintaining, analyzing, and turning over forensic evidence," and (2) using "proper interrogation tactics" so as to avoid eliciting "false confessions." *See* Docket Item 22 at 12-18 (capitalization omitted).[2]  Among other things, she says that because its officers were not trained and supervised properly, the APD failed to turn over fingerprint evidence in her case until 25 years after her conviction. *See id.* at 12.  In fact, she alleges that defendant Melton—an APD captain—testified that there were no "usable" prints from the victim's home when, in fact, there were prints that were exculpatory to Lynch. *See id.* at 8.  Along the same lines, Lynch says that lack of training and supervision resulted in the APD's obtaining a false confession from her by exploiting her vulnerable state while she was in withdrawal from drug addiction. *See id.* at 7, 15-18.

Under most circumstances, establishing a claim based on the failure to train or supervise requires the plaintiff to plead "[a] pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  But "[i]n [*City of Canton v. Harris*, 489 U.S. 378 (1989)], the [Supreme] Court left open the possibility that, in a narrow range of

---

[1] The Court assumes the reader's familiarity with the allegations in the complaint, Docket Item 1, and will refer only to the facts necessary to explain its decision.

[2] Page numbers in docket citations refer to ECF pagination.

circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (citation omitted). For example, "[t]he Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* (citing *Canton*, 489 U.S. at 390 n.10). "Given the known frequency with which police attempt to arrest fleeing felons," the Court explained, constitutional violations would be a "highly predictable consequence" of this failure to train. *Id.* (citation omitted).

For both issues—the failure to turn over forensic evidence and the use of improper interrogation techniques—Lynch proceeds on a "single-incident" theory. *See* Docket Item 22 at 13 (quoting *Connick*, 563 U.S. at 63). And in its motion to dismiss, Amherst is correct that the exception for a *Monell* claim based on a "single[ ]incident" is a narrow one. *See* Docket Item 24 at 7. But Lynch has satisfied that exception here— at least at the pleading stage. Constitutional violations of the sort alleged in this case are indeed a "highly predictable consequence" of the failure to train or supervise officers with respect to both turning over exculpatory forensic evidence, including fingerprint evidence, and not using coercive tactics to obtain a false confession. *See, e.g.*, *Prevost v. City of New York*, 2014 WL 6907560, at *7 (S.D.N.Y. Dec. 9, 2014) (denying defendant's motion to dismiss based on single-incident theory where police officers allegedly received no training on the role exculpatory evidence plays in determining probable cause); *Cristini v. City of Warren*, 2012 WL 5508369, at *12-13 (E.D. Mich. Nov. 14, 2012) (denying summary judgment on single-incident theory where police officers allegedly received no training as to handling exculpatory evidence).

5

Lynch therefore has plausibly alleged a viable claim against Amherst. Whether the evidence will support her allegations is a question for another day. But for now, Lynch's *Monell* claims against Amherst can proceed.

### B. State Law Claims

Despite the fact that it already examined Lynch at a section 50-h hearing, Amherst now claims that Lynch's service of her notice of claim was defective because she served the incorrect Amherst official. *See* Docket Item 14-3 at 24-26. More specifically, Amherst says that Lynch served the Amherst Comptroller—not the Amherst "supervisor or clerk" or on an "attorney regularly engaged in representing [Amherst]" as is required under the New York General Municipal Law. *See id.* (quoting N.Y. Gen. Mun. Law § 50-e(3)(a)). But even if the Amherst Comptroller does not meet the definition of "supervisor or clerk" as Amherst argues, that technical error does not require dismissal.[3]

In fact, state law provides for the very situation presented here. As Lynch notes, section 50-e(3)(c) provides that

> [i]f the notice is served within the period specified by this section, but in a manner not in compliance with the provisions of this subdivision, the service shall be valid if the public corporation against which the claim is made demands that the claimant or any other person interested in the claim be examined in regard to it, or if the notice is actually received by a proper person within the time specified by this section, and the public corporation fail[s] to return the notice, specifying the defect in the manner of service, within thirty days after the notice is received.

