**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

RENAY LYNCH,

                                  Plaintiff

          v.

The COUNTY OF ERIE, et al.,

                               Defendants.

**Case No. 25-cv-75 (LJV)(JJM)**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**ERIE COUNTY'S MOTION FOR RECONSIDERATION**

---

FISHER & BYRIALSEN PLLC
99 Park Avenue, PH/26th Floor
New York, New York 10016
(303) 256-6345

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

NEWIRTH LINEHAN PLLC
99 Park Avenue, PH
New York, NY 10016
(917) 936-5989

*Attorneys for Plaintiff*

## INTRODUCTION

Erie County seeks reconsideration and/or clarification of the Court's February 20, 2026, Decision and Order (Dkt. No. 45) denying the County's motion to dismiss Ms. Lynch's *Monell* claim (the "Decision"). The motion should be denied in its entirety. Reconsideration is an extraordinary remedy, available only where the movant identifies controlling decisions or data that the court overlooked or clear error. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Clarification is available only when the moving party identifies an ambiguity, and may only be used to clarify, and not alter, the decision. Erie County identifies nothing of the kind.

Instead, the County relitigates the same arguments this Court already considered and rejected—both in the parties' briefing and at oral argument on September 26, 2025. *See* Tr. of Oral Argument, attached hereto as **Exhibit A**. The County's two principal contentions—that *District Attorney's Office v. Osborne*, 557 U.S. 52 (2009) forecloses Ms. Lynch's claims, and that the direct policymaker involvement of District Attorney Frank Sedita and District Attorney John Flynn cannot give rise to *Monell* liability. Both were raised by the County below, argued at length before this Court, and rejected in the Decision. The County cites no intervening change in law, no facts the Court overlooked, no clear error, and no ambiguity in the decision. It simply disagrees with the result. Moreover, the motion ignores that Ms. Lynch's *Monell* claim must proceed in light of the Court's holding that Ms. Lynch sufficiently pled a pattern of *Brady* violations for *Monell* purposes. The County's motion for clarification is similarly a brazen attempt to relitigate its motion to dismiss and narrow the Court's decision. The County's motion for reconsideration and motion for clarification should be denied.

1

I.    **THE COUNTY DOES NOT SATISFY THE STRICT STANDARD REQUIRED FOR RECONSIDERATION**

A.    **The Applicable Legal Standard**

A party seeking reconsideration bears "a heavy burden." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The standard is strict: reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Allen v. United Student Aid Funds, Inc.*, 2019 WL 4686529, at *2 (S.D.N.Y. 2019). *Accord Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The movant must "point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

Reconsideration is available only where the movant shows (1) an intervening change of controlling law, (2) newly available evidence, or (3) a need to correct a "clear error or prevent manifest injustice." *Id.* A party may not simply "regurgitat[e] the arguments that [the] Court previously rejected," *Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 4360775, at *2 (S.D.N.Y. 2018) (Rakoff, J.), advance new arguments that could have been raised earlier, *Thomas v. Shiloh Indus., Inc.*, 2017 WL 2937620, at *2 (S.D.N.Y. 2017), or dispute the court's assessment of the facts and legal analysis, *see R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512 (S.D.N.Y. 2009).

B.    **The Motion Must Be Denied Because It Identifies No Change of Controlling Law, Newly Available Evidence, or Clear Error**

The County does not allege an "intervening change in the controlling law," provide any "new evidence not previously available," or claim "clear error" in the Decision. *See generally* Cty. Mot. for Reconsid. (Dkt. No. 59-1). Its motion must thus be denied.

Every argument in the County's motion was raised in its original briefing and argued at length at the September 26, 2025, hearing. The County's *Osborne* argument was briefed by the

2

County below, directly engaged by the Court at oral argument, and rejected in its decision. *See* Def. Reply Br. (Dkt. No. 25) at 11-12; Exh. A at 21-28; and Dkt. No. 45 at 9-10. So too the County's arguments regarding direct policymaker involvement of Sedita and ratification by Flynn. *See* Dkt. No. 25 at 2-3; Exh. A at 23-35; at Dkt. 45 at 9. None of these arguments is new, and none was overlooked by the Court. Each was considered and rejected. The County's motion is, in substance, a request to relitigate issues already decided—precisely what is prohibited on a motion for reconsideration. *See Shrader*, 70 F.3d at 257.

