UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RENAY LYNCH,

        Plaintiff,

v.

**Case No. 1:25-cv-00075-LJV-JJM**

THE TOWN OF AMHERST, MICHAEL J. MELTON,
JOSEPH LaCORTE, RAYMOND KLIMCZAK and THE
COUNTY OF ERIE,

        Defendants.

---

**DEFENDANT COUNTY OF ERIE'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION**

**LIPPES MATHIAS LLP**
Jennifer C. Persico, Esq.
James P. Blenk, Esq.
Kirstie A. Means, Esq.
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
jblenk@lippes.com
kmeans@lippes.com

The County of Erie (the "County") submits this reply brief in further support of its motion for partial reconsideration and clarification of the Court's Decision and Order entered February 20, 2026 (ECF No. 45) (the "Order"), pursuant to Rule 54(b). Plaintiff's opposition confirms the need for the Court to reconsider and clarify the Order.

## ARGUMENT

### POINT I

**THE COURT SHOULD CLARIFY AND, AS NECESSARY, RECONSIDER AND DISMISS PLAINTIFF'S CLAIM(S) FOR POST-CONVICTION MISCONDUCT**

Beginning with the County's request for clarification, Plaintiff opposes the request, but in the same brief, observes the crux of the County's Motion: that the Court held "that Ms. Lynch sufficiently pled a pattern of *Brady* violations for *Monell* purposes." (Compare Pl. Br. at 1). While the County maintains such a vague policy remains overbroad and insufficiently supported,[1] the contours of Plaintiff claim should at least be sufficiently circumscribed at this posture.

Whether Plaintiff seeks to pursue *discovery* into post-conviction matters to support her claim of an underlying *Brady* violation at the time of her underlying prosecution (*see* Pl. Br. at 5) is related but ultimately distinct from premising a *Monell* claim on alleged post-conviction misconduct. To this point, the County is not seeking a ruling to render such discovery irrelevant at

---

[1] *See* Dkt. 18-1 at pp.6-7; Dkt. 25 at p. 5 ("*Monell* claims premised upon broadly defined policies are fundamentally flawed and routinely end in dismissal. *See, e.g., Lipford v. City of Rochester*, 2017 WL 4344633, at *7; *Smith v. Town of Lewiston*, 2020 WL 5237924, at *12 (W.D.N.Y. July 30, 2020). Indeed, courts have cautioned this approach imposes upon the plaintiff "an almost impossible burden." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011); *see also White v. City of New York*, 206 F. Supp. 3d 920, 928 n.2 (S.D.N.Y. 2016) ("The broader the policy a plaintiff seeks to plead, the greater the factual allegations that are required to render it plausible.").

1

this juncture[2]; instead, this Motion seeks merely to confirm the contours of the allegations underpinning Plaintiff's *Monell* claim. And particularly because Plaintiff's opposition continues to attempt to expand the contours of Section 1983 liability and the allegations in her Complaint,[3] the County maintains clarification of the Order is necessary.

The County thus seeks to clarify and confirm Plaintiff's *Monell* claim is limited to a theory premised upon: (i) alleged *Brady* violations occurring at the time of Plaintiff's 1998 conviction, and (ii) continued withholding of *Brady* material by Sedita in or around 2008. As to the latter, and as set forth below, this branch of Plaintiff's claim should be reconsidered and dismissed.

### A. Plaintiff's allegations of a post-conviction *Brady* violation constitute an overextension of *Brady*

Plaintiff argues that after Sedita became District Attorney, "his continued post-conviction suppression of the *Brady* material . . . constitutes a violation of Ms. Lynch's ongoing constitutional right to disclosure of *Brady* material . . ." (Pl. Br. at 5). The County maintains that Plaintiff's contention constitutes an overextension of *Brady* and does not give rise to an independent

---

[2] The County notes the potential impact of Plaintiff's post-conviction theory poses an extreme risk to the timing and progress of discovery.  For example, Plaintiff has already issued requests for the complete contents of the County's post-conviction file, materials, memoranda and notes relating to any post-trial review, reinvestigation or assessment of Plaintiff's conviction, and overly broad requests for files from May 1, 1995 through December 31, 2024 concerning the claims of criminal defendants on direct appeal or in post-conviction motions alleging misconduct by prosecutors during criminal hearings or trials. The County anticipates that bifurcation of Plaintiff's purported *Monell* discovery will be warranted, even if the instant motion is denied, and reserves all rights and objections to the same.

[3] Plaintiff's opposition appears to contend she has additionally alleged a *Monell* claim based upon Flynn's conduct as final policymaker for the County. (Pl. Br. at 7-8). The County addresses this contention in Point II below, but this is yet another example of Plaintiff misinterpreting the cases she cites at page 10 of her brief that permit a plaintiff to pursue alternative theories of *Monell* liability premised upon the same constitutional violation. At a minimum, Plaintiff's contention underscores the need to clarify and confirm that Plaintiff's claim is limited to an alleged *Brady* violation, rather than some amorphous claim of prosecutorial misconduct, whenever occurring, and without regard for the need to establish the elements of notice and causation under *Monell*.

constitutional violation. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (explaining those seeking postconviction relief have "only a limited interest," that "*Brady* is the wrong framework," and that "federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided").

