**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

RENAY LYNCH,

                 Plaintiff

      v.

The TOWN OF AMHERST, et al.,

                 Defendants.

**Case No. 25-cv-75 (LJV)(JJM)**

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

**FISHER & BYRIALSEN PLLC**
99 Park Avenue, PH Suite / 26th Floor
New York, NY 10016
(303) 256-6345

**BELDOCK LEVINE & HOFFMAN LLP**
99 Park Avenue, PH Suite / 26th Floor
New York, NY 10016
(212) 490-0400

**NEWIRTH LINEHAN PLLC**
99 Park Avenue, PH
New York, NY 10036
(917) 426-5551

*Attorneys for Plaintiff Renay Lynch*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD................................................................................................................... 2

ARGUMENT ................................................................................................................................ 3

    I.    The Section 1983 Conspiracy Claim Is Adequately Pleaded. ........................................... 3

        A.    The Plaintiff Did Not Unduly Delay and Plaintiff Suffers No Prejudice ....................... 4

        B.    The First Amended Complaint Pleads the Conspiracy with Particularity. ..................... 5

        C.    The Intracorporate-Conspiracy Doctrine Does Not Apply. ............................................ 8

        D.    The Conspiracy Claim Is Barred Neither by the Timing of the District Attorneys' Tenure nor by Absolute Immunity................................................................................... 9

        E.    The Town's *Monell* Challenge Misreads Its Own Authority ........................................ 11

    II.    The Repleaded Respondeat Superior Claim Is Neither Barred by the Law of the Case nor Futile. ............................................................................................................................... 12

        A.    The Law of the Case Doctrine Does Not Apply to Plaintiff's Repleaded Respondeat Superior Claim That Cures Its Prior Defect and Avers New Facts ..................................... 12

        B.    The Repleaded Respondeat Superior Claim Does Not "Merely" Name the Prosecutors; It Details Their Non-Advocacy Misconduct for Which the County Is Vicariously Liable. . 13

        D.    The County's Authorities Are Not Contrary. ................................................................ 16

        E.    The Town's Respondeat Superior Objection Is Foreclosed. ......................................... 16

    III.    The Estate of John B. Askey Is Properly Added. ............................................................. 17

        A.    Any Capacity Defect Has Been Cured............................................................................ 17

        B.    The Claims Against the Estate Are Timely. .................................................................. 18

CONCLUSION............................................................................................................................ 18

**TABLE OF AUTHORITIES**

**Cases**

*Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448 (S.D.N.Y. 2016) ......................................... 2

*Anilao v. Spota*, 27 F.4th 855 (2d Cir. 2022) ................................................................... 11

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003) ............................................. 12

*Arnold v. Town of Camillus*, 662 F. Supp. 3d 245 (N.D.N.Y. 2023) ............................. 12

*Baden v. Koch*, 799 F.2d 825, 828 (2d Cir. 1986) ........................................................... 4

*Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) ................................................................ 14

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ...................................... 14, 15

*Buari v. City of New York*, 530 F. Supp. 3d 356, 394 (S.D.N.Y. 2021) ........................... 7

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ............................................................... 11

*Buran v. Coupal*, 87 N.Y.2d 173 (1995) ........................................................................ 18

Chunn v. Amtrak, P.O., 916 F.3d 204 (2d Cir. 2019) ...................................................... 18

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990) ...................................... 4

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ............ 2

*Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2023 U.S. Dist. LEXIS 148549 (S.D.N.Y. Aug. 21, 2023) ..................................................................... 2, 3

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ....................................... 7

*Flagler v. Trainor*, 663 F.3d 543 (2d Cir. 2011) ...................................................... 11, 15

Freeman v. HSBC Holdings PLC, 57 F.4th 66 (2d Cir. 2023) ....................................... 10

Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66 (2d Cir. 1976) ................................. 9

*Harry v. City of New York*, 2022 U.S. Dist. LEXIS 226325 (S.D.N.Y. Dec. 15, 2022) .............. 16

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) .............................................................. 18

Matter of Foreclosure of Tax Liens (City of Newburgh), 165 A.D.3d 1112 (2d Dep't 2018) ..... 17

*McDonough v. Smith*, 588 U.S. 109 (2019) .................................................................... 18

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ..................................................... 16

*Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 324 (W.D.N.Y. 2021) ............... 7

*Ortiz v. Case*, 2019 WL 1236413 (W.D.N.Y. 2019................................................................. 16

*Owen v. City of Independence*, 445 U.S. 622 (1980).......................................................... 11

*Owens v. Okure*, 488 U.S. 235 (1989) ............................................................................... 18

*Panther Partners Inc. v. Ikanos Communs., Inc.*, 681 F.3d 114 (2d Cir. 2012) ............... 2

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986) .......................................... 12

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ........................................... 8, 15

*Polanco v. NCO Portfolio Mgmt.*, 23 F. Supp. 3d 363 (S.D.N.Y. 2014) .......................... 3

*Powers v. Coe*, 728 F.2d 97 (2d Cir. 1984) ................................................................ 11, 15

*Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119 (2d Cir. 1991)...................................... 2, 3

*Romer v. Morgenthau*, 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000) .................................. 7

*Triolo v. Nassau County*, 24 F.4th 98 (2d Cir. 2022) ................................................. 11, 14

*United States v. Rooney*, 866 F.2d 28 (2d Cir. 1989) ....................................................... 8

*Warney v. Monroe County*, 587 F.3d 113 (2d Cir. 2009) ................................................ 11

*Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y.), aff'd, 626 F. App'x 20 (2d Cir. 2015) ................................................................................................................. 13

*Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362 (W.D.N.Y. 2018)........................... 3

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) ............................. 14, 16

**Rules**

CPLR 203(b), (f)................................................................................................................. 18

Fed. R. Civ. P. 15(c)(1)(B)-(C).......................................................................................... 18

## PRELIMINARY STATEMENT[1]

A party opposing a timely, first motion seeking leave to amend a civil rights complaint bears a heavy burden. This is particularly so where, as here, the motion to amend seeks to cure, in part, a deficiency identified by the Court in its decision on a motion to dismiss. Neither the County of Erie nor the Town of Amherst has carried its burden. Accordingly, Ms. Lynch's motion to amend should be granted.

Ignoring the well-pleaded allegations of the First Amended Complaint ("1AC"), the County asserts undue delay, conclusory pleading, and the intracorporate-conspiracy doctrine against the Section 1983 conspiracy claim. Yet the 1AC pleads the agreement, its participants, and its overt acts in detail, and the intracorporate-conspiracy doctrine does not reach a conspiracy between two separate governmental entities, precisely what Plaintiff has pleaded here. Against the repleaded respondeat superior claim, the County invokes the law of the case and claims the District Attorney acted as a State rather than a County officer, precluding County liability. There is no law of the case that bars repleading here, where the respondeat superior claim was dismissed, without prejudice, for the failure to plead a county tortfeasor—a deficiency the 1AC remedies. The state-versus-county line is functional, placing the non-advocacy conduct alleged here on the county side. And the County's reliance on absolute prosecutorial immunity is misplaced: that immunity is personal to the individual official and does not bar the County's own liability. In short, the County mischaracterizes what the 1AC pleads and relies on law that does not govern the claims Plaintiff seeks to add.

The Town of Amherst's opposition fares no better. On the new claims, the Town raises the same pleading and intracorporate-conspiracy arguments as the County; raises a *Monell* theory that

---

[1] Plaintiff submits this consolidated reply to the oppositions of Defendants County of Erie (the "County") and Town of Amherst ("Town"), with the Court's permission. *See* Dkt. No. 86.

its own authority defeats and a notice-of-claim defense that this Court has already rejected. The Town's one unique argument concerns the capacity of the Estate of John B. Askey, a defect that Plaintiff has requested leave to cure by substituting the newly discovered Executor.

Neither the County nor the Town has carried its burden to show that the claims or party the Plaintiff seeks to add would be futile, and because neither Defendant has shown any undue delay, undue prejudice, or any other basis on which leave may be denied, Plaintiff's motion for leave to amend should be granted.

## **LEGAL STANDARD**

Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires," and the Second Circuit applies that command as the liberal standard it is. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002). Leave may be denied for undue delay, bad faith, repeated failure to cure, prejudice, or futility. It is "rare that such leave should be denied . . . especially when there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment is futile only if the proposed claim "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty*, 282 F.3d at 88; *Panther Partners Inc. v. Ikanos Communs., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). The Court evaluates the proposed pleading under a Rule 12(b)(6) analysis, accepting all well-pleaded factual allegations as true and drawing every reasonable inference in Plaintiff's favor. *Panther Partners*, 681 F.3d at 119; *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016); *Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, 2023 U.S. Dist. LEXIS 148549, at *7–8 (S.D.N.Y. Aug. 21, 2023). The question "is not whether [Plaintiff] will ultimately prevail" but whether she has pleaded "factual content that allows the court to draw the reasonable inference" that the defendants are

2

liable. *Dumbo Moving*, 2023 U.S. Dist. LEXIS 148549, at \*7–8; *Polanco v. NCO Portfolio Mgmt.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014). Plaintiff "is not required to prove [her] case at the pleading stage." *Ricciuti*, 941 F.2d at 124.

The burden of establishing futility rests on the party opposing amendment. *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 373 (W.D.N.Y. 2018); *Dumbo Moving*, 2023 U.S. Dist. LEXIS 148549, at \*9. Futility is a demanding, matter-of-law determination: courts should not deny leave to amend "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti*, 941 F.2d at 123 (cleaned up). "This principle should be applied with particular strictness when the plaintiff seeks to file an amended complaint charging a violation of his civil rights." *Id.* (citing cases).

## ARGUMENT

Plaintiff's proposed First Amended Complaint[2] (the "1AC") plausibly pleads a Section 1983 civil conspiracy claim and a repleaded respondeat superior claim, and properly adds the Estate of John B. Askey.[3] Neither the County nor the Town carries its burden of establishing that any claim or the added party is futile under the Rule 12(b)(6) standard that governs their oppositions, or that leave should be denied for any other reason. Their oppositions fail, and Plaintiff's motion for leave to amend should be granted.

