NEWIRTH
LINEHAN

October 27, 2026

**VIA ECF and E-Mail (**mccarthy@nywd.uscourts.gov)
Hon. Jeremiah J. McCarthy
United States Magistrate Judge
United States District Court for the Western District of New York
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

Re: *Lynch v. Town of Amherst, et al.*, No. 1:25-cv-75 (LJV)(JJM)
Plaintiff's Agenda for the October 28, 2026 Status Conference

Dear Judge McCarthy:

We represent Plaintiff Renay Lynch and write in advance of the October 28, 2026 status conference. Discovery has stalled against both defendant groups. Amherst has not responded at all, to Plaintiff's deficiency letter or to any request to meet and confer (Part I). The County has engaged but resists on related grounds: it seeks to bifurcate most of Plaintiff's Monell discovery (Part II.A), withholds discovery as if the pleadings were unsettled (Part II.B), presses objections that Plaintiff's narrowing resolves (Part II.C), and has not met threshold obligations on ESI, verification, and completion (Part II.D). Because the case-management deadlines lapsed while these disputes went unresolved, the schedule must also be reset (Part III). Plaintiff asks the Court to take up these related issues together on October 28 and to enter a new case management order.

## I. The Town of Amherst Has Not Responded to Plaintiff's Deficiency Letter or to Any Request to Meet and Confer

Plaintiff's October 9 letter sets out the history. (Dkt. 94.) Plaintiff served document requests and interrogatories on December 15, 2025. On March 6, 2026, the Town of Amherst and the Individual Amherst Defendants (together, "Amherst") served unverified and incomplete interrogatory answers and an incomplete production with no privilege log. Amherst has not responded to Plaintiff's July 28, 2026 deficiency letter, to her repeated follow-ups, to her requests for the status of its insurance search, or to her repeated requests to meet and confer. Plaintiff asks the Court to direct Amherst, within fourteen days, to (a) respond in writing to the deficiency letter; (b) produce all responsive documents, serve verified and complete interrogatory answers, and serve a privilege log at the conclusion of its production; and (c) disclose the results of its forensic insurance search, including who conducted it, what was searched, and any policy located. In the alternative, Plaintiff asks the Court to set a schedule for a motion to compel, and Plaintiff will seek her fees and expenses under Fed. R. Civ. P. 37(a)(5).

## II. Disputes Between Plaintiff and the County of Erie Require Judicial Intervention

Plaintiff served her first interrogatories and document requests on the County on February 19, 2026, and the County responded on April 13 and August 14, 2026. After a deficiency letter and meet-and-confer sessions on August 24 and September 3, Plaintiff sent the County a chart on September 18 setting out each request as served and as narrowed, and the County returned it with its replies on October 2. For the Court's reference, the County's reply chart is attached as Exhibit A. On October 14, the parties agreed to bring the remaining disputes to the Court.

### A. Bifurcation or Sequencing of *Monell* Discovery Is Not Warranted

The County proposes to stay and bifurcate sixteen requests that seek evidence related to Plaintiff's *Monell* claim: Interrogatories 4, 5, 6, 9, 10, 11, 12, and 15 and Requests 9, 10, 12, 13, 14, 15, 16, and 18. (*See* Exhibit A.) The parties agreed to ask the Court whether this dispute can be resolved without motion practice.None of the reasons to bifurcate—independent proof, efficiency, good cause—is present here, while all of the reasons not to bifurcate—undue delay, substantial prejudice to Plaintiff, minimal if any prejudice to Defendants—are.

Courts bifurcate *Monell* claim discovery because "the evidence needed to show a 'policy and custom' on behalf of the municipal entity is often unnecessary in the suit against the individual official," and because a verdict for the individual officers can moot the municipal claim. *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999). Here no ECDA prosecutor is a defendant and so no first phase of discovery can resolve the issue. *Cf. Dixon v. City of Buffalo*, No. 1:19-cv-01678 (WMS)(JJM), Dkt. 73 (W.D.N.Y. Mar. 8, 2022) (bifurcation motion granted where ADA was an individual defendant). Plaintiff must prove them against the County, from the same ECDA files and the same witnesses she needs to prove policy and custom. Sequencing would require Plaintiff to prove the underlying violations at summary judgment or trial, and then return to discovery for her *Monell* proof, potentially requiring two depositions per witness and further delaying litigation. "[F]ar from advancing judicial economy and convenience, this approach would invite redundancy and waste." *Boyd v. City of Buffalo*, No. 1:22-cv-00519 (LJV)(JJM), Dkt. 104 at 6–7 (W.D.N.Y. May 19, 2023) (*quoting Palma v. Montgomery County, Maryland*, 598 F. Supp. 3d 288, 300 (D. Md. 2022)).

