**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| **INTERROGATORIES** | | | |
| **1** | Identify each attorney employed by the ECDA (full- or part-time) from May 1, 1995 to December 31, 2024. | NARROWED. Identify each attorney employed by the ECDA (full- or part-time) in the Homicide Bureau between May 1, 1995–December 31, 2004 and January 1, 2013–December 31, 2024 and any attorney who participated in Lynch's case at any point and in any way, regardless of period. | The County maintains its objection that this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case under Fed. R. Civ. P. 26(b)(1). The County acknowledges Plaintiff's narrowing but maintains that the request for all Homicide Bureau attorneys across two decades remains irrelevant and disproportionate. As for Plaintiff's additional request that the County identify "any attorney who participated in Lynch's case at any point and in any way, regardless of period", the County objects on the grounds the use of the terms "any" are overbroad, vague and unduly burdensome, particularly given that Plaintiff's claims span decades, necessitating reliance on the documentary records of the proceedings, which are being disclosed in this lawsuit. The County thus invokes and relies on Fed. R. Civ. P. 33(d). |
| **2 (revised)** | Identify each person who, during 1998, held final policymaking authority for the ECDA over the office's policies, practices, customs, training, supervision, and discipline governing the prosecutorial and investigative conduct at issue, including Brady and Rosario disclosure and documentation, supervision of line prosecutors and their collaboration with police in homicide investigations, witness and suspect interviews, interrogations and inducements, jailhouse-informant testimony, evidence derived from police identification, interrogation and forensic procedures, records concerning misconduct, witness credibility and personnel, and the investigation and discipline of prosecutorial misconduct. | SUPPLEMENT REQUIRED. The answer identifies the elected District Attorney only. Any individuals to whom the identified prosecutorial and investigative conduct was delegated is a question of fact that must be answered. The reference to personnel means record keeping concerning personnel. If you require that the interrogatory be reframed, we propound the following revision: Identify each person who was responsible for the following subject areas in 1998: Brady and Rosario disclosure and documentation, supervision of line prosecutors and their collaboration with police in homicide investigations, witness and suspect interviews, interrogations and inducements, jailhouse-informant testimony, evidence derived from police identification, interrogation and forensic procedures, records concerning misconduct, witness credibility records/files, personnel records/files, and the investigation and discipline of prosecutorial misconduct. | The County maintains its objections as stated in its August 14, 2026 response. The County objects that "final policymaking authority" is a question of law under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), not a factual question to be resolved through interrogatory responses. The County further maintains its objections to the presumptions embedded in the interrogatory, including that ADAs engaged in "investigative conduct at issue in this action" and that the ECDA maintained records concerning "police misconduct and/or witness credibility." Without waiving these objections and without conceding the legal characterization of any individual's authority, as stated in response to Plaintiff's Request for Production No. 11, the County will produce organizational charts or their equivalent for 1998, 2013, and 2023, to the extent such documents exist and are reasonably accessible. |
| **3** | State whether, prior to or during Plaintiff's prosecution, the ECDA was aware of any threats, warnings, inducements, promises, benefits, or potential criminal exposure communicated to any suspect, witness, or potential witness in connection with the Cicelsky Murder; identify each such person; describe the information known; identify when and how the ECDA | Rule 33(b)(1)(B) requires a reasonable inquiry, which means inquiry of persons with knowledge and not only a file review; that witnesses are retired or out of state speaks to diligence, not to the obligation. State what inquiry was made and of whom. | The County maintains its response as stated in its August 14, 2026 response, including its objection that this Interrogatory contains numerous discrete subparts and is ambiguous. The County's inquiry has included consultation with available personnel to the extent individuals remain within the County's control, in addition to its file review. However, most individuals involved in the investigation and prosecution of |



10806562v4

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | became aware; and state what actions were taken in response. | | Plaintiff's case are retired, deceased, or no longer employed by the ECDA, which necessarily limits the scope of the County's inquiry. The County will continue to supplement pursuant to Rule 26(e) as its review continues. |
| 4 | State whether the ECDA had any process for investigating or disciplining ADAs for failing to comply with Brady v. Maryland and its progeny, People v. Rosario, or rules pertaining to trial advocacy, and if so describe the process in detail. | NARROWED: limited to May 1, 1995 through December 31, 2004. With the period supplied, answer the interrogatory. The response states that "As licensed attorneys, the ADAs employed by the ECDA were subject to the supervisory authority and disciplinary rules applicable to all licensed attorneys," and objects "to the extent this Interrogatory implies a formal 'process' for investigating or disciplining ADAs was or is required." Read together, those statements say that the office maintained no internal mechanism for investigating or disciplining ADAs for Brady, Rosario, or trial-advocacy violations and relied instead on the disciplinary rules governing the bar generally. If that is the County's position, verify it and the interrogatory is answered. If it is not, describe the mechanism that did exist.