---

[3] With remarkable chutzpah, Amherst presses this technical error while at the same time asking this Court to forgive its default and the late filing of its dispositive motion "in the interests of fairness and judicial efficiency." *See* Docket Item 24 at 18-19. The Court nevertheless exercises its discretion to accept the late filing of the motion and to forgive Amherst's default, especially because the law forgives Lynch's service error.

N.Y. Gen. Mun. Law § 50-e(3)(c).  Lynch served the notice "within the period specified by this section, but in a manner not in compliance with the provisions of this subdivision":  She served a town official, but not one that the statute authorized to be served.  See Docket Item 14-3 at 24.  Amherst then received the notice and "demand[ed] that the claimant . . . be examined in regard to it"; indeed, Lynch actually submitted to an examination.  See id. at 26.  And Amherst does not say that it "return[ed] the notice, specifying the defect in the manner of service, within thirty days," see id. at 24-26; Docket Item 24 at 16-18, so this Court assumes that did not happen.  Section 50-e(3)(c) therefore saves Lynch's claim.  Cf. Wekenmann v. Biegasiewicz, 2024 WL 1947898, at *10-11 (W.D.N.Y. Mar. 29, 2024) (Crawford, J.) (finding that service was valid against Erie County even though notice of claim was addressed the Sheriff's Office instead of the County), aff'd, 2025 WL 831201 (2d Cir. Mar. 17, 2025) (summary order).

Amherst argues that section 50-e(3)(c) does not apply because Lynch served the incorrect person.  See Docket Item 14-3 at 25.  But most of the cases Amherst cites deal with serving the incorrect party, not the incorrect agent of the correct party.  For example, in two cases on which Amherst relies, the Comptroller of the City of New York was served, but the proper recipient was the New York City Health and Hospitals Corporation, an entity entirely different than the City of New York.  See Scantlebury v. N.Y.C. Health & Hosps. Corp., 4 N.Y.3d 606, 613, 830 N.E.2d 292, 297 (2005); Dreckette v. N.Y.C. Health & Hosps. Corp., 45 Misc. 3d 752, 754, 994 N.Y.S.2d 813, 814 (Sup. Ct. 2014).  Here, by contrast, the Amherst Comptroller—not an official of some other entity—was served.  See Docket Item 14-3 at 24.

Amherst also cites *Lowrance v. N.Y.C. Hous. Auth.*, 2022 N.Y. Misc. LEXIS 25702 (Sup. Ct. Feb. 16, 2022), for the proposition that "service on the wrong person (even if the right entity) constitutes a 'jurisdictional defect' that cannot be cured by the savings provision." Docket Item 24 at 17. But that is not what the court in *Lowrance* held. There, "the notice of claim was left with an unidentified security guard at an office building where [the d]efendant's office [wa]s located, after the security guard allegedly told the server that she could not effectuate service on [the d]efendant since the office was closed." *Lowrance*, 2022 N.Y. Misc. LEXIS 25702, at *7. What is more, "[t]he associate who attempted service did not . . . allege that the security guard was an employee of [the d]efendant," the building had "numerous tenants[,] and the lobby security guard [wa]s retained by the property owner." *Id.* at *3. In other words, the plaintiff served a security guard employed by the building where the defendant had its office, not an employee of the defendant. The court found that "[a]t best, this constituted attempted service of the notice of claim." *Id.* at *6. And because the plaintiff did not serve an official of the defendant until after the 90-day period had elapsed, the plaintiff was not eligible for the savings cause of section 50-e(3)(c). *See id.* at *7-8. That is entirely different than the situation here where the Lynch timely served the Amherst Comptroller, employed by, and a high-ranking official of, the defendant.

In sum, the Court finds that under section 50-e(3)(c), the notice was "served within the period specified by [that section], but in a manner not in compliance with the provisions of [that] subdivision." *See* N.Y. Gen. Mun. Law § 50-e(3)(c). Lynch's state law claims against Amherst therefore may proceed as well.