      **C.**      **The Motion Must Be Denied Because *Osborne* Does Not Apply To *Brady* Claims Based On The Continuing Suppression of Favorable Evidence Beginning Pre-Trial and Continuing Throughout Post-Conviction Proceedings**

The County argues that Ms. Lynch's *Monell* claims arising from the misconduct of the Erie County District Attorney are precluded by *Dist. Attorney's Off. for Third Jud. Dist. v Osborne,* 557 U.S. 52, 69 (2009) and *Pierre v. City of Rochester,* 2018 U.S. Dist. LEXIS 154879 (W.D.N.Y. Sept. 7, 2018). *See* Dkt. No. 59-1 at 5. *Accord* Dkt. No. 25 at 11-12. At oral argument on September 26, 2025, the Court engaged the County on these very arguments. *See* Ex. A at 21-28. These arguments were considered and rejected by the Court, which correctly found that Ms. Lynch's allegations of a pattern of *Brady* violations, including as evidenced by Sedita's conduct once elected District Attorney, establish that the County acquiesced in or tacitly authorized misconduct. *See* Dkt. No. 45 at 9-10.

The County's reliance on *Osborne* (and *Pierre*) is misplaced. *Osborne* addressed a narrow question: whether a convicted person has a freestanding substantive due process right to post-conviction access to the state's evidence for DNA testing; its holding thus applies to *Brady* material created or obtained *after* trial. *Id.* at 72. Where, as here, a "*Brady* claim involves nondisclosure of evidence in existence at the time of trial, *Osborne* does not apply." *Collins v. City of New York*,

923 F. Supp. 2d 462, 474 (E.D.N.Y. 2013); *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) ("For evidence known to the state at the time of the trial, the duty to disclose extends throughout the legal proceedings that may affect either guilt or punishment, including post-conviction proceedings. Put differently, the taint on the trial that took place continues throughout the proceedings, and thus the duty to disclose and allow correction of that taint continues.")

Tellingly, every case relied on by the County in support of this argument involves exculpatory evidence created or obtained by the prosecution post-conviction. Not one involves the facts present here: *Brady* material suppressed pre-trial that continued throughout post-conviction proceedings. *See Imbler v. Pachtman*, 424 U.S. 409 (1976) (new evidence discovered post-conviction corroborating defendant's alibi and undermining credibility of key prosecution witness); *Seri v. Bochicchio*, 374 Fed. Appx. 114, 117 (2d Cir. 2010) (exculpatory fingerprint evidence discovered post-conviction); *Pierre*, 2018 U.S. Dist. LEXIS 154879 (post-conviction evidence pointing to third party as real perpetrator); *Peoples v. Margulis*, 2023 U.S. Dist. LEXIS 197949 (E.D.N.Y. Nov. 3, 2023) (post-conviction evidence potentially bearing on validity of the conviction); *Ermichine v. United States*, 2011 WL 1842951 (S.D.N.Y. May 12, 2011) (post-conviction discovery of purportedly exculpatory statements made post-conviction).

These cases, like *Osborne*, do not apply here, where Ms. Lynch's claims rest squarely on evidence that existed at the time of her 1998 trial that was suppressed by the prosecution, including Walker's absence from the state at the time of the crime, the prosecution's knowing presentation of false testimony, and its failure to correct that testimony—for example, LaCorte's false explanation of why Walker had not been charged. The ECDA's continued suppression of that material through Ms. Lynch's post-conviction proceedings does not transform her claim into a "post-conviction *Brady* claim" that *Osborne* forecloses. It means only that the violation—and the

4

duty to disclose—was ongoing, and is relevant to the *Monell* analysis. *Collins*, 923 F. Supp.2d at 474 ("*Brady* itself refutes the [] defendants' claim that the duty it imposes ends with the trial.")

Because *Osborne* and *Pierre* address different legal questions than those presented here, and because these cases and arguments were raised and considered by the Court on the motion to dismiss, the County has not identified any "controlling decision" the Court overlooked. And because the Court correctly found that these cases are not controlling on the distinguishable facts of this case, the County has identified no "clear error." There is thus no basis for reconsideration.

> **D.      The Motion Must Be Denied Because the Direct Policymaker Involvement of Sedita and Flynn Can Form the Basis of a *Monell* Claim**

The County asserts that the misconduct of Sedita and Flynn, final policymakers for the County once elected to District Attorney, cannot form the basis of a *Monell* claim. These arguments were previously raised by Defendant and rejected by the Court and must be again denied. *See, e.g.,* Dkt. No. 25 at 2-4.

> **1.      Sedita's Continuing Misconduct After His Election As District Attorney Can Form the Basis of a *Monell* Claim**

As to Sedita, the County misrepresents Plaintiff's position. Plaintiff does not argue that Sedita's later election as District Attorney "retroactively converts" his earlier misconduct into municipal action. *See* Dkt. No. 59-1 at 5-6. Rather, Plaintiff argues—and the Court agreed—that once Sedita became final policymaker as District Attorney, his continued post-conviction suppression of the *Brady* material he personally suppressed both during trial and throughout Ms. Lynch's post-conviction proceedings constitutes a violation of Lynch's ongoing constitutional right to disclosure of *Brady* material suppressed during her trial, and is additionally (1) proof of the County's widespread policies and practices, (2) the County's failure to supervise and discipline and (3) its deliberate indifference to the violations of criminal defendants' constitutional rights. *See* Pl. Opp. to Def. Mot. to Dismiss (Dkt. No. 23) at 5, 8-9, 16-21, 23-25. The Court engaged with

this theory at length during oral argument, posing various hypotheticals to the County and recognizing that the conduct alleged here could reflect widespread policies of the District Attorney's Office and its deliberate indifference. *See* Exh. A at 23-28.

The Decision and Order reflects this analysis. The Court found that "allegations regarding Sedita's continuing to withhold *Brady* material after becoming a policymaker are likewise sufficient at the pleading stage." Dkt. No. 45 at 10. This is not a theory of retroactive conversion but rather direct policymaker participation in a constitutional violation—precisely the theory *Monell* was designed to reach.

The County's reliance on *Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) is misplaced. In *Roe*, the Second Circuit held that a mayor's sexual abuse of minors could not be attributed to the municipality under *Monell* because the mayor's conduct was "purely personal" and wholly outside his official policymaking capacity. *Id.* at 38, 42. The court assessed whether the official was acting as a policymaker "at the time" the relevant decisions were made. *Id.* at 38.

*Roe* supports Ms. Lynch's claim, not the County's. The operative question under *Roe* is whether the official was exercising policymaking authority "at the time" of the challenged conduct. Here, the challenged conduct is Sedita's continued suppression of *Brady* material during his tenure as District Attorney—conduct that falls squarely within his policymaking authority over prosecutorial disclosure obligations. Unlike the mayor in *Roe*, whose criminal acts bore no relation to his official functions, Sedita's decisions about whether to disclose exculpatory evidence were the quintessential exercise of his authority as the County's chief prosecutor.

Relatedly, the County's arguments concerning the appropriate scope of discovery are not properly before the Court on a motion for reconsideration of a pleading-stage ruling. *See* Dkt. No. 59-1 at 5-6 (County acknowledging proper avenues for resolving discovery disputes). The Court's

Decision and Order addressed whether Ms. Lynch stated a claim; it did not address discovery. If the County believes Plaintiff's discovery requests are overbroad, a motion to reconsider a ruling on the pleadings is not the vehicle to address that issue.

### 2. Flynn's Conduct As Final Policymaker For the County Can Form The Basis Of a *Monell* Claim

As to DA Flynn, The County again misstates Plaintiff's *Monell* arguments. First, as with DA Sedita, DA Flynn's misconduct during the post-conviction period is proof of (1) the County's widespread policies and practices, (2) the County's failure to supervise and discipline, and (3) its deliberate indifference to the violations of criminal defendants' constitutional rights. Dkt. No. 23 at 6-9, 16-21, 23-25. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) ("The means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing. The operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather than mere negligence.")

The allegations regarding Flynn (and Sedita) go to a distinct theory of *Monell* liability: that the ECDA, through its successive policymakers, maintained a policy or practice of suppressing *Brady* material and refusing to acknowledge or remedy past violations. *Id.* Further, Flynn's public defense of the trial prosecutor's conduct and his decision to require that all proof of that misconduct be hidden from the Court and the public reflect "a 'conscious choice' rather than mere negligence." *Amnesty* at 128. It is also relevant to whether the ECDA's pattern of *Brady* violations reflected a persistent custom or deliberate indifference to constitutional rights, rather than the isolated acts of individual prosecutors. *Id.* Evidence of a municipal custom or policy of tolerating constitutional violations is not limited to the tenure of any single policymaker; rather, the relevant inquiry is whether *the municipality*, through its officials, maintained a pattern of deliberate indifference to the known risk of constitutional violations. At the more demanding summary judgment stage in

7

*Boyd v. City of Buffalo*, Judge Vacca found evidence that the elected District Attorney and multiple line prosecutors shared a legally incorrect view of their *Brady* obligations, as well as judicial decisions reflecting the same, sufficient to sustain a *Monell* claim against Erie County. 2025 U.S. Dist. LEXIS 7187, *42-*47 (Jan. 14, 2025). Here, Plaintiff has pleaded that multiple elected district attorneys, and multiple judicial decisions, reflect a shared incorrect view of their *Brady* obligations. No more is required at the motion to dismiss stage.

The County's reliance on *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), for its ratification argument misses the point. Plaintiff's ratification theory focuses on Flynn's conduct in the post-conviction period, including directing and approving the conduct of his subordinates in the Conviction Review Unit who refused to acknowledge Sedita's misconduct as such, made repeated public statements approving of Sedita's conduct, and denied that any misconduct occurred. Dkt. No. 23 at 6-7. Flynn's conduct in these and other regards, when he was the final policymaker, "support[s] an inference that the violation conformed to a preexisting policy" and that Flynn approved of it. *See Collins v. City of New York*, 923 F.Supp. 2d 462, 477 (E.D.N.Y. 2013) *citing Grandstaff v. City of Borger,* 767 F.2d 161, 170 (5th Cir. 1985).

As here, the district attorney in *Collins* made after-the-fact statements—including after the habeas court identified the trial prosecutor's specific acts of misconduct—lauding the trial prosecutor's conduct. The *Collins* court concluded this conduct was relevant to both the policymaker's disposition at the time and as evidence of the existence of past unconstitutional policies. *Id.* So too, here. Flynn ratified the past misconduct by praising Sedita, by claiming his conduct was not erroneous, and by refusing to consent to a vacatur on the basis of that misconduct. This conduct also supports the theory that the trial prosecutor's violations were part of the widespread policies that existed at the time of Ms. Lynch's trial.

8

These arguments were litigated below. *See* Dkt. No. 23 at 6-8; Dkt. No. 25 at 3-4. The Court did not directly address them, having already found that Plaintiff adequately pleaded other *Monell* theories against the County. *See* Dkt. No. 45 at 9-10. It is well-settled that a court need not rule on every theory of Monell liability once it finds that one theory has been sufficiently alleged. In Boyd, even at the summary judgment stage, Judge Vacca noted that even though the Plaintiffs pleaded at least three theories of Monell liability, the Court need only consider one, explaining the Court "'need not analyze or articulate every legal or factual theory on which the plaintiff could potentially prevail at trial' to adequately address the present motion." *Boyd*, *supra* at *41, *quoting Ortiz v. Stambach*, 657 F.Supp.3d 243, 257 (W.D.N.Y. 2023). That the Court did not rule on other *Monell* theories cannot form the basis of a motion for reconsideration, where, as here, the movant does not offer any new facts, overlooked case law, or clear error to justify reconsideration. Nor can it form the basis of a motion for clarification.

## II.    THE COUNTY'S PURPORTED MOTION FOR CLARIFICATION MUST BE DENIED BECAUSE THE COUNTY FAILS TO ALLEGE ANY COGNIZABLE BASIS FOR IT

### A.    The Applicable Legal Standard

There is no Federal Rule of Civil Procedure specifically governing "motions for clarification." *See Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 748 (W.D.N.Y. 2020) (citing cases). It is a sparingly used remedy to be applied only when "a court ruling is unclear or ambiguous." *Id. quoting Metcalf v. Yale Univ.*, No. 15-CV-1696 (VAB), 2019 U.S. Dist. LEXIS 70306, 2019 WL 1767411, at *2 (D. Conn. Jan. 4, 2019). A motion for clarification is "not intended to alter or change a court's order" and is not a vehicle to expand upon a court's prior rulings. *Id.* (citing cases).

"Unlike a motion for reconsideration, a motion for clarification is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order." *Cyclewala v.*

*Feeley*, 2021 WL 1730878, at *1 (W.D.N.Y. May 3, 2021) *citing Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, 2015 WL 11237310, at *6 (D. Conn. July 6, 2015) ("A clarification motion asks the Court: 'What did you mean to say?' A reconsideration motion says to the Court: 'We know what you said. It is wrong. Change it.'").

**B.      The County Fails To Identify Any Ambiguity In The Court's Order**

The County asks the Court to "clarify" its decision by imposing a limit on which *Monell* theories Plaintiff may pursue. Dkt. 59-1 at 6. The Decision and Order is not ambiguous on this point; it found that Plaintiff carried her burden of plausibly pleading *Monell* claims, which is all that is required at this juncture. As discussed *supra,* it is well-settled that, so long as one *Monell* theory survives a motion to dismiss, a court need not adjudicate other theories presented. *See Boyd, supra* at *41. *Accord Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 355 (E.D.N.Y. 2019) (where Plaintiff adequately alleged one *Monell* theory court need not consider whether Plaintiff sufficiently alleged other *Monell* theories). *Accord Canner v. City of Long Beach*, 2015 U.S. Dist. LEXIS 108980, at *7 (E.D.N.Y. 2015). This is sound policy. At the pleading stage, Plaintiff need only plausibly allege her claims, as she has done here.  To the extent the County seeks to narrow the scope of Ms. Lynch's *Monell* claim, the appropriate vehicle is a motion for summary judgment after discovery, not a motion for reconsideration of a pleading-stage ruling.  Indeed, "[P]laintiff is considered the master of her complaint" and it is improper for the County to arrogate to itself at this early stage which particular theories she will be able to assert to prove her *Monell* claim. *Rodriguez v. Chelus, Herdzik, Speyer, & Monte, P.C.*, No. 15-CV-00244-LJV-JJM, 2017 U.S. Dist. LEXIS 30532, at *4 (W.D.N.Y. Mar. 3, 2017) *citing Vasura v. Acands*, 84 F.Supp. 2d 531, 535 n.1 (S.D.N.Y. 2000).

The County is not genuinely seeking clarification. Rather, this is a blatant attempt to force the Court to rule on matters previously before it, which were not necessary to adjudicate the

10

County's motion to dismiss. *See Boyd, supra* at *41. Alternatively, it is an attempt to have the court narrow, *i.e.*, alter, its decision, something expressly prohibited on a motion for clarification. For all of these reasons, that portion of the County's motion purporting to seek clarification should be denied.

## CONCLUSION

Erie County identifies no controlling authority this Court overlooked, no intervening change in law, no new facts, and no clear error requiring reconsideration of its Decision. Nor does the County identify any ambiguity in the Decision requiring clarification. The County's motion for reconsideration is an impermissible attempt to relitigate issues already decided and improperly curtail Plaintiff's available *Monell* theories. Its motion for clarification is a similar attempt to request reconsideration or a narrowing of its prior holding. Accordingly, we respectfully request that the Court deny the County's motion in its entirety.

Dated: March 30, 2026
      New York, NY

                                     Respectfully submitted,

FISHER & BYRIALSEN PLLC
99 Park Avenue, PH Suite/ 26th Floor
New York, NY 10016
(303) 256-6345

 /s/ Jane Fisher-Byrialsen
Jane Fisher-Byrialsen


BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH Suite/ 26th Floor
New York, NY 10016
(212) 490-0400

Luna Droubi
Marc Cannan
Karen Dippold
Tala Alfoqaha

NEWIRTH LINEHAN PLLC
99 Park Avenue, PH
New York, NY 10016
(917) 426-5551

Karen A. Newirth

*Counsel for Plaintiff Renay Lynch*

12