Plaintiff suggests *Osborne* has no application to Plaintiff's claims, citing *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007) and *Collins v. City of New York*, 923 F. Supp. 2d 462, 474 (E.D.N.Y. 2013). Neither is controlling, and *Steidl*, which *Collins* relies upon, predates *Osborne*, and only amounts to dicta as the post-conviction *Brady* violation fell to the defendants' absolute immunity defense. *Collins*, 923 F. Supp. 2d at 475-76. Nevertheless, Plaintiff encourages an interpretation that *Osborne* has no application for materials in existence at the time of trial. This interpretation goes against the thrust of *Osborne* and is contrary to persuasive authority within this and other circuits[4].

Overall, Plaintiff's opposition does not disturb that courts within the Second Circuit and elsewhere continue to cite *Osborne* for the proposition that "*Osborne* established that there is no freestanding substantive due process right to *Brady*-like disclosure post-conviction." *See, e.g.*, *Pierre v. City of Rochester*, 2018 WL 10072453, at *17 (W.D.N.Y. Sept. 7, 2018), citing *Ermichine v. United States*, 2011 WL 1842951, at *13 (S.D.N.Y. May 12, 2011) ("[T]he Government had no *Brady* obligation to produce such information to Ermichine years after his

---

[4] Shortly before *Osborne* was decided, the Third Circuit rejected a theory that prosecutors had violated the convicted plaintiff's constitutional rights by waiting until 2000 to disclose racial profiling by police that was alleged to be in force the time of plaintiff's conviction. *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 444 (3d Cir. 2005). The Third Circuit specifically rejected the application of *Brady* to the circumstances and held "[w]ithout a duty to act, the defendants cannot be liable for failing to come forward with the exculpatory evidence." *Id*. at 445.

3

conviction.").

Plaintiff similarly fails to address the Second Circuit's recognition in *Seri v. Bochicchio*, 374 F. App'x 114, 117 (2d Cir. 2010) that while a "prosecutor's ethical duty to disclose exculpatory evidence extends beyond the point of conviction . . . this ethical duty does not of itself establish a *constitutional* right") (emphasis in original) (citing *Imbler v. Pachtman,* 424 U.S. 409, 427 n. 25 (1976) (distinguishing between a prosecutor's duty to disclose exculpatory evidence at trial, which is enforced "by the requirements of due process," and a prosecutor's duty to disclose such evidence after a conviction has been obtained, which is enforced "by the ethics of his office"); *accord Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009) (distinguishing, in *dicta*, the plaintiff's claim alleging post-conviction misconduct from a *Brady* violation). Here, again, Plaintiff observes merely that the evidence at issue in *Seri* was obtained post-conviction. That sequence does not disturb that the Second Circuit, citing Supreme Court precedent, has imposed limits on the reach of *Brady* in the post-conviction context.

And even then, Plaintiff's distinction amounts to semantics. All *Brady* claims necessarily conclude evidence in existence at the time of trial. Indeed, in *Osborne*, the defendant sought to test evidence that was existing at the time of trial. The favorability of that evidence would therefore turn on the interpretation of the evidence existing at the time of trial. In *Seri*, the case concerned fingerprints from the scene of the crime that were collected well before the trial.[5] Yet, the courts in neither *Osbourne* nor *Seri* deemed the temporal origin of the evidence at all relevant to their blanket conclusions that *Brady* has no post-trial application.

And the reason that this temporal distinction has not gained wider recognition is that it is

---

[5] The nature of the evidence is more fully discussed by the district court. *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 664-55 (D. Conn. 2008).

inconsistent with the reasoning in *Osborne*.  In *Osborne*, the Supreme Court held broadly that "*Brady* is the wrong framework" for postconviction relief.  In so holding, the Supreme Court contrasted the trial context in which "the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt" from the posttrial context in which the State is afforded "flexibility."  *Osborne*, 557 U.S. 52 at 69.

If this "flexibility" were to turn on the merits of Plaintiff's application or the temporal origin of the evidence at issue, the State would be deprived of any "flexibility," in fact. The prosecutor would lose its privilege of relying on an ostensibly valid conviction, and would be forced to engage in an endless cycle of reopening and reevaluation of conviction, less the prosecutor – who may have had no role in the underlying trial – face future and accumulating constitutional liabilities.  This result would obtain – and the rigidity of onerous *Brady* obligations would prevail – whether the prosecutor's post-conviction liability is limited to new evidence of innocence or past allegations of fair trial violations.  Indeed, the rule would seemingly be unrelated to even an allegation by the convicted defendant, such that constitutional violations would accrue in total silence.

This never-ending loop of constitutional obligations is distinct from the traditional path: (i) pursuing vacatur of a conviction through the applicable state procedure (most commonly in New York, the CPL 440 motion), then (ii) litigating a *Brady* violation after success. This is a viable path to litigating and obtaining damages for "nondisclosure of evidence in existence at the time of trial" without a never-ending loop of alleged constitutional violations and without chilling post-trial advocacy.

The Court should thus reconsider, and ultimately dismiss, Plaintiff's *Monell* claim to the extent it is premised on an alleged post-conviction constitutional violation.

5

**B.    Plaintiff's claim that Flynn's conduct constitutes "a distinct theory of Monell liability" constitutes a misunderstanding of *Monell***

For the reasons set forth above, Flynn's conduct does not constitute a constitutional violation as a matter of law.  For the reasons that follow, Plaintiff's theory separately fails as a matter of pleading, even if this Court holds that *Osborne* does not control this dispute.

In opposition, Plaintiff charges Flynn with constitutional violations reflected in Flynn's failure to concede to Plaintiff's allegations of prosecutorial misconduct when presented with them decades later and complimented his subordinates for their role in the reinvestigation beginning in or around 2020, which effort led to Plaintiff's successful vacatur.  Plaintiff identifies this as a constitutional violation distinct from the violations of the trial prosecutor.  (Pl. Br. at 8.)

Preliminarily, Plaintiff's opposition focuses on arguing that conduct occurring under DA Flynn's tenure may be *relevant* to Plaintiff's claim. Setting aside that an evaluation of relevance remains contingent on understanding what Plaintiff's claim actually is (and thus the reason the County seeks clarification on this motion), Plaintiff's reference to relevance generally underscores the County's point that Plaintiff does not have a distinct claim premised upon conduct on the part of DA Flynn. Simply put, Plaintiff's attempt to fault the ECDA for not conceding Plaintiff's allegation that Sedita engaged in misconduct does not amount to a constitutional violation. Plaintiff comes forward with no case to the contrary, and this allegation, even if it was viable, is distinct from a *Monell* claim premised upon a *Brady* violation.[6]

*Collins v. City of New York* lends no support to Plaintiff's argument.  The plaintiff in *Collins*

---

[6] As set forth above in Point I, Plaintiff misinterprets the import of the decisions cited on page 10 of her brief, permitting plaintiffs to pursue alternative theories of *Monell* liability premised upon the same conduct. Contrary to Plaintiff's implication, these cases do not stand for the proposition advanced by Plaintiff here – namely, that a plaintiff found to sufficiently allege a *Monell* claim premised upon a constitutional violation may pursue entirely distinct theories premised upon distinct conduct and occurring at distinct times.

complained that the policymaker, <u>despite being on notice</u>, took no disciplinary action against the defendant-prosecutor and instead continued to praise him after a grant of *habeas* relief. *See Collins*, 923 F. Supp. 2d at 477. Crucially, the district attorney at issue in *Collins*, Charles "Joe" Hynes, had served as District Attorney from 1990 to 2013.[7] He was therefore the prosecutor at the time of the plaintiff's conviction in 1994. *Collins* provides no support for ratification creating any sort of liability in a subsequent district attorney with no role in the District Attorney's office at the time of the plaintiff's trial.

Further, Flynn's involvement occurred only after Plaintiff became aware of the material evidence that existed at the time of trial. Plaintiff's claim challenges advocacy by the County. (Complaint (Dkt. 1), ¶465.) Plaintiff's allegations – even under Plaintiff's urged distinction between pre-trial and post-trial evidence – would fall in the latter category.

### CONCLUSION

For the foregoing reasons, together with those set forth in the County's underlying submissions in support of the County's Motion to Dismiss, the County respectfully seeks reconsideration and clarification of the Court's February 20, 2026 Order pursuant to Fed. R. Civ. P 54(b), and, upon granting the same, asks the Court to dismiss Plaintiff's *Monell* claim inasmuch as it premised upon alleged post-conviction *Brady* violations pursuant to Fed. R. Civ. P. 12(b)(6), together with any such other and further relief the Court deems just and proper.

Dated: April 9, 2026
      Buffalo, New York

**LIPPES MATHIAS LLP**

*s/ Kirstie A. Means*
Jennifer C. Persico, Esq.

---

[7] John Alexander, *Former Brooklyn District Attorney Charles "Joe" Hynes Dead at 83*, Queens Daily Eagle, January 30, 2019 (accessed at https://queenseagle.com/all/2019/1/30/former-brooklyn-district-attorney-charles-joe-hynes-dead-at-83 on April 9, 2026.)

James P. Blenk, Esq.
Kirstie A. Means, Esq.
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
jblenk@lippes.com
kmeans@lippes.com