**I.    The Section 1983 Conspiracy Claim Is Adequately Pleaded.**

---

[2] After Defendant Town's filing in opposition, Dkt. No. 84, Plaintiff learned the identity of the Executor of the Estate of John B. Askey. As a result, Plaintiff submits an amended proposed First Amended Complaint changing all references to "John Doe as Executor of the Estate of John B. Askey" to "David Askey as Executor of the Estate of John B. Askey". The amended proposed First Amended Complaint is attached to the Droubi Decl. as Exhibit 5.

[3] Plaintiff withdraws her new access to courts claim without prejudice while her Court of Claims litigation is ongoing. She disputes, however, the County's argument that the instant action provides the remedy Plaintiff seeks, as the Court of Claims provides qualitatively different remedies, including the opportunity for Plaintiff to have her actual innocence recognized in a court of law.

The County attacks the conspiracy claim as untimely, insufficiently pleaded, barred by the intracorporate-conspiracy doctrine, and futile on immunity and policymaker-timing grounds. The Town echoes the pleading and intracorporate arguments and adds that the 1AC fails to plead municipal liability against it. Each argument fails.

### A.    The Plaintiff Did Not Unduly Delay and Plaintiff Suffers No Prejudice

The County's delay argument fails on its own authority. *Cresswell v. Sullivan & Cromwell* involved a motion for leave to amend filed *after* the close of discovery and the filing of a motion for summary judgment. 922 F.2d 60 (2d Cir. 1990). Leave to amend was denied. *Cresswell* stands for the proposition that a motion for leave to amend should be denied only if the moving party establishes that the proposed amendment suffers from "inordinate delay," where "no satisfactory explanation is offered for the delay," and "the amendment would prejudice the defendant." *Id.* at 72. None of those conditions is present.

Plaintiff acted promptly and in accordance with the Court's scheduling order. She moved within the seven-day deadline this Court set. Dkt. 72; *see* Pl. Mem. of Law, Dkt. No. 79-4 (hereinafter "Pl. MOL"), at 3-4. The case is at an early stage, with the County having produced only minimal discovery. *See* Pl. MOL at 4-5. And the fact that the amendment comes a year after the Complaint was filed is explained by litigation Defendants drove—the pendency of the motions to dismiss and then the County's own motion for reconsideration, which this Court denied in all respects.[4] The County does not argue—because it cannot—that it would suffer prejudice, much

---

[4] The relevance of the County's Point I.A to the motion to amend is unclear. This point appears to be a third attempt to litigate the viability of Plaintiff's *Monell* claim, which is not one of the new claims offered by the proposed 1AC. This Court twice sustained Plaintiff's pleading of her *Monell* claims (Dkts. 45 and 78). The County offers no legal basis to revisit the ruling a third time, much less any procedural mechanism, for doing so. *See Baden v. Koch*, 799 F.2d 825 (2d Cir. 1986). Likewise the law-of-the-case doctrine the County improperly invokes against Plaintiff's respondeat superior claim applies directly against the County's attempt to relitigate this issue. *Compare infra* Section II(A).

4

less the undue prejudice required to support an opposition to a motion to amend a complaint. *See* Pl. MOL at 4-5 (citing cases).

Finally, although not required to do so, Plaintiff's moving papers offer valid explanations for the timing of its amendment, establishing Plaintiff's diligence in moving to amend, none of which the County identifies as being false or disingenuous. *Cf.* Pl. MOL at 3-4. This is the opposite of *Cresswell,* where the plaintiff offered only counsel's ignorance of a decades-old statute to excuse an untimely, prejudicial amendment.

**B.      The First Amended Complaint Pleads the Conspiracy with Particularity.**

The County and the Town ignore what the 1AC actually pleads and treat the proposed Section 1983 civil conspiracy claim as though it alleges nothing more than the word "conspiracy" among members of a single governmental entity.

By way of just one example, the 1AC alleges that, before trial, both the Amherst Police Department ("APD") detectives and the Erie County District Attorney's Office ("ECDA") determined that Kareem Walker, the man the prosecution alleged committed the murder with Ms. Lynch, was actually in Florida when Louise Cicelsky was killed. 1AC ¶¶ 8, 196, 222, 269, 326, 331. ECDA's own assistant district attorney admitted in open court in 2018 that ECDA was aware prior to Ms. Lynch's 1998 trial that a 1997 investigation in Florida had "ruled out" Walker as a suspect. *Id*. ¶¶ 334–336. And Defendant LaCorte admitted on a 2010 television broadcast that APD's initial investigation revealed Walker "was in Florida at the time of our crime." *Id*. ¶¶ 10, 242. By their own independent admissions, members of the two separate agencies shared critical information derived from the early case investigation.

Both APD and ECDA then ensured that Walker's true whereabouts, and thus the impossibility of his being the perpetrator (rendering the prosecution's theory and Ms. Lynch's

5

coerced confession false) were suppressed from Ms. Lynch, from the grand jury, from the trial jury, and through decades of post-conviction litigation. *Id*. ¶¶ 8, 10, 213. ECDA presented Detective LaCorte to the grand jury and elicited false testimony about Ms. Lynch's purportedly truthful "confession" at a time when both ECDA and APD knew the "confession" to be false. *Id*. ¶¶ 212–213, 216. Then-Assistant District Attorney Sedita advanced the same narrative through witnesses—including members of the APD—and argument at trial, knowing Walker was out of state and that Lynch's "confession" and informant testimony thus had to be false. *Id*. ¶¶ 326, 332. This is not parallel conduct; it is a single false narrative, known by both agencies to be untrue, presented jointly and concealed in concert by express agreement or tacit understanding. *Id*. ¶¶ 460–462.

After Ms. Lynch's conviction, the APD and ECDA's coordinated conspiracy to conceal the suppression of favorable evidence continued, as alleged in the 1AC. For example, in March 2023, Plaintiff's post-conviction counsel submitted a draft CPL § 440.10 motion and sought ECDA's agreement to vacate Plaintiff's conviction. *See* 1AC ¶¶ 354-356. On July 25, 2023, in response to an inquiry from Plaintiff's post-conviction counsel, ADA Natalie Lesh of ECDA told Ms. Lynch's post-conviction counsel that she would have an update on ECDA's position on Ms. Lynch's CPL § 440.10 claim after "meeting with Justice Sedita," who was by then no longer a member of ECDA. *See* 1AC ¶¶ 357-361. After this meeting, ECDA required that Ms. Lynch excise all mention of direct prosecutorial misconduct and ECDA's knowledge of APD's misconduct from her motion to vacate, thereby continuing the conspiracy between APD and ECDA to suppress material, favorable evidence. *Id*. ¶¶ 360–363.

Taken as true and read in the light most favorable to Plaintiff, these allegations plausibly plead a conspiracy among APD officers and members of the ECDA, in contrast to the cases relied

upon by the County. In *Buari v. City of New York*, the court dismissed a conspiracy claim because the plaintiff alleged only that separate actors who had never "spoken to one another" engaged in parallel conduct. 530 F. Supp. 3d 356, 394 (S.D.N.Y. 2021). The 1AC demonstrates that the ECDA and APD members of the alleged conspiracy not only spoke to each other, but shared critical investigatory findings, such as Walker's whereabouts. 1AC ¶¶ 334-336. In *Ocasio v. City of Canandaigua*, the plaintiffs failed to allege that "any communication, meeting of the minds or cooperative effort took place." 513 F. Supp. 3d 310, 324 (W.D.N.Y. 2021). And in *Romer v. Morgenthau*, the allegations were "too general and conclusory" to plead a meeting of the minds. 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000). Here, the allegations are neither general nor conclusory: the 1AC pleads specific actions during a defined time period.

Ms. Lynch alleges the opposite: the shared possession of specific exculpatory facts confirmed by investigatory conduct by both APD and ECDA, a jointly presented false narrative, and—for the post-conviction cover-up—a date, a named author, a quoted email, an identified meeting, and personally directed negotiations followed by the requirement that the suppressed exculpatory facts be omitted from the public record. 1AC ¶¶ 357-363. A plaintiff need not plead a signed agreement; she must plead "specific circumstantial evidence" of a shared objective and "some details of time and place." *Buari*, 530 F. Supp. 3d at 394. Ms. Lynch has pleaded both.

The Town's own lead conspiracy authority confirms the point. In *Dwares v. City of New York*, the Second Circuit reversed a Rule 12(b)(6) dismissal and sustained a Section 1983 conspiracy claim, requiring only "some details of time and place and the alleged effect of the conspiracy." 985 F.2d 94, 100 (2d Cir. 1993). The 1AC supplies exactly that—including the July 25, 2023 email from ADA Lesh, the August 10, 2023 meeting with Justice Sedita, and the specific

7

overt acts each defendant undertook in furtherance of the agreement. 1AC ¶¶ 358-361, 462. What *Dwares* required, the 1AC pleads.

The demand for a pleaded time and place of the agreement also misapprehends the law. Because conspiracies are "by their very nature secretive operations, they may have to be proven by circumstantial, rather than direct, evidence." *Amato v. Hartnett*, 936 F. Supp. 2d 416, 440 (S.D.N.Y. 2013). Nor need Plaintiff allege that each conspirator dealt directly with every other: "[t]here is no requirement that each member of a conspiracy conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member." *United States v. Rooney*, 866 F.2d 28, 32 (2d Cir. 1989). The 1AC's dated, specific allegations of shared investigatory findings and a jointly presented false narrative more than satisfy that standard.

### C.      The Intracorporate-Conspiracy Doctrine Does Not Apply.

The County and Town Defendants' assertions that the intracorporate conspiracy doctrine bars the civil conspiracy claim fail. *See* County Opp., Dkt. No. 83 (hereinafter "County Opp."), at 3-4; Perley Decl., Dkt. No. 84, (hereinafter "Town Decl.") ¶¶ 39–43. First, the County mischaracterizes Plaintiff's conspiracy allegations as an agreement between Sedita and Flynn alone[5] while the Town alleges it to be a conspiracy among APD officers alone. County Opp. at 4; Town Decl. ¶¶ 39-40. In fact, the 1AC plainly pleads a conspiracy between members of two separate government entities, the APD and ECDA. 1AC ¶¶ 459-472. The intracorporate-conspiracy doctrine reaches only "a single act by a single corporation acting exclusively through

---

[5] The County's contention that Sedita and Flynn did not act as County agents or employees in the course of the conduct fails as to the conspiracy claim for the same reasons it fails in the respondeat superior context. *See infra* Section II.B. The Complaint pleads acts, on which the conspiracy rests, in substantial part, on investigative and post-conviction administrative conduct that no absolute immunity reaches. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995).

its own officers and employees." *Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014). The Town of Amherst and the County of Erie are not one entity, and their officers' coordination is not an intracorporate act. Nor does the doctrine reach the post-conviction phase: the 1AC alleges that ECDA consulted with Sedita when he was no longer an ECDA employee. *Id*. ¶¶ 357-359.

The Town's claim that the conspiracy fails because no Amherst defendant is alleged to have acted with an "independent personal stake" is inapposite here, where the conspiracy is alleged to have been among more than one entity. Town Decl. ¶ 43 (*citing Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71-72 (2d Cir. 1976)). The *Girard* exception on which the Town relies is a feature of the intracorporate-conspiracy doctrine itself: it operates only to rescue an otherwise-barred agreement among the agents of a *single* entity, and so is reached only if the doctrine applies in the first place. As described *supra*, the doctrine does not apply and its personal-stake exception is irrelevant. *Cf. Girard*, 530 F.2d at 71-72.

### D. The Conspiracy Claim Is Barred Neither by the Timing of the District Attorneys' Tenure nor by Absolute Immunity.

The County appears to contend that the conspiracy claim relies on an "unwarranted expansion" of policymaker liability because, at the time of Ms. Lynch's underlying prosecution, Sedita would not become District Attorney "for another 10 years." County Opp. at 3-4. That argument misreads both the pleading and the law of conspiracy. The 1AC does not allege a single agreement fixed at the 1998 trial; it alleges a conspiracy that began "no later than the Amherst Police Department's investigation" and continued "throughout the prosecution, conviction, wrongful imprisonment . . . post-conviction proceedings, and beyond the vacatur of [Ms. Lynch's] conviction." 1AC ¶ 460. Sedita is alleged to have participated first as the Assistant District Attorney who investigated and prosecuted Ms. Lynch and, after his election, as District Attorney; Flynn as the District Attorney who carried the concealment through and after her exoneration, both

9

by his acts in conditioning his agreement to vacate on the removal of certain allegations and claims, and in making false public statements concerning Ms. Lynch's guilt and the decision not to re-prosecute her. *Id.* ¶¶ 460, 462. As members of the conspiracy that also included members of APD, Sedita and Flynn are liable for their co-conspirators' overt acts committed in furtherance of the agreement. *See Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 81-82 (2d Cir. 2023) ("[A] coconspirator's overt act must further the objects of a conspiracy for another coconspirator to be held civilly liable for that act."). The 1AC pleads exactly that: "As co-conspirators who joined an existing conspiracy, both Sedita and Flynn assumed full liability for all acts and all damages caused by the conspiracy from its inception . . . including acts committed by the Individual Police Defendants prior to their respective dates of joinder." 1AC ¶ 464.

The County's premise—that liability requires a County policymaker to have joined the agreement in 1998—is therefore beside the point. Sedita and Flynn each participated in the conspiracy while serving as the County's final policymaker for criminal prosecution, and their overt acts in that capacity—Sedita's continued suppression, Flynn's conditioning of vacatur, and Flynn's false public statements—occurred squarely within their tenures. *Id.* ¶¶ 462(d)-(g), 464. That this conduct suffices to bind the County is settled here: in sustaining Plaintiff's *Monell* claim against Erie County, this Court held that "the allegations regarding Sedita's continuing to withhold Brady material after becoming a policymaker are . . . sufficient at the pleading stage," Feb. 20, 2026 Dec., at 9-10 (Dkt. 45), and it reaffirmed that holding in denying reconsideration, June 18, 2026 Dec., at 2-3 (Dkt. 78).

Nor does absolute prosecutorial immunity render the claim futile. *Cf.* County Opp. 3-4. It fails as a defense here for three independent reasons. First, absolute immunity is a personal defense to individual-capacity damages; it does not shield the County. An agent's immunity is no "defense"

10

to the principal, *Triolo v. Nassau County*, 24 F.4th 98, 111-12 & n.9 (2d Cir. 2022) (quoting Restatement (Second) of Agency § 217(b)(ii)), and municipalities enjoy no immunity under Section 1983, *Owen v. City of Independence*, 445 U.S. 622 (1980). Second, the conspiracy does not rest on the advocacy conduct that absolute immunity protects. It rests substantially on investigative conduct—the pre-trial investigation that placed Walker in Florida and the affirmative concealment of it, 1AC ¶ 462(d)—and on post-conviction administrative conduct, including Flynn's false statements to the press, *id*. ¶ 462(g). A prosecutor's investigative and press-related acts are not advocacy and are not absolutely immune. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-77 (1993); *Flagler v. Trainor*, 663 F.3d 543 (2d Cir. 2011); *Powers v. Coe*, 728 F.2d 97, 103 (2d Cir. 1984). Third, the County's own authority confirms the rule. *Anilao* holds that county prosecutors are "generally controlled by municipal policymakers for purposes of *Monell*," subject only to a "narrow exception . . . [for] the decision of whether, and on what charges, to prosecute." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022). The conduct on which this conspiracy rests falls outside that narrow exception. *Warney v. Monroe County*, 587 F.3d 113 (2d Cir. 2009), is not to the contrary: it held only that an individual prosecutor was absolutely immune from an individual-capacity suit for his handling of exculpatory material during a post-conviction proceeding; it says nothing about the County's liability or about the investigative and press conduct alleged here. And *Giraldo* and *Roche* concern the decision to prosecute—the paradigmatic advocacy function that these allegations do not target.

### E.    The Town's *Monell* Challenge Misreads Its Own Authority

The Town separately contends that the conspiracy claim is futile against it because the 1AC fails to plead a municipal policy, characterizing Chief Askey's authority over investigations, interrogations, and referrals to the ECDA as mere "discretion." Town Decl. ¶¶ 35-38. That

11

argument inverts the Town's own lead authority. *Pembaur v. City of Cincinnati* holds that a single decision by an official who possesses final policymaking authority in the relevant area is itself municipal policy for which the municipality is liable. 475 U.S. 469, 480-83 (1986). The 1AC pleads exactly that: under Amherst Town Code § 39-1 and Town custom, "Defendant John Askey had final Town of Amherst municipal policymaking authority with respect to" the investigation of crimes within the Town, the interrogation of suspects, and the referral of matters to the ECDA. 1AC ¶ 468. Whether an official holds final policymaking authority is a question of state law, *Pembaur*, 475 U.S. at 483, and the allegation that the Town Code vested that authority in the Chief "solely" is more than enough to clear the generous futility standard. The Town's remaining cases are not to the contrary. *Anthony* held only that an official without final authority—there, a police sergeant with no policymaking role—cannot bind the municipality; it says nothing about a final policymaker's own decisions. *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (sergeant lacked final policymaking authority). *Arnold* is inapposite for a different reason: it dismissed a *Monell* claim as conclusory because the plaintiff alleged only a vague, unparticularized pattern of discriminatory conduct. *Arnold v. Town of Camillus*, 662 F. Supp. 3d 245, 260 (N.D.N.Y. 2023) (dismissing complaint where *Monell* liability merely "conceiveable"). The 1AC has no such defect: it alleges that Askey "had final Town of Amherst municipal policymaking authority" over the very conduct at issue, alleged in detail, including the investigation of crimes, the interrogation of suspects, and the decision to arrest and charge individuals. 1AC ¶ 468.

II. **The Repleaded Respondeat Superior Claim Is Neither Barred by the Law of the Case nor Futile.**

    A. **The Law of the Case Doctrine Does Not Apply to Plaintiff's Repleaded Respondeat Superior Claim That Cures Its Prior Defect and Avers New Facts**

The County argues that the repleaded respondeat superior claim is barred by law of the case. *See* County Opp. at 8-9. The law of the case doctrine does not reach a repleaded claim that cures the very defect the Court identified: the doctrine "does not apply to the extent that the plaintiff has offered new claims or factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y.), aff'd, 626 F. App'x 20 (2d Cir. 2015) (summary order); *accord City of Philadelphia v. Bank of Am. Corp.*, 609 F. Supp. 3d 269, 282–83 (S.D.N.Y. 2022). That is precisely this case. This Court dismissed the original respondeat superior count as conclusory and for pleading no County tortfeasor and did not deny Plaintiff's request for leave to replead any dismissed claim, nor did it dismiss the Respondeat Superior claim against the County with prejudice. Dkt. 72. The proposed 1AC cures exactly those defects—naming Sedita and Flynn as the County's tortfeasors and detailing the specific wrongs each committed, as described below. Law of the case does not bar it; the only question is the one Rule 15 poses—whether the repleaded claim would survive a motion to dismiss. It would.

### B. The Repleaded Respondeat Superior Claim Does Not "Merely" Name the Prosecutors; It Details Their Non-Advocacy Misconduct for Which the County Is Vicariously Liable.

The February 20 Decision dismissed the original count because it pleaded no County tortfeasor and asserted County liability in conclusory terms; the proposed pleading supplies both the tortfeasor and the tortious conduct. The County's assertion that Plaintiff "maintains she has corrected the deficiencies in her original complaint *merely* by referencing these individuals by name" is inaccurate and belied by both the 1AC and Plaintiff's opening memorandum. *Compare* County Opp. at 9 (emphasis added) *with* 1AC ¶¶ 632–635, 637; Pl. MOL at 6-7. The pleading defects identified by the Court are cured by the 1AC's naming of Sedita and Flynn and its allegation of specific, non-advocacy misconduct committed by each: Sedita's pre-trial "administrative and

13

investigative decisions to proceed with the prosecution of Lynch while aware of . . . exculpatory evidence . . . including evidence that Kareem Walker had been in Florida," and his "affirmative steps to ensure that such material would not be disclosed," 1AC ¶ 462(d); his continued withholding of that evidence after becoming District Attorney, *id*. ¶ 462(e); and Flynn's materially false public statements at his January 5, 2024 press conference. *Id*. ¶¶ 381, 440, 462(g).

Nor is the County correct that Sedita and Flynn were State, not County, actors when they engaged in this non-advocacy conduct. A New York county may be held vicariously liable for the torts of its employees committed within the scope of their employment, even where the employee is individually immune. *See Triolo v. Nassau County*, 24 F.4th 98, 110 (2d Cir. 2022). That principle governs prosecutors as much as any other county employee, subject only to the narrow exception recognized in *Baez v. Hennessy*: a prosecutor "represents the State not the county," and stands outside county liability, only when "acting in a quasi-judicial capacity"—that is, when making "decisions whether or not, and on what charges, to prosecute." 853 F.2d 73, 77 (2d Cir. 1988); *accord Bellamy v. City of New York*, 914 F.3d 727, 758–59 (2d Cir. 2019).

Where, as here, the conduct at issue is not advocacy but rather administrative, managerial, or investigative, the prosecutor "acts as the manager of the district attorney's office," which "is a municipal function," and the County remains a proper defendant. *Bellamy*, 914 F.3d at 758 (*quoting Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992)); *accord Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (a district attorney is "treated not as a state official but rather as an official of the municipality" as to "claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office"). Sedita's and Flynn's conduct—the investigation of Walker and Flynn's public statements—is exactly this kind of administrative and investigative work, not advocacy.

14

That the 1AC alleges these torts were committed "within the scope of [the prosecutors']" employment" and "not for personal motives," 1AC ¶¶ 633–634, does not concede the claim away. Those allegations establish the scope element of respondeat superior; they do not transform every act into the immune advocacy function. The scope inquiry—was the agent acting in the County's business?—and the *Baez* inquiry—was the particular act the State's quasi-judicial function or the county's administrative one?—are distinct. Pleading the former does not answer the latter, and the 1AC independently pleads investigative and administrative conduct that falls on the county side of the line.

The County's argument depends on treating all of Sedita's and Flynn's conduct as prosecutorial advocacy. But the 1AC sets forth conduct by both Sedita and Flynn that is not advocacy. First, the 1AC alleges that Sedita was involved in APD's investigation that established prior to the trial that Kareem Walker was out of state when the murder occurred—a fact ECDA admitted in open court in 2018. 1AC ¶¶ 8, 196, 269, 326, 334-338. A prosecutor's involvement in this kind of police investigation is not advocacy, and is thus a county function, not the State's quasi-judicial advocacy function. *Bellamy*, 914 F.3d at 758; *Pinaud*, 52 F.3d at 1153–54 & n.14. The dispositive question for respondeat superior is the county-versus-state agency line, which places investigation on the county side.

Second, the claim rests on Flynn's false public statements—his public denials of any prosecutorial misconduct and false public assertions that Walker's participation was merely "not corroborated." 1AC ¶¶ 378–379. Dealing with the press is an administrative act, not a prosecutorial-advocacy function, and enjoys no absolute immunity. *Flagler v. Trainor*, 663 F.3d 543, 549 (2d Cir. 2011); *Powers v. Coe*, 728 F.2d 97, 103 (2d Cir. 1984) (dealing with the press is administrative, not quasi-judicial). Publicly branding a woman the office had just agreed to

15

exonerate as a possible murderer—the culmination of a decades-long course of outrageous concealment—and denying that the vacatur was an exoneration is administrative conduct of the County's District Attorney, and the County answers for it in respondeat superior.

The parallel respondeat superior theory under the New York Constitution survives for the further reason set out in Plaintiff's opening papers: because Section 1983 does not authorize respondeat superior liability against a municipality, it supplies no adequate alternative remedy, and the County never addresses the point. Pl. Mem. (Dkt. 79-4) at 7; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Harry v. City of New York*, 2022 U.S. Dist. LEXIS 226325, at *15–16 (S.D.N.Y. Dec. 15, 2022).

### D.     The County's Authorities Are Not Contrary.

The County's cases do not hold otherwise. In both *Ortiz v. Case*, 2019 WL 1236413, at *8–17 (W.D.N.Y. 2019), and *Ying Jing Gan*, 996 F.2d at 530–33, the courts addressed only whether the individual prosecutor-defendants were entitled to absolute immunity from damages in their individual capacities for advocacy conduct—the decision to prosecute and the conduct of the prosecution. That immunity is personal to the prosecutor; it has no bearing on whether the County itself may be held vicariously liable under New York law for its agents' non-advocacy, administrative, and investigative conduct performed within the scope of their employment—the issue presented here.

### E.     The Town's Respondeat Superior Objection Is Foreclosed.

The Town does not argue that the repleaded respondeat superior claim is substantively futile as to it. It argues only that Plaintiff failed to serve a proper notice of claim—and concedes that this Court already denied its motion to dismiss on that very ground. Town Decl. ¶¶ 47-49; *see* Feb. 20, 2026 Dec. (Dkt. 45). A defense the Court has already rejected is no basis to deny leave to amend, and the Town offers no reason to revisit the ruling. The Town's respondeat exposure is,

16

moreover, the ordinary liability of a municipal employer for the on-duty torts of its own police officers. The claim is not futile as to the Town.

## III.      The Estate of John B. Askey Is Properly Added.

The Town's principal argument is that the proposed defendant "John Doe as Executor of the Estate of John B. Askey" cannot be sued because no estate has been opened and no representative appointed. Town Decl. ¶¶ 3-12. That objection does not make the amendment futile. It identifies a curable, ministerial defect that Plaintiff is able to cure.

### A.      Any Capacity Defect Has Been Cured.

Chief Askey died on May 20, 2023. Plaintiff initially named "John Doe as Executor of the Estate of John B. Askey" because no representative had yet been appointed—a placeholder device that courts routinely permit when a deceased party's estate has not yet been probated or administered. Following the Town's submission, Plaintiff searched the Erie County Surrogate Court's files and located a Will for John B. Askey that had not yet been probated. Droubi Decl. ¶ 7. After contacting the Erie County Surrogate's Court, Plaintiff identified the actual Executor: David Askey. *Id*. ¶ 15, Ex. 3. This discovery moots the Town's argument. Accordingly, Plaintiff requests that the Court accept the revised proposed First Amended Complaint, which substitutes "David Askey as Executor of the Estate of John B. Askey" for "John Doe as Executor of the Estate of John B. Askey." *Id*. Ex. 5.

In any event, Federal Rule of Civil Procedure 17(a)(3) confirms the point: an action is not to be dismissed for failure to name the real party in interest "until, after an objection, a reasonable time has been allowed" for the proper party to be substituted. Granting leave now is the orderly course and prejudices no one. The Town's authorities are not to the contrary. *Matter of Foreclosure of Tax Liens (City of Newburgh)*, 165 A.D.3d 1112, 1117 (2d Dep't 2018) addressed a final judgment entered against deceased owners for whom no representative was ever appointed, not a

17

pending motion for leave in which the movant has properly identified the executor prior to the Will being probated. And *Chunn v. Amtrak, P.O.*, 916 F.3d 204, 208 (2d Cir. 2019) denied leave to add a defendant only because the proposed claim "turns on the same transfer" as a claim that had already failed and "fail[ed] for the same reasons"—a futility on the merits. Here, by contrast, the claims against the Estate are meritorious, and Plaintiff identified the appropriate Executor after thorough due diligence.

      **B.**      **The Claims Against the Estate Are Timely.**

The Town's fallback—that the New York State-law claims against Askey are time-barred under General Municipal Law § 50-i—does not defeat leave either. The federal claims against the Estate are governed by the three-year period Section 1983 borrows from CPLR 214(5), not § 50-i. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). And Ms. Lynch's claims arising from her wrongful conviction did not accrue until the criminal proceedings terminated in her favor. *McDonough v. Smith*, 588 U.S. 109, 117-19 (2019). In any event, the amendment relates back to the original, timely complaint: the claims against Askey arise out of the same conduct, transaction, and occurrence pleaded from the outset, Askey is united in interest with the Town and the officers he supervised, and the Estate knew or should have known that, but for Askey's death, it would have been named. Fed. R. Civ. P. 15(c)(1)(B)-(C); CPLR 203(b), (f); *Buran v. Coupal*, 87 N.Y.2d 173, 178 (1995).

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the proposed First Amended Complaint—save for the withdrawn access-to-courts claim—and grant such other and further relief as the Court deems just and proper.

18

Dated: New York, New York
        July 20, 2026

**FISHER & BYRIALSEN PLLC**
99 Park Avenue, PH Suite / 26th Floor
New York, NY 10016
(303) 256-6345

/s/ Jane Fisher-Byrialsen_____
Jane Fisher-Byrialsen
David Nathan Fisher

**BELDOCK LEVINE & HOFFMAN LLP**
99 Park Avenue, PH Suite / 26th Floor
New York, NY 10016
(212) 490-0400

Luna Droubi
Marc Cannan
Karen Dippold
Tala Alfoqaha

**NEWIRTH LINEHAN PLLC**
99 Park Avenue, PH
New York, NY 10036
(917) 426-5551

Karen A. Newirth
Charles F. Linehan

*Attorneys for Plaintiff Renay Lynch*

19