The County's reliance on *Dorsey v. Gannon*, No. 22-2735, 2024 WL 1338772 (2d Cir. Mar. 29, 2024) (summary order), is misplaced: *Dorsey* addresses the elements of *Monell* liability at summary judgment, not the sequencing of discovery. Judge Vilardo has twice sustained Plaintiff's *Monell* claim against the County and declined to limit it to particular theories. (Dkt. 45 at 9–10; Dkt. 78 at 4–5.) In the face of these decisions, the County has offered no basis to conclude that Plaintiff will not be able to make the threshold showing necessary to establish *Monell* liability, such that "bifurcation will only defer, but not eliminate, the need for *Monell* discovery." *Boyd*, Dkt. 104 at 7.

On the other hand, a stay and bifurcation would severely prejudice Plaintiff, given the age of the underlying wrongful conviction, this civil rights action, the age and health of critical witnesses, and Plaintiff's own precarious health. *See Boyd*, Dkt. 104 at 8 (*citing Casaccia v. City of Rochester*, 2020 WL 1042149, at *3 (W.D.N.Y. 2020)). By contrast, any prejudice to the County

would be minimal, because bifurcation will not eliminate the need for the County to produce discovery or materially alter the amount of discovery to be produced. *See Boyd*, Dkt. 104, at 8. Finally, the County's delay in seeking a stay and bifurcation further counsels against it. The Case Management Order was entered a year ago (Dkt. 37), and the County has disputed the scope of these discovery requests since April without actually moving to bifurcate. In August, it advised it would move to bifurcate within weeks, then in September, advised it would table the issue, and finally revived it only after Plaintiff narrowed her requests. As in *Boyd*, this delay undermines any claim that good cause for bifurcation exists. *Id.* at 6. Plaintiff asks the Court to advise the County that bifurcation or sequencing is not warranted and to direct it to respond to Plaintiff's discovery requests, as narrowed, by a date certain.

### B. The Pending Motion to Amend Is Not a Basis to Withhold Discovery

The County's objection that "the operative pleading remains unresolved" fails. The operative pleading is the Complaint (Dkt. 1), on which Judge Vilardo denied both the County's motion to dismiss and its motion for reconsideration. (Dkt. 45; Dkt. 78; *see* Dkt. 72.) Every one of Plaintiff's requests, each served before she moved to amend (Dkt. 79), rests on allegations in the Complaint: the ECDA's policies and its lack of any manual, training, discipline, or record of prosecutorial misconduct (Dkt. 1 ¶¶ 469–491); the pattern of ECDA *Brady* and summation violations, including "numerous judicial decisions, dating back to the 1960s" (*id.* ¶¶ 492–529); Mr. Sedita's promotion and election as District Attorney (*id.* ¶¶ 530–531); and the CIU's reinvestigation, the conditions the ECDA placed on its support for vacatur, and District Attorney Flynn's public statements (*id.* ¶¶ 346–366, 465(c)–(d), 475). Those vacatur facts support the *Monell* claim and remain discoverable even though Plaintiff has withdrawn the access-to-courts claim from her proposed amended complaint.

### C. The County's Remaining Objections to Plaintiff's Narrowed Requests Should Be Overruled

The County's individualized objections to the sixteen deferred requests are overbreadth, burden, and vagueness. Plaintiff's narrowing of her requests resolves each of these objections. Plaintiff limited the training, policy, and discipline requests to the decade surrounding her prosecution, and the training-materials request from thirteen subject areas to five (Interrogatories 4 and 10; Request 13); limited the pattern-decision requests to decisions issued on or after January 1, 1985 (Interrogatories 5, 6, and 9; Request 16); withdrew her demands for salary records, performance evaluations, win-loss lists, and complete personnel files (Requests 14 and 16); confined the budget request to training and supervision line items for 1995 through 2004 (Request 12); offered to accept the County's litigation index for prior lawsuits (Interrogatory 15) and documents identifying each disciplinary matter in place of the investigative files (Request 18); withdrew her demand for public court filings (Request 10); and defined every term the County called vague (Interrogatories 4, 10, 11, and 12). The County dismisses these concessions as "purported" narrowing.

The County also maintains its objections to requests it does not propose to defer: Interrogatories 1, 2, 3, 7, 8, 14, and 16 and Requests 2, 3, 4, 5, 7, 8, and 17. These requests seek the identities of the ECDA personnel who worked on Plaintiff's prosecution, post-conviction review, and vacatur;

the ECDA's files on the Cicelsky murder, its witnesses, and the Amherst officers; its *Brady*, *Giglio*, and *Rosario* compliance records for Plaintiff's case; and what the ECDA knew about witness inducements, officer credibility, and decisions not to pursue other suspects. Plaintiff narrowed these as well, limiting Interrogatory 1 and Request 2 from the entire office over nearly thirty years to the Homicide Bureau during two periods and those who worked on her case, and Interrogatory 7 from "any police officer" to the officers who wrote reports or testified. The County stands on vagueness, compound-question, and burden objections, relies on Rule 33(d) to refer Plaintiff to an ECDA file it has produced only in part, and limits its inquiry to personnel who "remain within the County's control." Plaintiff asks the Court to overrule these objections and direct the County to respond to all of Plaintiff's requests as narrowed in Exhibit A.

### D. The County Has Not Met Its Threshold Discovery Obligations

Since April 2026, the County has represented that it is searching the ECDA's materials "using ordinary search protocols and means," without identifying any custodian, source, date range, or search term. Plaintiff asked for that information and an overview of the County's systems on July 13 and July 28. *See* Fed. R. Civ. P. 26(f)(3)(C). On August 24, the County acknowledged that it had no record of the ECDA's systems over the life of the case and committed to identify the 2018-forward CIU and post-conviction system by September 3. It has not done so. On September 25, it instead faulted Plaintiff for not proposing search terms, while conceding that systems and sources "would be difficult for Plaintiff to identify" and that it is still "continuing to work through understanding the retention and search capabilities" for email. Plaintiff asks the Court to direct the County, within 21 days, to disclose the search terms, custodians, and sources it has used to date, if any, and to identify its email and electronic record systems for the relevant periods and their retention, and to meet and confer on search terms within 14 days thereafter. The County's August 14, 2026 interrogatory answers remain unverified. *See* Fed. R. Civ. P. 33(b)(1)(B), (3), (5). Plaintiff asks that the Court direct the County to serve verifications within 14 days. Nearly eleven months after serving its Rule 26(a)(1) disclosures, the County describes its production as incomplete and has given no anticipated completion date. Plaintiff asks the Court to set one. Finally, despite having answered Plaintiff's interrogatories, the County reserves an objection that they exceed the numerical limit. Plaintiff asks the Court to resolve it now, finding that those interrogatories with subparts are logically or factually subsumed within, and necessarily related to, a single primary question, so that each counts as one interrogatory, and that the County in any event waived the objection by answering them.

## III. The Court Should Enter a New Case Management Order

Plaintiff proposes that fact discovery be completed by March 1, 2027; that each party serve expert disclosures and reports on issues on which it bears the burden of proof by May 3, 2027, and all other expert disclosures and reports by June 1, 2027; that expert depositions be completed by August 2, 2027; that dispositive motions, including motions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), be filed by October 1, 2027; and that, if no dispositive motions are filed, the parties contact Judge Vilardo's chambers by November 1, 2027 to schedule trial.

We thank the Court for its consideration.

Respectfully submitted,

Karen A. Newirth
On behalf of all counsel for Plaintiff

Enclosure
cc: All counsel of record (via ECF)