<br><br>The vagueness objection fails. "Process" means any mechanism, formal or informal, by which an allegation that an ADA failed to comply with Brady, Rosario, or trial-advocacy obligations was received, reviewed, investigated, adjudicated, or acted upon — including written policy, standing practice, referral to a supervisor or bureau chief, referral to a grievance committee, and ad hoc handling by the District Attorney or executive staff. "Rules pertaining to trial advocacy" means the New York Rules of Professional Conduct governing a prosecutor's conduct at trial, and the standards addressed in the decisions listed in Document Request No. 9, including improper summation, improper argument, and the misuse of evidence or testimony. | The County maintains its objections as stated in its August 14, 2026 response, including that the terms "process" and "trial advocacy" were and remain vague and ambiguous. The County acknowledges Plaintiff's narrowing to May 1, 1995 through December 31, 2004 but aside from supplying a time period, Plaintiff's purported narrowing fails to address the extent of the County's objections. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| 5 | For each appellate decision listed in Document Request No. 9, identify the ADA or ADAs who conducted the underlying trial. | NARROWED: limited to the decisions in Request No. 9 issued on or after January 1, 1985. | The County maintains its objections as stated in its August 14, 2026 response, including that this Interrogatory is dependent upon and premature pending resolution of the County's objections to Request No. 9, and that most of the listed cases fall outside the relevant time period. The County acknowledges Plaintiff's narrowing to decisions issued on or after January 1, 1985, though that proposal does not remedy the objections previously set forth. Based upon Plaintiff's |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | | | position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **6** | For each ADA identified in response to Interrogatory No. 5, state whether the ADA was investigated or disciplined for misconduct in the prosecution that was the subject of the decision, and if so the date and a detailed description of the discipline imposed. | Follows Interrogatory 5 as narrowed. Same date limitation (decisions issued on or after January 1, 1985). "Misconduct" is defined by the request itself — Brady, Rosario, statutory discovery, and trial-advocacy/summation violations. Privacy is already resolved: the Stipulated Protective Order (Dkt. 53) expressly covers personnel information and PII and provides an Attorneys' Eyes Only tier; privacy is a designation issue, not a basis to withhold. | The County maintains its objections as stated in its August 14, 2026 response, including that this Interrogatory is contingent upon Interrogatory No. 5 and that the term "misconduct" was and remains vague. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **7** | State whether, prior to or during Plaintiff's prosecution, the ECDA possessed, reviewed, or was otherwise aware of any information calling into question the credibility of any police officer who testified or whose work was relied upon in Plaintiff's prosecution, including complaints, allegations of misconduct, or prior judicial findings; and if so identify the officer, describe the information, and state whether and when it was disclosed to the defense. | NARROW "any police officer" to Melton, LaCorte, Klimczak and Chief Askey, plus any APD officer who authored a report in connection with the Cicelsky investigation/Plaintiff's prosecution or testified in connection with Plaintiff's prosecution. As with Interrogatory 3, Rule 33(b)(1)(B) requires inquiry of people, and the response must reach the County including the ECDA and the CIU. State what inquiry was made and of whom. | The County maintains its objections as stated in its August 14, 2026 response. While the County acknowledges Plaintiff's narrowing to the identified officers, Plaintiff's proposal falls short of addressing the County's remaining objections, including that the request for "information calling into question the credibility" is vague and ambiguous. The County remains willing to confer further relative to this request. |
| **8** | State whether the ECDA participated in, approved, or was consulted regarding any decision not to investigate, arrest, or prosecute any suspect in the Cicelsky Murder, and if so identify the prosecutors involved, describe the information considered, and state the basis for the decision. | Not compound: participation, approval, and consultation are three modes of the same involvement, subsumed within one primary question. The non-answer is contradicted by the County's production and known facts regarding Walker and other potential suspects. County must state whether it asked any person to obtain its answer, or only searched documents — a "not aware" answer built solely on an incomplete document review does not satisfy Rule 33. | The County maintains its objections and its response as stated in its August 14, 2026 response, including that this Interrogatory is compound and that terms such as "participated in" and "consulted regarding" are vague. The County objects to the characterization that its response is "contradicted" by the County's production. To the extent Plaintiff identifies specific documents in the County's production that it contends are inconsistent with this response, the County will review and address them. The County reserves its right to supplement pursuant to Rule 26(e). |
| **9** | In addition to the ADAs identified in response to Interrogatory No. 5, state whether any other ADA was ever disciplined for failing to comply with Brady, Rosario, or other discovery obligations, or with trial-advocacy rules, and if so identify each ADA, the defendant's name, the indictment and docket numbers, the citation to any decision discussing the conduct, the | NARROWED: limited to January 1, 1985 to the present and to disciplinary records the ECDA maintained. If ECDA did not maintain any such records during the time period, so state. | The County maintains its objections as stated in its August 14, 2026 response, including that this Interrogatory is unduly burdensome, cumulative, and disproportionate. Plaintiff's purported "narrowing" of the time period fails to substantively account for the County's articulated objections, which remain equally applicable under a time period that still spans nearly forty years. Based upon Plaintiff's position to date, the |



10806562v4

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | date discipline was imposed, and a detailed description of the discipline. | | County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **10 (revised)** | State whether ADAs employed by the ECDA prior to May 1, 1995 received any training concerning one or more of the subject areas listed in Interrogatory No. 2, and if so identify each person who provided the training and all training materials provided. | NARROWED: limited to January 1, 1985 to May 1, 1995. "Training" is defined to include formal continuing legal education, in-house programs, written guidance, and structured supervision or mentoring. With the term defined, answer. | The County maintains its objections as stated in its August 14, 2026 response, including that the term "training" was vague and the time period was overbroad and indefinite (no starting date). The County acknowledges Plaintiff's narrowing to January 1, 1985 through May 1, 1995, but Plaintiff's purported definition of "training" merely adopts the substance of the County's objection. The County further notes that records from this period, 31 to 41 years ago, may be incomplete or unavailable. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **11** | State whether the ECDA had any handbook(s), manual(s), or other document(s) during 1995–1998 setting forth the office's policies with respect to the subject areas described in Interrogatory No. 2, and if so identify them. | The request is confined to 1995–1998 and asks only for identification, not production. Whether written policies existed in those four years is a threshold fact and a yes-or-no answer the County can give now. If "other document(s)" is the difficulty, Plaintiff will accept: handbooks, manuals, written policies, written procedures, directives, memoranda of office-wide application, and training outlines. | Plaintiff's purported proposed position fails to address the balance of the County's objections set forth in response to this Interrogatory, including that subject areas for which these materials are sought remain overly broad, vague and ambiguous. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **12** | Describe the practice, if any, of the ECDA to maintain a record or otherwise keep track of complaints against individual ADAs that were made directly to the District Attorney or other executives or supervisors at the ECDA, or in the course of criminal appeals or post-trial motions. | REVISED and NARROWED: "Practice" is defined to include formal written policy, written procedure, informal custom, and ad hoc handling; the period is January 1, 1986 through January 5, 2024. Plaintiff will not divide the interrogatory. The two intake channels describe the scope of a single record-keeping practice, not discrete subparts, and whether any system existed is the question presented. | The County acknowledges Plaintiff's definition of "practice" and the specified time period. However, the County maintains that the period January 1, 1986 through January 5, 2024 — spanning nearly 40 years — is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1). Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **13** | State whether the County had or has any insurance policy covering claims against the County and/or | Withdrawn on the County's representation that no responsive policy exists. | No further response required. |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | ECDA employees for misconduct by ECDA prosecutors from May 1, 1995 to the present, and if so identify the carrier and the dates of coverage. | | |
| **14** | Identify all individuals involved in the decision to condition the ECDA's support for Plaintiff's motion to vacate on Plaintiff moving for relief only under CPL § 440.10(1)(h) — not under (1)(b) or (1)(g) — and all documents reflecting discussion and decisionmaking regarding same. | Rule 26(b)(1) reaches matter relevant to any party's claim or defense, and Rule 34 reaches any party's documents. On the September 3 call the County confirmed it does not dispute its obligation to produce material relevant to claims against other defendants. The conditioning decision is itself evidence on the claims against the Individual Police Defendants: ADA Lesh's November 29, 2023 affirmation acknowledged the false fingerprint testimony and the suppressed exculpatory prints. Withdrawal of the Sixth Cause does not make the underlying facts undiscoverable, as the same conduct grounds the Monell claims (and there is no basis to bifurcate discovery) and the civil conspiracy claim, which has the same underlying acts as the upheld Monell theory. NARROWED: (i) the identity and title of each participant, which are facts and not work product; (ii) the fact, terms, and timing of the condition; and (iii) all ECDA communications with third parties concerning the condition, which carry no privilege. Serve a log for anything withheld; Plaintiff will address internal deliberative materials after reviewing it. | The County maintains its objections as stated in its August 14, 2026 response. Notwithstanding the foregoing, the County acknowledges Plaintiff's narrowing, reserves all objections and does not waive privilege or other applicable protections. With respect to Plaintiff's narrowed categories: (i) the County will identify, to the extent not privileged and to the extent reasonably ascertainable, the individuals involved and produce non-privileged ECDA communications with third parties in its possession, custody and control and will log any privileged communications on its privilege log. The County objects to Plaintiff's characterization concerning "the fact, terms and timing of the condition" as vague, ambiguous constituting attorney argument. |
| **15** | Identify by caption and index or docket number each lawsuit brought against the County and/or an ECDA employee, from January 1, 1986 to the present, alleging non-compliance with Brady, Rosario, and/or trial-advocacy rules, including summation conduct. | NARROWED: to 1990–2024, limited to actions in which the County was served and appeared, identified from the County Attorney's and its insurers'/outside counsel's litigation records rather than a re-review of case files. "Unsubstantiated" is not a limiting principle — notice is the Monell element, so allegations count regardless of outcome. Alternatively, the County can produce its litigation index or docket list for the period and we will review ourselves. | The County maintains its objections as stated in its August 14, 2026 response, including that this Interrogatory is overbroad and disproportionate to the needs of this case. Plaintiff's purported "narrowing" of the time period fails to substantively account for the County's articulated objections, which remain equally applicable under the slightly revised time period set forth in Plaintiff's proposed revision. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **16** | Identify by name, title, and role every ADA, investigator, supervisor, or executive who participated in any way in the investigation, prosecution, post-conviction review, or decision to vacate Plaintiff's conviction. | CLARIFIED: the interrogatory asks for each person who participated in one or more of the four categories, identified by which category or categories. "Participated" means performed work on, supervised, or made a decision concerning the matter. The reference to "ECDA's file" is not an answer: Rule 33(d) permits reference to business records only where the burden of | The County maintains its objections as stated in its August 14, 2026 response. |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | | ascertaining the answer is substantially the same for both parties, which cannot be true of a file the County has produced only in part and describes as incomplete. The identity of participants is not contingent on any operative complaint. Identify the CIU and post-conviction participants. | |
| **REQUESTS FOR PRODUCTION** | | | |
| **1** | All documents providing any of the information requested in the preceding Interrogatories. | WITHDRAWN by Plaintiff's July 13, 2026 correspondence. | No response required. |
| **2 (narrowed)** | NARROWED: Documents sufficient to show the job title or position and the starting and ending dates of employment of each attorney and investigator assigned to the Homicide Bureau and/or the Trial Bureau of the ECDA from May 1, 1995 through January 5, 2024. (Original: every ECDA attorney and investigator, May 1, 1995–December 31, 2024.) | NARROWED: to each attorney and investigator assigned to the Homicide Bureau or who had any involvement with the prosecution of Lynch, the investigation of the Cicelsky murder, or the investigation or prosecution of any witness or alternate suspect identified in the Complaint from May 1, 1995 through January 5, 2024. | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1), as it continues to seek documents regarding individuals unrelated to this lawsuit over a thirty-year period. Without waiving its earlier objections, and consistent with Plaintiff's narrowed Request for Production at No. 11, the County will produce organizational charts or their equivalent for 1998, 2013, and 2023, to the extent such documents exist and are reasonably accessible. |
| **3** | All documents concerning the Cicelsky Murder, including the ECDA's case and prosecutorial files for Plaintiff; police-prepared documents (P-73 and other reports, evidence vouchers, photographs, diagrams, witness statements signed or unsigned, audio recordings, NYSIIS reports or rap sheets, arrest warrants, complaints, notes, correspondence, memoranda); witness custody, relocation, and payment records; discovery, Rosario, and Brady/Giglio material produced to Plaintiff and documents showing the dates of disclosure; all pre-trial, trial, and post-trial transcripts, pleadings, motion papers and orders, including CPL Art. 330 and 440 motions and federal habeas; all grand jury transcripts and exhibits; correspondence, notes, transcripts and memoranda containing witness statements or factual material, references to discovery or Brady/Rosario materials or whether to produce them, or the basis for initiating or continuing the prosecution; and all materials relating to any post-trial review or reinvestigation by the District Attorney, his executive staff, the CIU, any ADA, APD, the Tonawanda Police Department, or any other officer | Plaintiff acknowledges the transcripts identified in the County's response and does not renew subpart (h) as to them. Produce, in Bates sequence, with a written certification of completeness per subpart: (a) all APD-to-ECDA transmittals, cover letters, receipts, evidence logs, submission requests and acknowledgments, 1995–1998 — small in volume, sole-source, and the direct record of what the prosecution received and when; (b) the complete ECDA case file as held, including the APD investigative material in its possession, the out-of-sequence Bates in the existing production confirming it is partial; (c) all latent-print materials without limitation, including the August 1995 submission records reflecting five prints, every comparison request and result, and the November 2020 comparisons and disclosures; (d) witness custody, relocation, and payment records. The objection that the request "presumes the existence of materials" is answered by stating, per subpart, whether responsive materials exist, whether production is complete, and if not what remains and by when. The referenced privilege log has never been served. Nearly five months later, Plaintiff still cannot identify what has been withheld from the ECDA | The County has produced and continues to produce documents responsive to this Request on a rolling basis. The County objects to the demand to "Produce in Bates sequence with certification of completeness per subpart" as exceeding the obligations imposed by the Federal Rules and unduly burdensome. |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | or investigator. (Abbreviated — see the February 19, 2026 demands for the full text.) | file or on what basis. Serve the log, and the Rule 34(b)(2)(C) statement of what is being withheld from each request. | |
| **4** | All documents concerning any investigation or prosecution of Plaintiff for any crime other than the Cicelsky Murder. | The request is confined to Plaintiff herself, so the third-party privacy objection has no application and any legitimate privacy concerns can be addressed through selective redaction or production pursuant to the parties' Protective Order (Dkt. 53). The request seeks relevant information as the Complaint alleges that Plaintiff's criminal history created a vulnerability exploited by investigators to obtain her wrongful conviction in this case. Produce the ECDA file for any other investigation or prosecution of Plaintiff, including all records of charging decisions, plea discussions, and any consideration given or withheld. Identify the status of the search, what it has identified, and which materials the County contends require a court order and on what statutory basis, so that any necessary application can be made now rather than after the fact discovery cutoff. | The County maintains its objections and the response set forth in its April 13, 2026 response. Plaintiff's proposed position merely reiterates and restates the request, and as such, no further response is required. |
| **5** | All documents and communications sent or received by the ECDA concerning any threats, warnings, admonitions, inducements, promises, benefits, payments, relocation assistance, favorable treatment, or potential criminal exposure communicated to any witness or potential witness in connection with the Cicelsky Murder or Plaintiff's prosecution, including but not limited to communications concerning Raquel Hunter, Kareem Walker, Gregory Weaver, David Lanfear, or any other individual believed to possess information concerning the Incident. | The County limited its search to indictment number 97-0306. The request is not so limited and cannot be: Raquel Hunter's other prosecutions, her prior cooperation with the office, and records concerning Gregory Weaver and David Lanfear are by definition outside the Lynch indictment file. Confirm that the search will extend beyond that file. As to Hunter, the demand includes every other ECDA prosecution of Hunter and every prior informant or cooperation relationship between Hunter and the office. Third-party privacy is answered by the Protective Order (Dkt. 53); criminal prosecutions are not sealed; anything withheld must be logged. As to Kareem Walker, produce everything bearing on when the ECDA or APD learned he was out of state. Walker and Gregory Weaver are different people and different theories: Walker is the man named in the coerced statements who was in Florida at the time of the crime; Weaver is an alternate suspect. Respond as to each separately. "Communications" is not vague. Rule 34 reaches documents and electronically stored information, and the term is used in the ordinary sense of any writing, correspondence, note, memorandum, email, text message, or recording. The privilege log committed to in this response has not been served. | The County maintains its objections as stated in its April 13, 2026 response, including that the term "communications" is vague, that the Request is overbroad and unduly burdensome, and that it seeks privileged materials. The County's served response stated that it was searching materials relative to indictment number 97-0306. The County acknowledges and will continue to assess Plaintiff's position that the request extends beyond the indictment file. |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| **6** | All documents concerning any arrest, interrogation, or prosecution of any suspect for any alleged crime, including the Cicelsky Murder. | WITHDRAWN by Plaintiff's July 13, 2026 correspondence. | No response required. |
| **7** | All documents reflecting complaints, allegations, disciplinary histories, credibility issues, findings of misconduct, or other impeachment material concerning any police officer involved in the investigation or prosecution of Plaintiff that were known to, reviewed by, maintained by, or accessible to the ECDA prior to or during Plaintiff's prosecution, whether substantiated or unsubstantiated. | The County's sole ground was that the request "would be properly directed only to" the Amherst defendants. On the September 3, 2026 call the County confirmed that it does not dispute its obligation to produce documents relevant to claims against other defendants even where the County is not the named defendant on those claims. That confirmation retracts the objection, and nothing else was asserted. The objection is unsound in any event. The request is not directed at what the Amherst defendants knew; it is directed at what the ECDA held, reviewed, maintained, or could access concerning the credibility of the officers on whose testimony and work the prosecution was built. That is the prosecution's own Kyles v. Whitley obligation, and it is core liability rather than Monell. The request is already confined to the officers in this case, to material in the ECDA's hands, and to the period before and during the prosecution. Produce, or state a ground that survives the County's September 3 confirmation. | The County disputes Plaintiff's characterization concerning the scope of its objections and refers Plaintiff to its remaining objections premised upon overbreadth and relevance. That aside, the County withdraws its objection that this Request is properly directed only to the Amherst Defendants. Plaintiff's purported narrowing does not address the County's remaining objections, including that this request remains overly broad particularly because it has no start date. |
| **8** | All documents concerning the Cicelsky Murder, the investigation and reinvestigation of Plaintiff or any other person for that crime, the ECDA's prosecution and conviction of Plaintiff, and its ultimate agreement to vacate, including the complete contents of any investigative, prosecutorial, or post-conviction file; all police-prepared documents in the ECDA's possession; all documents reflecting the ECDA's compliance with Brady, Giglio, and Rosario in Plaintiff's prosecution, including as to Walker, Hunter, forensic evidence and testing, and witness credibility, cooperation, inducements, benefits or promises, and decisions to disclose, delay, or withhold; documents showing the dates, manner and substance of disclosures to the defense; ECDA–law enforcement communications concerning discrepancies or irregularities in forensic evidence, witness credibility, interrogation practices, identification procedures, or investigative methods; documents showing when the ECDA first became aware of information undermining the integrity of the conviction and all actions taken or not taken; and all materials relating to any post-trial review, | The County's September 3 position resolves most of it. Produce the complete CIU and post-conviction file for this matter, together with the Cicelsky file. The overlap objection is not a ground to withhold. To the extent this request and Request 3 reach the same materials, one production satisfies both; the categories unique to this request — the ECDA's Brady, Giglio and Rosario compliance records, the dates and manner of disclosure to the defense, the ECDA–law enforcement communications concerning irregularities in forensic evidence and witness credibility, when the office first became aware of information undermining the conviction and what it did in response, and the CIU and post-conviction review materials — are not answered by the Request 3 response. Prematurity does not reach this request. The material is evidence on the Second and Fourth Causes of Action against the Individual Police Defendants, which are unchanged from the original complaint, and on the Tenth Cause of Action against the County — Monell liability for the misconduct of prosecutors — which survived the County's motion to dismiss and is pleaded in the operative complaint. The | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, overlaps substantially with Request No. 3, and seeks privileged materials. The County refers Plaintiff to its ongoing Rule 26 production and in response to Request No. 3. The County will produce the CIU and post-conviction file for this matter to the extent not protected by privilege or other applicable protections. To the extent this Request and Request No. 3 reach the same materials, one production satisfies both. |



10806562v4

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | reinvestigation, or assessment by the District Attorney, his executive staff, the CIU, or any ADA. (Abbreviated — see the February 19, 2026 demands for the full text.) | County has confirmed it does not dispute its obligation to produce material relevant to claims against other defendants. The representation that these documents sit largely in one location disposes of the burden objection, and the privilege log committed to in this response has not been served. | |
| **9** | All hearing and trial transcripts, discovery requests and responses, and appellate briefs, and documents sufficient to identify the prosecutors who handled each trial, for the prosecutions underlying 33 listed decisions (People v. Anderson (1966) through People v. Nesbitt (2023)). | NARROWED on both period and form. Period limited to January 1, 1990 through January 5, 2024, conforming to Interrogatory 15 and Document Request No. 18 as narrowed in this chart. In the first instance Plaintiff will accept, for each ADA disciplined, the ADA's name, the case in which the conduct occurred, and the nature and date of the discipline — without the indictment and docket numbers, the citation to any decision discussing the conduct, or the detailed description the interrogatory requests. Plaintiff reserves the right to seek those particulars for individual matters once identified. The contingency objection fails: this interrogatory asks about ADAs other than those identified in response to Interrogatory 5, so it does not depend on resolution of Document Request No. 9. Nor does a relevance objection: how the office disciplined prosecutors for Brady, Rosario, discovery and trial-advocacy violations before and during Plaintiff's prosecution is the deliberate indifference element of the claim the Court sustained, and how it did so afterward is the basis for the policymaker and continuing-conduct allegations the Court declined to limit on June 18, 2026. Likewise, the entire span supports the Monell claims. If the ECDA maintained no record of discipline imposed on its prosecutors during the period, so state. That answer is responsive, and it is the same answer Interrogatories 4 and 12 and Document Request No. 18 call for. | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, and seeks privileged materials. Plaintiff's purported "narrowing" of the time period to January 1, 1990 through January 5, 2024 fails to substantively account for the County's articulated objections, which remain equally applicable under the slightly revised time period set forth in Plaintiff's proposed revision. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **10** | All records of the federal habeas and/or § 1983 proceedings in nine listed cases (Robinson v. Smith (W.D.N.Y. 1978) through Walker v. City of Buffalo), including petitions and complaints, all parties' briefing, hearing and deposition transcripts, discovery materials, and all exhibits; plus all ECDA–law enforcement correspondence in those cases referencing arrest tactics, interrogation techniques, or failure to disclose Brady or Rosario material. | NARROWED substantially: Plaintiff withdraws the demand for the public docket materials — petitions, complaints, briefing, exhibits and transcripts filed in those cases — and will obtain them itself. (To the extent any materials are not publicly available, Plaintiff will advise and renew the demand specifically as to those cases or records.) The County produces only the ECDA–law enforcement correspondence in those matters referencing arrest tactics, interrogation techniques, or the failure to disclose Brady or Rosario material, which is not public and which only the County | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad and unduly burdensome and seeks privileged materials. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | | holds. That reduces the request to a single category of internal correspondence. | |
| **11 (narrowed)** | NARROWED: Documents sufficient to show the organizational structure of the ECDA — including the Homicide Bureau, the Trial Bureau, and the office's supervisory and executive hierarchy — from May 1, 1995 through January 5, 2024. (Original: organizational structure, May 1, 1995–December 31, 2024.) | FURTHER NARROWED: Plaintiff will accept organizational charts or their equivalent for three snapshot years — 1998, 2013, and 2023 — rather than the full period. The "post-dates the prosecution" objection is foreclosed by the June 18, 2026 order sustaining the post-conviction theory. | The County acknowledges Plaintiff's further narrowing to three snapshot years. Without waiving its earlier objections, the County will produce organizational charts or their equivalent for 1998, 2013, and 2023, to the extent such documents exist and are reasonably accessible. |
| **12 (narrowed)** | NARROWED: Documents sufficient to show the ECDA's budgeted and actual expenditures for prosecutor training and supervision, and any requests for funding relating thereto, from May 1, 1995 through January 5, 2024. (Original: the ECDA's annual budget and all funding requests to the County Legislature or Executive and/or the State, May 1, 1995–December 31, 2024.) | FURTHER NARROWED: limited to fiscal years 1995 through 2004, and to the training and supervision line items and any funding requests relating to them. Resources devoted to training bear directly on a failure-to-train theory; that is not an assumption, it is a claim that survived Defendants' motion to dismiss. If the County maintains the objection, state whether responsive line-item records for those ten fiscal years exist and what retrieving them would require. | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1). Plaintiff's purported "narrowing" of the time period fails to substantively account for the County's articulated objections, which remain equally applicable. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **13** | All training materials and policy, procedure, or practice manuals, statements or outlines, for the ECDA generally and/or for the Trial and Homicide Bureaus, written or used between May 1, 1995 and December 31, 2024, in thirteen listed subject areas (Brady and Rosario compliance and documentation; databases of police misconduct and of jailhouse informants, witness criminal histories and benefits; prosecutorial interrogation of witnesses and suspects including coercion and inducements; documentation of witness interviews; collaboration with and supervision of police in homicide cases; development and use of informant testimony; use of evidence derived from police identification, interrogation and forensic procedures; trial advocacy; the role of bureau chiefs and supervisors in ensuring compliance; maintaining personnel records; and discipline of prosecutors for misconduct). | NARROWED: limited to May 1, 1995 through December 31, 2004, and to the subject areas bearing on the conduct in this case — Brady and Rosario compliance and documentation; the development and use of jailhouse-informant testimony; the maintenance of records concerning police-officer credibility and informants; collaboration with and supervision of police in homicide investigations; and the use of evidence derived from police interrogation and forensic procedures. This is Monell category two (office policies in effect at the relevant times). Materials that no longer exist should be identified as such; the County's answer to Interrogatory 11 will largely determine the scope of this request. | The County acknowledges Plaintiff's narrowing to May 1, 1995 through December 31, 2004 and to five (unidentified) subject areas but maintains the remaining objections stated in its April 13, 2026 response. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **14** | All personnel files and personnel-type records for ADAs Frank Sedita III, Rosanne Johnson, John Defranks, Natalie Lesh, and Colleen Curtin Gable, including employment applications, promotional, salary and assignment records, training records, performance evaluations, allegations or complaints of deficient | NARROWED: Plaintiff withdraws the demand for complete personnel files and seeks, for these five named ADAs only: assignment and promotional records; training records; and all allegations, complaints, findings, and disciplinary records concerning Brady, Rosario, discovery, or trial-advocacy misconduct. | The County maintains its objections as stated in its April 13, 2026 response. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | performance or misconduct as to Brady, Rosario, discovery violations or trial advocacy, and records of disciplinary inquiries or actions. | Employment applications, salary records and general performance evaluations are withdrawn. Privacy is addressed by the Protective Order (Dkt. 53). Sedita and Lesh are not peripheral: Sedita was the lead trial prosecutor and later the elected District Attorney, and Lesh signed the ECDA's November 29, 2023 affirmation. | that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **15** | Individual records or files compiling information for May 1, 1995 through December 31, 2024 concerning: the office's overall and trial conviction rates; the trial win-loss records of the five named ADAs and of the Homicide Bureau; the office's appellate success rate; internal memoranda, communications or reports discussing expectations, goals or performance metrics relating to conviction rates, trial outcomes or appellate success; defendants' claims on direct appeal or in post-conviction motions of Brady, Rosario or discovery violations, summation misconduct or other prosecutorial misconduct; and complaints against individual prosecutors for such misconduct. | NARROWED on both period and form. Period limited to January 1, 1990 through January 5, 2024, conforming to Interrogatory 9 and Document Request No. 18 as narrowed in this chart. That removes the first four years of the span the County objects to and ends the request at the dismissal of the indictment rather than the present. Further limited to actions in which the County was served and appeared. In the first instance Plaintiff will accept the captions and docket numbers as identified from the County Attorney's litigation records and those of the County's insurers and outside counsel, rather than a re-review of case files. Alternatively, the County may produce its litigation index or docket list for the period and Plaintiff will identify the responsive matters itself. Either course answers the compilation objection, which is the only burden the County has described. The "unsubstantiated" qualifier is not a limiting principle. Notice is the Monell element, and an allegation of a Brady, Rosario or trial-advocacy violation put the office on notice whether or not it was ultimately substantiated. The "undefined universe" objection is answered by the four subject areas the request already names. This interrogatory and Document Request No. 18 describe the same universe from opposite sides — the claims made against the office, and the office's internal response to them — and should carry the same period. | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1), that certain terms are impermissibly vague, and that unsubstantiated allegations are not probative of notice for *Monell* purposes. Plaintiff's purported "narrowing" of the time period to 1990 through 2024 — which in fact expands the start date from the original May 1, 1995 —fails to substantively account for the County's articulated objections and instead broadens the temporal scope of the request. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **16** | For the prosecutors who handled the trials listed in Requests 9 and 10: all salary, assignment and promotional records; all performance evaluations; all lists of trials and win-loss records; all records of disciplinary complaints, inquiries and actions; all records of referrals to or inquiries from a Departmental Grievance Committee; and all records of other prosecutions in which the same prosecutors were accused of or found to have committed misconduct relating to Brady, Rosario, discovery obligations, trial- | NARROWED to match Requests 9 and 10 as narrowed — decisions issued on or after January 1, 1985 — and limited to disciplinary complaints, inquiries and actions, Grievance Committee referrals and inquiries, and records of other prosecutions involving the same misconduct. Salary records, performance evaluations, and win-loss lists are withdrawn. | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, and seeks privileged materials. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |

**Lynch v. Town of Amherst, et al., No. 1:25-cv-75 (LJV)(JJM)**
**County of Erie's Positions in Reply to Plaintiff's Proposed Discovery Positions — Interrogatories and Requests for Production**

| No. | Request as Served | Plaintiff's Proposed Position | County's Position in Reply |
|---|---|---|---|
| | advocacy rules including summation, or other ethical obligations. | | |
| **17** | All insurance policies arguably covering the County, the ECDA, and/or their employees for any of the misconduct alleged in the Complaints. | The County has answered, and Plaintiff accepts the answer subject to one clarifications. The answer is given "upon information and belief." Confirm that a search was in fact conducted, identify who conducted it and what records were searched, and confirm the answer covers the entire period from May 1, 1995 to the present. | The County maintains its response as stated in its April 13, 2026 response. |
| **18** | All records of internal ECDA disciplinary investigations or actions from January 1, 1985 to the present for alleged misconduct by ECDA prosecutors in connection with Brady, Rosario, or statutory discovery obligations, summations, and other trial advocacy. | NARROWED on both period and form. Period limited to January 1, 1990 through January 5, 2024, conforming to Interrogatory 15 as narrowed in this chart. In the first instance Plaintiff will accept documents sufficient to identify each internal investigation or disciplinary action within that period — the date, the prosecutor involved, the subject matter, and the disposition — rather than the underlying investigative files. Plaintiff reserves the right to request the file for a particular matter once identified. The relevance objection fails: how the office handled Brady, Rosario, discovery and trial-advocacy misconduct before and during Plaintiff's prosecution is the deliberate indifference element of the claim the Court sustained, and how it handled the same misconduct afterward is the basis for the policymaker and continuing-conduct allegations the Court declined to limit on June 18, 2026. Likewise, the entire span supports Monell claims. The County's answers to Interrogatories 4 and 12 may resolve this request substantially. If the ECDA maintained no process for investigating or disciplining prosecutors and kept no record of complaints against them, there is nothing to identify, and the County should say so. | The County maintains its objections as stated in its April 13, 2026 response, including that this Request is overbroad, unduly burdensome, and disproportionate under Fed. R. Civ. P. 26(b)(1). Plaintiff's purported "narrowing" of the time period — from January 1, 1985 through the present to January 1, 1990 through January 5, 2024 — fails to substantively account for the County's articulated objections, which remain equally applicable under the slightly revised time period set forth in Plaintiff's proposed revision. Based upon Plaintiff's position to date, the County intends to move forward with a motion seeking to bifurcate or sequence discovery, though remains willing to further discuss that step in a subsequent meet and confer, including for purposes of agreeing to a proposed discovery schedule. |
| **19** | All documents that the County contends support, undermine, or otherwise concern any affirmative defense it intends to claim in this action. | Plaintiff will renew this request following the County's answer, and the County should preserve accordingly. | The County maintains its objections as stated in its April 13, 2026 response, including that these Requests are overbroad, unduly burdensome, and premature. |
| **20** | All documents that the County contends support, undermine, or otherwise concern any cross-claim it intends to file in this action. | Plaintiff will renew this request following the County's answer, and the County should preserve accordingly. | The County maintains its objections as stated in its April 13, 2026 response, including that these Requests are overbroad, unduly burdensome, and premature. |
| **21** | All documents that the County contends support, undermine, or otherwise concern any other defense it intends to raise or raises in response to Plaintiff's claims. | Plaintiff will renew this request following the County's answer, and the County should preserve accordingly. | The County maintains its objections as stated in its April 13, 2026 response, including that these Requests are overbroad, unduly burdensome, and premature. |