8

## II.  ERIE COUNTY

### A.  *Monell* Claims

Lynch's claims against Erie County involve allegations of *Brady* violations by the Erie County District Attorney's Office ("ECDA").  *See* Docket Item 1 ¶¶ 438-532.  More specifically, Lynch says that ECDA attorneys, and Assistant District Attorney Frank Sedita III in particular, withheld from Lynch and her attorneys favorable fingerprint evidence as well as evidence that the man who was alleged to have killed the victim in consort with Lynch was not in the state on the day of the murder.  *See* Docket Item 23 at 10.

Erie County argues that Lynch "presents no plausible allegations of a formal policy officially endorsed by the municipality, nor does she allege actions or decisions taken by a municipal official responsible for establishing the municipal policies that caused the particular deprivation in question."  Docket Item 18-1 at 10 (internal quotation marks omitted).  In response, Lynch says that she has stated a *Monell* claim because Sedita later became the Erie County District Attorney—and therefore a policymaker—and he then violated his ongoing *Brady* obligations by continuing to withhold the favorable evidence.  *See* Docket Item 23 at 10.  She also identifies four other individuals wrongly convicted in prosecutions by the ECDA from 1994 to 1998—Brian Scott Lorenzo, James Pugh, Lynn Peters, and Cory Epps—and she says that those wrongful convictions establish a pattern and practice.  *See id.* at 15-16.

This Court agrees with Lynch that her allegations are sufficient for her *Monell* claims to proceed against Erie County.  The four other cases during the same time period with similar alleged *Brady* violations, *see* Docket Item 1 ¶¶ 493-515, are more than sufficient to establish a pattern at the motion to dismiss stage, *see Reynolds v.*

9

*Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."). And the allegations regarding Sedita's continuing to withhold *Brady* material after becoming a policymaker are likewise sufficient at the pleading stage. Whether Lynch's theories will pan out is again a question for down the road, and these may well be contentious issues at summary judgment. But for now, the *Monell* claims against Erie County may proceed.

### B.      Respondeat Superior Claims

Erie County also moves to dismiss Lynch's sixteenth cause of action for respondeat superior. Docket Item 18-1 at 27; *see* Docket Item 1 ¶¶ 587-89. In response, Lynch says that she "does not proceed under a theory of respondeat superior" against Erie County. Docket Item 23 at 30 (capitalization and bold omitted). And although she then says that Erie County's "argument provides no basis for dismissal of the [s]ixteenth [c]ause of [a]ction," she does not explain why she should be able to maintain a respondeat superior cause of action against Erie County when she has conceded she is not proceeding on that theory with respect to that defendant.[4]  *See id.*

Moreover, although Lynch lists Erie County as a defendant in the sixteenth cause of action, the specific allegations deal only with Amherst:

---

[4] Perhaps Lynch is arguing that the sixteenth cause of action remains viable against Amherst. If so, she is correct. The Court dismisses the sixteenth cause of action only insofar as it purports to raise a claim against Erie County.

10

> 588. At all times relevant to this Complaint, Defendant Detectives and the Amherst Police Department Club, Inc, (the "Club") acted as agents of the Town of Amherst, in furtherance of the business, including law enforcement functions, of the Town of Amherst, and within the scope of their employment or agency with the Town of Amherst.
>
> 589. The conduct by which the Defendant Detectives committed the torts of malicious prosecution, intentional, reckless, or negligent infliction of emotional distress, and negligence was not undertaken for the Defendant Detectives' personal motives, but rather was undertaken while the Police Defendants were on duty, carrying out their routine investigative functions as detectives and police officers.

Docket Item 1 ¶¶ 588-89.

Thus, this Court sees no basis for Lynch to proceed on her sixteenth cause of action against Erie County. Erie County's motion to dismiss therefore is granted as to that cause of action.

## **CONCLUSION**

For all those reasons, Amherst's partial motion to dismiss, Docket Item 14, is DENIED, and Erie County's partial motion to dismiss, Docket Item 18, is GRANTED as to the sixteenth cause of action against Erie County but is otherwise DENIED.

SO ORDERED.

Dated:  February 20, 2026
          Buffalo, New York

                                       */s/ Lawrence J. Vilardo*
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE